# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRISTOPHER R. OLSON, CHRISTOPHER LOPEZ, WARREN BARBER, CHRISTOPHER CLIFFORD, AND ERIK LIPTAK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MAJOR LEAGUE BASEBALL; MLB ADVANCED MEDIA, L.P.; HOUSTON ASTROS, LLC; and BOSTON RED SOX BASEBALL CLUB, L.P.,<br><br>Defendants. | Case No. 1:20-cv-00632-JSR |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT BOSTON RED SOX BASEBALL CLUB, L.P.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

GLOSSARY OF DEFINED TERMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.    Plaintiff Olson States a Claim Against the Red Sox Under the MCPA . . . . . . . . . 3

                1.    Plaintiff Olson meets the elements of a MCPA claim . . . . . . . . . . . . . . . . 3

                2.    The Red Sox's attacks on Plaintiff Olson's MCPA claims fail . . . . . . . . . 5

                        a.    The Red Sox's challenge to Olson's common law
                              fraud claim is inapplicable to MCPA claims . . . . . . . . . . . . . . . . . 6

                        b.    Plaintiff Olson alleges a cognizable injury under the MCPA . . . . 7

                        c.    Plaintiff Olson's demand letter complies with the MCPA . . . . . . 9

        B.    Plaintiffs State a Claim for Negligence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        C.    Plaintiffs State a Claim for Fraud and Deceit . . . . . . . . . . . . . . . . . . . . . . . . . 14

                1.    Plaintiffs allege actionable omissions . . . . . . . . . . . . . . . . . . . . . . . . . . 15

                2.    Plaintiffs need not allege scienter, but do anyway . . . . . . . . . . . . . . . . . 19

                3.    Plaintiffs allege reasonable reliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                4.    Plaintiffs allege causation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        D.    Plaintiffs State a Claim for Unjust Enrichment . . . . . . . . . . . . . . . . . . . . . . . . 24

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**Cases**

*Adams v. United States,*
No. 03-cv-49, 2009 WL 2399766 (D. Idaho July 28, 2009)......................13

*Akar v. Federal Nat'l Mortg. Ass'n,*
845 F. Supp.2d 381 (D. Mass. 2012) ....................................................9

*Allstate Ins. Co. v. Soulant Brothers, LLC,*
897 So.2d 693 (La. Ct. App. 2004)......................................................12

*Baldino's Lock & Key Serv., Inc. v. Google, Inc.,*
624 F. App'x 81 (4th Cir. 2015) ........................................................18

*Beebe v. ePartners Inc.,*
No. 8:05-cv-805, 2005 WL 8160338 (M.D. Fla. 2005)............................16

*Bowers v. Federation Internationale de, L'Automobile,*
489 F.3d 316 (7th Cir. 2007) ............................................................13

*Brandt v. Olympic Const., Inc.,*
449 N.E.2d 1231 (Mass. Ct. App. 1983) ..............................................10

*Casavant v. Norwegian Cruise Line, Ltd.,*
919 N.E.2d 165 (Mass. Ct. App. 2009) .................................................5

*Castillo v. Tyson,*
268 A.D.2d 336 (N.Y. Sup. Ct. 1997) ..................................................13

*Comley v. Media Planning Grp.,*
108 F. Supp. 3d 6 (D. Mass. 2015) ................................................16, 17

*Copley Place Assocs., LLC v. Tellez-Bortoni,*
73 N.E.3d 317 (Mass. Ct. App. 2017) .................................................21

*Cottam v. CVS Pharmacy,*
764 N.E.2d 814 (Mass. 2002) ...........................................................12

*Cruz v. Zucker,*
116 F. Supp. 3d 334 (S.D.N.Y. 2015).....................................................6

*Cummings v. HPG Int'l, Inc.,*
244 F.3d 16 (1st Cir. 2001) ..............................................................17

*Davis v. Dawson*,
15 F. Supp. 2d 64 (D. Mass. 1998) ....................................................................... 18

*Disler v. Royal Caribbean Cruise Ltd.*,
No. 17-cv-23874, 2018 WL 1916614 (S.D. Fla. Apr. 23, 2018) ........................... 12

*Duclersaint v. Fed. Nat'l Mortg. Ass'n*,
696 N.E.2d 536 (Mass. 1998) ........................................................................... 3, 4

*Erie R.R. Co. v. Tompkins*,
304 U.S. 64 (1938) ............................................................................................ 10

*Feldman v. Aspen Tech., Inc.*,
No. SUCV2006-3021BLS2, 2007 WL 1089220 (Mass. Super. Ct. Mar. 3, 2007) ............. 19, 20

*Fredericks v. Rosenblatt*,
667 N.E.2d 287 (Mass Ct. App. 1996) ................................................................ 10

*Glidepath Holding B.V. v. Spherion Corp.*,
590 F. Supp. 2d 435 (S.D.N.Y. 2010) ................................................................. 19

*Greenwald v. Chase Manhattan Mortgage Corp.*,
241 F.3d 76 (1st Cir. 2001) ............................................................................... 25

*Hall v. Sea World Entm't, Inc.*,
No. 3:15-cv-660, 2015 WL 9659911(S.D. Cal. Dec. 23, 2015) ........................... 23, 24

*Hermida v. Archstone*,
950 F. Supp. 2d 298 (D. Mass. 2013) ................................................................. 11

*Hershenow v. Enterprise Rent-A-Car Co.*,
840 N.E.2d 526 (Mass. 2006) ........................................................................... 7, 8

*Iannacchino v. Ford Motor Co.*,
888 N.E.2d 879 (Mass. 2008) ........................................................................... 7, 8

*Int'l Fund Mgmt. S.A. v. Citigroup, Inc.*,
822 F. Supp. 2d 368 (S.D.N.Y. 2011) ................................................................. 23

*In re Crown Ranch Dev. Ltd.*,
No. 11-Bankr-90052, 2012 WL 1072221 (Bankr. E.D. Tex. Mar. 29, 2012) ................. 16, 17

*In re Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.*,
No. 2:15-md-2639, 2017 WL 6520608 (C.D. Cal. Aug. 25, 2017) ........................ 13

*In re Telexfree Securities Litig.*,
389 F. Supp. 3d 101 (D. Mass. 2019) ................................................................. 24

iii

*It's Just Lunch Int'l LLC v. Island Park Enter. Grp., Inc.*,
No. 08-cv-367, 2009 WL 10673157 (C.D. Cal. Sept. 3, 2009) .................................. 17

*Kattar v. Demoulas*,
739 N.E.2d 246 (Mass. 2000) ........................................................................ 6

*Linkage Corp. v. Trustees of Boston Univ.*,
679 N.E.2d 191 (Mass. 1997) ........................................................................ 4

*LMNO Cable Grp., Inc. v. Discovery Comms., LLC*,
No. 16-cv-4543, 2017 WL 5479613 (C.D. Cal. June 1, 2017) .................................. 16

*Mace v. Van Ru Credit Corp.*,
109 F.3d 338 (7th Cir. 1997) ........................................................................ 10

*Marquez v. Home Depot USA, Inc.*,
154 F. Supp. 2d 152 (D. Mass. 2001) ........................................................ 11, 12

*Massachusetts v. Mylan Labs*,
357 F. Supp. 2d 314 (D. Mass. 2005) ............................................................ 25

*Mayer v. Belichik*,
605 F.3d 223 (3d Cir. 2010) ........................................................................ 13

*MDVIP, Inc. v. Beber*,
222 So.3d 555 (Fla. Dist. Ct. App. 2017) ...................................................... 17

*Meany v. Onebeacon Ins. Grp., LLC*,
No. 07-1294-BLS2, 2007 WL 5112809 (Mass. Super. Ct. June 12, 2007) ................. 11

*Nei v. Burley*,
446 N.E. 2d 674 (Mass. 1983) ...................................................................... 6

*Nickerson v. Matco Tools Corp.*,
813 F.2d 529 (1st Cir. 1987) .................................................................. 16, 17

*Nota Constr. Corp. v. Keyes Assocs., Inc.*,
694 N.E.2d 401 (Mass. Ct. App. 1998) ................................................. *passim*

*Oahn v. Nguyen Chung v. StudentCiy.com, Inc.*,
854 F.3d 97 (1st Cir. 2017) ........................................................................ 12

*Reisman v. KPMG Peat Marwick LLP*,
787 N.E.2d 1060 (Mass. Ct. App. 2003) ........................................................ 20

*Sentinel Prod. Corp. v. Mobile Chem. Co.*,
No. CIV. A. 98-11782-PBS, 2001 WL 92272 n.15 (D. Mass. Jan. 17, 2001) ............. 25

*Sfiraiala v. Deutsche Bank Aktiengesellschaft,*
 729 F. App'x 55 (2d Cir. 2018) ............................................................20

*Shaulis v. Nordstrom, Inc.,*
 865 F.3d 1 (1st Cir. 2017)...............................................................7, 8

*Slaney v. Westwood Auto, Inc.,*
 322 N.E.2d 768 (Mass. 1975) .............................................................6

*Somerset Sav. Bank v. Chicago Title Ins. Co.,*
 649 N.E.2d 1123 (Mass. 1995) .........................................................12

*Stanley Indus. Inc. v. W.M. Barr & Co., Inc.,*
 784 F. Supp. 1570 (S.D. Fla. 1992) ..............................................12, 19

*Stephenson v. Citco Grp. Ltd.,*
 700 F. Supp. 2d 599 (S.D.N.Y. 2010).................................................20

*Stiles v. Wells Fargo Bank,*
 No. 14-cv-4169, 2014 WL 7146950 (N.D. Cal. Dec. 15, 2014)................23

*Suk Jae Chang v. Wozo LLC,*
 No. 11-cv-10245, 2012 WL 1067643 (D. Mass. Mar. 28, 2012) ................11

*Tallent v. Liberty Mut. Ins. Co.,*
 No. Civ. A. 1997-1777H, 2005 WL 1239284 (Mass Super. Ct. Apr. 22, 2005) ......................10

*Tarpey v. Crescent Ridge Dairy, Inc.,*
 713 N.E. 2d 975 (Mass. Ct. App. 1999) ...............................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
 551 U.S. 308 (2007)..........................................................................19

*Tyler v. Michaels Stores, Inc.,*
 984 N.E.2d 737 (Mass. 2013) ..............................................................3

*Wilson v. Sec'y of Health and Human Servs.,*
 671 F.2d 673 (1st Cir. 1982)..............................................................11

*Zabilansky v. Am. Bldg. Restoration Prods., Inc.,*
 2004 WL 2550458 (Mass. Super. Ct. Oct. 13, 2004) ........................10, 11

*Zimmerman v. Kent,*
 575 N.E.2d 70 (Mass. Ct. App. 1991) ........................................14, 17, 21

**Statutes**

Massachusetts Consumer Protection Act, Mass. Gen. L. Ch. 93A ........................*passim*

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................................................19, 20

**Other Authorities**

Restatement (Second) of Torts §551 ..................................................................15, 18

# GLOSSARY OF DEFINED TERMS

| Term | Definition |
|---|---|
| **Party Terms** | |
| MLB | Major League Baseball |
| MLBAM | MLB Advanced Media LP |
| MLB Defendants | Major League Baseball and MLB Advanced Media LP |
| Red Sox | Boston Red Sox Baseball Club, L.P. |
| Astros | Houston Astros, LLC |
| Defendants | Boston Red Sox Baseball Club, L.P., Houston Astros, LLC, Major League Baseball, and MLB Advanced Media, L.P., collectively. |
| **Filings** | |
| AC | Amended Complaint (ECF No. 20) |
| Astros Opp. Br. | Plaintiffs' Memorandum in Opposition to Defendant Houston Astros, LLC's Motion to Dismiss (filed contemporaneously herewith). |
| Sox Br. | Defendant Boston Red Sox Baseball Club, L.P.'s Memorandum of Law in Support of its Motion to Dismiss (ECF No. 31) |
| MLB Br. | Defendants Major League Baseball and MLB Advanced Media LP's Memorandum of Law in Support of Their Motion to Dismiss (ECF No. 28) |
| MLB Opp. Br. | Plaintiffs' Memorandum in Opposition to Defendants Major League Baseball and MLB Advanced Media LP's Motion to Dismiss (filed contemporaneously herewith) |
| Golub Dec. | Declaration of David S. Golub (ECF No. 43) |
| **Statutes** | |
| MCPA | Massachusetts Consumer Protection Act ("MCPA"), Mass. Gen. L. Ch. 93A |
| **Other Defined Terms** | |
| DraftKings | DraftKings, Inc. |
| DFS | Daily fantasy sports contests |
| MLB DFS | DraftKings' and Major League Baseball's "DraftKings Major League Baseball Daily Fantasy Sports" contests. |
| Electronic Sign Stealing | The use of electronic devices, particularly video cameras in MLB Club replay rooms, to view, decipher or communicate information concerning a catcher's signals. |

# I.     **INTRODUCTION**

Plaintiffs are MLB DFS contestants who seek to recover their MLB DFS contest entry

fees in this class action lawsuit against MLB, the MLB's internet and interactive marketing arm

(MLBAM), and two of its member Clubs (the Red Sox and Astros). Plaintiffs, as MLB DFS

contestants, are not mere "sports fans." MLB DFS contestants select MLB players for their

"fantasy teams," attempting to predict real life MLB players' statistics better than the other

contestants in the competition. MLB DFS contestants do not participate in MLB DFS contests

for the joy of playing. Rather, contestants' sole objective is to win cash prizes—accomplished by

better predicting MLB players' statistical feats (and thereby scoring more points) than their MLB

DFS competitors. Thus, if MLB DFS contestants become aware of factors that compromise their

ability to predict player performance statistics, they would not pay entry fees to participate in the

contests.

In January 2020, MLB revealed that the Red Sox and Astros had engaged in Electronic

Sign Stealing schemes during the 2017-2019 baseball seasons in violation of MLB's rules and

regulations. These schemes compromised MLB DFS contestants' ability to predict player

performance by artificially inflating Red Sox and Astros player batting statistics and artificially

impairing the pitching statistics of the opposing teams' pitchers. These schemes thus affected the

core foundation of MLB DFS contests' points calculations, tainting the contests. Therefore,

Defendants (in particular, here, the Red Sox) had a legal duty to disclose these schemes and

failed to do so.

Defendants were motivated not to disclose these cheating schemes by significant

monetary incentives: The MLB Defendants owned a sizable stake in DraftKings, a DFS contest

provider, and the Red Sox and DraftKings had a partnership that jointly marketed DraftKings

MLB DFS contests to Plaintiffs and the Class in an effort to induce their payment of MLB DFS

entry fees.

Because (1) the Red Sox jointly marketed and induced Plaintiffs and the Class to participate in MLB DFS contests without disclosing their cheating scheme, (2) Plaintiffs and the Class—and indeed any reasonable DFS contestant—would not have paid an entry fee for a MLB DFS contest based on statistics rigged in an unknown way, and (3) Plaintiffs and the Class paid entry fees for MLB DFS contests tainted by the Red Sox cheating scheme, the Red Sox are liable to Plaintiffs and the Class.

The Red Sox have asked this Court to dismiss Plaintiffs' claims based on several mischaracterizations and flawed arguments.

First, the Red Sox attack Plaintiff Olson's claim under the MCPA, incorporating their arguments against Olson's common law fraud claim and then arguing that Olson does not have a cognizable injury under the MCPA.[1] The Red Sox's arguments concerning common law fraud are inapplicable to Olson's MCPA claim because MCPA claims are not subject to the rules and limitations of common law fraud precedent. Further, Olson alleges an MCPA injury because the Red Sox's omission was objectively material to consumers participating in MLB DFS contests.

Second, the Red Sox argue that Plaintiffs' negligence claims fail because the Red Sox have no duty to MLB DFS contestants. Not so. The Red Sox assumed such a duty through their joint marketing efforts with DraftKings. The Red Sox's Electronic Sign Stealing scheme (and failure to disclose it) then breached their duty to Plaintiffs and caused Plaintiffs' injury.

Third, the Red Sox argue that Plaintiffs' common law fraud allegations fail to meet the claim's elements (an actionable omission, reliance, and causation). Wrong again. The Red Sox

---

[1] The Red Sox also argue that Olson's pre-suit demand letter failed to comply with the timing and content purportedly required by the MCPA. Olson's demand letter does comply, however, based on applicable precedent.

2

had a duty to disclose their Electronic Sign Stealing scheme because (1) the scheme made their representations concerning their players' performance misleading, and (2) the scheme undermined the fundamental basis of the MLB DFS contests that the Red Sox jointly marketed to induce Plaintiffs' participation. Plaintiffs reasonably relied on the absence of the Red Sox's Electronic Sign Stealing scheme, as no MLB DFS contestant would participate knowing that the games' statistics were rigged in an unknown way. Thus, the Red Sox's failure to disclose their scheme caused Plaintiffs' entry fee injury.

Fourth, the Red Sox argue that Plaintiffs cannot assert a cause of action for unjust enrichment due to their remedies available at law. Plaintiffs, however, plead the unjust enrichment claim in the alternative to Plaintiffs' other claims, which the law clearly allows.

The Red Sox's Motion to Dismiss should be denied.[2]

## II.   ARGUMENT[3]

### A. Plaintiff Olson States a Claim Against the Red Sox Under the MCPA.

#### 1.   Plaintiff Olson meets the elements of a MCPA claim.

Under the MCPA, a plaintiff must allege that he (1) suffered an injury, (2) that was caused by (3) an unfair or deceptive act or practice. *See Tyler v. Michaels Stores, Inc.*, 984 N.E.2d 737, 744 (Mass. 2013). The statute does not define "unfair or deceptive" conduct, but whether something constitutes an unfair or deceptive practice "is determined from all the circumstances .... A practice may be deceptive if it reasonably could be found to have caused the plaintiff to act differently than he otherwise would have acted." *Duclersaint v. Fed. Nat'l Mortg. Ass'n*, 696 N.E.2d 536, 540 (Mass. 1998) (internal citations omitted); *see also Linkage Corp. v.*

---

[2] Plaintiffs incorporate the Summary of Allegations of Plaintiffs' Complaint set forth in the MLB Opp. Br. at Section II.

[3] The Red Sox incorporated the MLB Defendants' arguments concerning arbitration in their Motion to Dismiss, Sox Br. at n.1 (citing MLB Br. at n.11), and Plaintiffs incorporate their response to the MLB Defendants' arguments. *See* MLB Opp. Br. at n.3.

*Trustees of Boston Univ.*, 679 N.E.2d 191, 209 (Mass. 1997) (a practice is "unfair" under MCPA if it is, *inter alia*, within the penumbra of a common law, statutory or other concept of unfairness, or it is immoral, unethical, oppressive or unscrupulous).

Plaintiffs allege that the Red Sox induced Plaintiff Olson to pay entry fees for MLB DFS contests through their partnership and co-promotion with DraftKings while also engaging in the Electronic Sign Stealing scheme without disclosing it. *See, e.g.*, AC ¶¶501-11. In MLB DFS contests, contestants pay an entry fee and select real-life MLB players for their "fantasy team" roster. *See id.* ¶¶27, 31. DraftKings assigns each MLB player a "salary," and provides each fantasy team entry with a set salary budget. *Id.* Contestants use MLB players' past and expected future statistical performance to allocate their salary budgets and select MLB players for their teams' rosters. *Id.* ¶31. Contestants' fantasy teams are then ranked based on the real-life statistical performance of the MLB players that comprise the contestants' teams during the contest. *Id.* ¶¶28, 32. The winner of a given contest, who receives a cash prize, is the contestant whose fantasy team performs the best as measured by the real-life performance of the MLB players on the fantasy team. *Id.*

The Red Sox's Electronic Sign Stealing scheme compromised the integrity of the MLB player statistics that serve as the fundamental basis for DraftKings' MLB DFS contests. *Id.* ¶116. In particular, the scheme inflated Red Sox players' offensive/batting statistics and impaired the statistics of pitchers on opposing MLB teams. *Id.* ¶117. Moreover, because the Electronic Sign Stealing scheme tainted statistics from past MLB games in which the scheme was used, the scheme also tainted the player statistics on which contestants rely in building their fantasy teams, impairing contestants' ability to predict MLB player performance in MLB DFS contests. *Id.*

Necessarily because the ranking of fantasy teams within a MLB DFS contest is based on

the relative statistical performances of all fantasy teams in the contest, no Plaintiff or Class member need have rostered a player from the Red Sox or their opponent for the contest be tainted by the deceptive conduct. Rather, the contests would be tainted if any fantasy team in the contest had a player on the Red Sox or the Red Sox's opponent. Furthermore, even for contests where no fantasy team had a Red Sox batter or opposing pitcher, the Electronic Sign Stealing scheme nevertheless tainted the contest because the scheme affected past player statistics which would necessarily affect contestants' selections of MLB players for their teams.[4]

Because of the fundamental role statistics play in the underlying MLB DFS contests, the Electronic Sign Stealing scheme materially compromised the contests. No MLB DFS consumers would pay entry fees for contests based on statistics known to be tainted in unknown ways. Thus, the Red Sox's conduct in (1) engaging in the Electronic Sign Stealing scheme, and (2) concealing and failing to disclose the scheme, is unfair or deceptive conduct in violation of the MCPA and caused injury to MLB DFS contestants, including Plaintiff Olson. *See, e.g.*, *Casavant v. Norwegian Cruise Line, Ltd.*, 919 N.E.2d 165 (Mass. Ct. App. 2009) (causation may be found by determining whether nondisclosure was of a material fact, which depends on whether the plaintiff likely would have acted differently but for the nondisclosure).

## 2. The Red Sox's attacks on Plaintiff Olson's MCPA claims fail.

The Red Sox levy three attacks on Olson's MCPA claim: (1) incorporating their arguments concerning common law fraud, (2) challenging Olson's alleged injury, and (3) challenging Olson's demand letter as insufficient and untimely. Each argument fails.

---

[4] In any event, given that Plaintiff Olson had at least 226 contest entries during the Class Period (*see* AC ¶121), and Red Sox players were among the top MLB players in key statistical categories (*e.g.*, batting average, home runs, and runs batted in ("RBIs")), the Red Sox's suggestion that none of those 226 contests were directly tainted by the presence of Red Sox players (or opposing pitchers) on a fantasy team's roster is not plausible.

### a. The Red Sox's challenge to Olson's common law fraud claim is inapplicable to MCPA claims.

The Red Sox's only attack on Olson's allegations that (1) the Red Sox's conduct was unfair or deceptive, and (2) the Red Sox's unfair or deceptive conduct caused Olson injury, was to incorporate their arguments concerning Plaintiffs' common law fraud claims. *See* Sox Br. at 16 (incorporating Sections I.A and I.D of the Sox Br.).[5] The MCPA "makes conduct unlawful which was not unlawful under the common law or any prior statute," *Kattar v. Demoulas*, 739 N.E.2d 246, 257 (Mass. 2000), and thus "analogies between common law claims for breach of contract, fraud, or deceit and claims under [the MCPA] are inappropriate...." *Nei v. Burley*, 446 N.E. 2d 674, 678 (Mass. 1983); *see also Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768 (Mass. 1975) (MCPA is neither wholly tortious nor wholly contractual in nature, and is not subject to the traditional limitation of preexisting causes of action such as tort for fraud and deceit). The Red Sox proffer no basis for contending that Olson failed to adequately plead unfair or deceptive conduct and causation under the MCPA other than authority concerning common law fraud.[6] That is insufficient under Massachusetts law. Nevertheless, as set forth above, Olson pleaded unfair or deceptive conduct that induced his payment of entry fees for MLB DFS contests, and such allegations meet his burden.

---

[5] In their Motion, the Red Sox also incorporate the MLB Defendants' brief concerning Olson's MCPA claim. Sox Br. at 16 (citing MLB Br. at Sections I., III.A, III.B). Plaintiffs likewise incorporate Plaintiffs' Opposition to that brief. *See, e.g.*, MLB Opp. Br. at Sections III.C, III.D. Importantly, the MLB Defendants do not argue that the ***Red Sox's*** representations, omissions, and other conduct alleged in the Amended Complaint (*e.g.*, AC ¶¶111, 501-11) are insufficient to constitute deceptive practices under the MCPA. Indeed, the MLB Defendants (incorrectly) argued that the alleged representations and omissions by the ***MLB Defendants*** are insufficient, *see* MLB Br. at 11-14, but are silent on whether the representations, omissions, and conduct attributed to the ***Red Sox*** are sufficient. In any event, for the reasons articulated *supra* and in the MLB Opp. Br., Olson's allegations are sufficient.

[6] The Red Sox waived their arguments by not asserting them. *See, e.g.*, *Cruz v. Zucker*, 116 F. Supp. 3d 334, n.10 (S.D.N.Y. 2015) ("Because these arguments were not raised in his opening brief, they were waived...." (citing *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993))).

### b. Plaintiff Olson alleges a cognizable injury under the MCPA.

The Red Sox argue that Olson has not alleged an injury distinct from the MCPA violation. Sox Br. at 17-20. To bring an action under the MCPA, the plaintiff must merely have been injured "by another person's use or employment of" an unfair or deceptive act or practice. *Iannacchino v. Ford Motor Co.*, 888 N.E.2d 879, 885 (Mass. 2008). As set forth *supra*, Olson satisfies this standard, alleging that the Red Sox's failure to disclose their cheating scheme caused him to pay entry fees that he would not have paid if the Red Sox's conduct were known.

The Red Sox argue, however, that the MCPA does not permit a plaintiff to recover "purchase" monies that a defendant induced through deceptive or unfair conduct. *See* Sox Br. at 17-20. The Red Sox base this supposition on two cases, *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1 (1st Cir. 2017) and *Hershenow v. Enterprise Rent-A-Car Co.*, 840 N.E.2d 526 (Mass. 2006). In *Shaulis*, the plaintiff purchased a sweater for which the tag listed the purchase price of $49.97 and a "Compare At" price of $218. 865 F.3d at 5. The plaintiff sought to recover her purchase money, alleging that she would not have purchased the sweater had she known that it was never intended to be sold at the $218 "Compare At" price. *Id.* at 5, 10. The court rejected her claim, holding that she failed to allege a cognizable injury because she identified "no objective injury traceable to the purchased item itself—for example, that the sweater was poorly made or that its materials were misrepresented." *Id.* at 11. In *Hershenow*, the plaintiffs rented cars from the defendant and paid a fee for collision damage waiver ("CDW") protection pursuant to a contract that violated Massachusetts law. 840 N.E.2d at 528-29. The court held that because there was no allegation that the rental cars were actually damaged so as to invoke the CDW protection and the defendant did not enforce the unlawful CDW provisions of the rental contracts, the plaintiffs could not claim an injury under the MCPA. *Id.* at 526, 528-29, 534-35.

7

Contrary to the Red Sox's position, Massachusetts law recognizes a purchase money injury when the purchase was induced by objectively material misrepresentations or omissions. For example, the *Shaulis* plaintiff argued that barring her claim would mean that there would be no claim for a purchaser of a counterfeit Rolex. The First Circuit disagreed, noting the "obvious distinction" that "falsely advertising a watch as a 'Rolex' is a material misstatement about the watch's quality." *Shaulis*, 865 F.3d at 12. The *Shaulis* plaintiff's claim thus failed not because her injury was the money used for the purchase, but rather because the alleged inducement, the high "Compare At" price, was not a material misstatement about the sweater's quality. The Red Sox's reliance on *Hershenow* fares no better. In *Iannacchino v. Ford Motor Co.*, 888 N.E.2d 879 (Mass. 2008), the Massachusetts Supreme Court considered a case in which the plaintiffs purchased vehicles with defective door handles that violated federal safety regulations. The court rejected the defendant's argument that *Hershenow* controlled[7] and found the MCPA claim was proper, because (a) the *Iannacchino* plaintiffs had purchased a motor vehicle that violated federal safety regulations, and (b) that "safety standards play a highly significant role" for motor vehicles. 888 N.E.2d at 886. Thus, the rule that *Iannacchino* and *Shaulis* express is not that a "purchase as injury" theory is barred by the MCPA, but rather that the conduct inducing purchase must be material to the purchase.

Because untainted MLB player statistics are material to MLB DFS contests (*i.e.*, no one would play MLB DFS if they knew that unknown conduct was manipulating the player statistics

---

[7] The *Hershenow* court noted that the plaintiffs would have been harmed only if two sequential events occurred (car damage during the rental period, and the defendant's attempt to enforce the offending CDW provision), and because neither event occurred, the unlawful contract terms could not cause harm after the plaintiffs returned the vehicle. 840 N.E.2d at 526. The *Iannacchino* defendant had argued that because the plaintiffs were not in car accidents that implicated the door safety features, there was no MCPA injury under *Hershenow*. *Iannacchino*, 888 N.E.2d at 886. The *Iannacchino* court rejected defendant's argument.

that determine who wins and who loses), Olson's induced entry fees are a cognizable injury.

### c. Plaintiff Olson's demand letter complies with the MCPA.

The MCPA requires plaintiffs to send a pre-suit demand letter, which Plaintiff Olson did. The Red Sox raise two issues concerning that letter: (1) that it was not sent 30-days before Olson filed his initial complaint; and, (2) the letter did not set forth the precise amount of damages Plaintiff Olson claims. These arguments fail. As a preliminary matter, Count 10 of the Amended Complaint does not assert a claim under the MCPA, but rather provides notice of Olson's intent "to assert a claim under the [MCPA]" following the Red Sox's response to Olson's demand letter. AC ¶496. The purpose of Count 10 was to "provide[] notice to [the Red Sox] of the prospective claim" without sacrificing Plaintiffs' right to file suit on other counts immediately. The Red Sox do not dispute that Olson delivered a demand letter on January 23, 2020.[8] Courts allow plaintiffs to amend their complaints to add MCPA claims after the 30-day statutory period expires. *See, e.g.*, *Akar v. Federal Nat'l Mortg. Ass'n*, 845 F. Supp.2d 381, 404 (D. Mass. 2012) ("Massachusetts courts have allowed plaintiffs to amend their complaint to add a claim under Chapter 93A, despite not having delivered the demand letter to the defendant prior to filing the initial suit, where the letter has served the purposes of the demand requirement in encouraging negotiation and settlement."). Plaintiffs seek the same process here.[9]

Even if the Court construes Olson's MCPA claim as asserted in advance of the expiration of the 30-day period, it would not doom Olson's claim because the notice requirement is a procedural rule that is inapplicable in this federal diversity case. *See Erie R.R. Co. v. Tompkins*,

---

[8] In fact, the Red Sox responded to it on February 21, 2020 by merely restating their motion to dismiss arguments, refusing to offer settlement, and claiming Olson's claims are not viable. Thus, the Red Sox had the opportunity to initiate settlement negotiations and declined it. The purposes of the MCPA's demand letter requirement have been satisfied.

[9] The Amended Complaint stated that Plaintiffs "shall amend the Complaint to include this Claim for Relief and demand all appropriate relief under the [MCPA]." AC ¶496. Plaintiffs remain prepared to amend in light of the Red Sox's declination to proceed with settlement.

304 U.S. 64 (1938). The Seventh Circuit considered a similar pre-suit notice provision in the Wisconsin Consumer Act ("WCA"), § 427.104, in *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997). As with the MCPA, the WCA requires plaintiffs to provide 30-days' pre-suit notice to defendants. The court concluded that the 30-day notice requirement was procedural and did not apply. *Mace*, 109 F.3d at 345-46 ("Whether the start of [the plaintiff's] lawsuit was delayed by thirty days (under the WCA) or not at all (under Rule 23) is a matter of procedure, not substance… Therefore [plaintiff's] WCA class action should be allowed to proceed.").[10]

The Red Sox also argue that Olson's demand letter was deficient because it did not specify his precise amount of damages. *See* Sox Br. at 16-17 (citing a Massachusetts government website offering consumers guidance). However, a plaintiff need not list a specific monetary loss in the demand letter. *See, e.g.*, *Brandt v. Olympic Const., Inc.*, 449 N.E.2d 1231, 1234 (Mass. Ct. App. 1983) (finding demand letter compliant without specific monetary demand because the letter gave "the defendant an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied and to enable it to make a reasonable tender of settlement in order to limit the recoverable damages").[11]

Olson's demand letter (and his original Complaint (ECF No. 1)) gave the Red Sox adequate notice of his claims, identifying him as a MLB DFS contestant and reasonably

---

[10] The defendants had argued that the purpose of the pre-suit notice requirement in the WCA was to "prevent a suit from ever being filed (by encouraging the parties to reach an agreement extra-judicially)[.]" *Mace*, 109 F.3d at 346. The Seventh Circuit found that in such case, the pre-suit notice requirement is not substantive. The purpose of the pre-suit notice requirement under the MCPA is also to encourage settlement. *See, e.g.*, *Fredericks v. Rosenblatt*, 667 N.E.2d 287 (Mass Ct. App. 1996). Such purpose is not substantive.

[11] *See also Tallent v. Liberty Mut. Ins. Co.*, 2005 WL 1239284 (Mass Super. Ct. 2005) (demand letter sufficient where it allowed review of facts and law surrounding allegations and described plaintiffs' injuries without a specific numerical value); *Tarpey v. Crescent Ridge Dairy, Inc.*, 713 N.E. 2d 975 (Mass. Ct. App. 1999) (demand letter that did not include specific monetary demand was not fatal to MCPA claim); *Zabilansky v. Am. Bldg. Restoration Prods., Inc.*, 2004 WL 2550458 (Mass. Super. Ct. Oct. 13, 2004) (same).

describing his allegations concerning the Red Sox's Electronic Sign Stealing and concealment conduct. Such information is sufficient to permit the Red Sox to ascertain their exposure and initiate settlement negotiations, if any. *See Hermida v. Archstone*, 950 F. Supp. 2d 298, 304 (D. Mass. 2013). The Red Sox declined, and thus, Plaintiff Olson's demand letter satisfies the MCPA's purposes.[12]

### B. Plaintiffs State a Claim for Negligence.

Plaintiffs' negligence claims include both affirmative acts (*e.g.*, engaging in the Electronic Sign Stealing scheme and concealing the scheme) and failures to act (*e.g.*, failing to disclose the sign stealing scheme while also marketing DFS contests, failing to supervise employees and players involved in the scheme). To state a claim for negligence, a plaintiff must allege that the defendant (1) owed a duty to the plaintiff, (2) breached that duty, (3) causing (4) the plaintiff's injury. *See, e.g., Marquez v. Home Depot USA, Inc.*, 154 F. Supp. 2d 152,154 (D. Mass. 2001). Numerous courts have found that a company can voluntarily assume a duty through its advertising conduct. *See, e.g., Stanley Indus. Inc. v. W.M. Barr & Co., Inc.*, 784 F. Supp. 1570

---

[12] Moreover, in a class action, the named plaintiff's monetary demand is less important. Absent class members need not deliver their own demand letters, and the demand letter need not specify damages for the class. *See Hermida*, 950 F. Supp. 2d at 304. Because a purpose of providing injury information in a demand letter pursuant to the MCPA is to assist the defendant in formulating a reasonable settlement offer, the fact that (1) a named plaintiff rarely knows the damages of the proposed class prior to filing suit, and (2) an individual offer of settlement could not resolve the class's claims, means that the importance of accurate named plaintiff damages has little importance to a settlement offer that could resolve the class action suit. *See id.* at 305-06 (discussing precedent); *see also Wilson v. Sec'y of Health and Human Servs.*, 671 F.2d 673 679 (1st Cir. 1982) ("Some courts have recognized a limited exception to this general rule [that mootness of a named plaintiff's claim in an uncertified class action moots the entire case] if the defendant has deliberately and artificially created mootness by satisfying the named plaintiff's claim...."); *Meany v. Onebeacon Ins. Grp., LLC*, 2007 WL 5112809 (Mass. Super. Ct. June 12, 2007) ("[Defendant] may not avoid a class action [under the MCPA] simply by paying the amount due to the named plaintiff."); *Suk Jae Chang v. Wozo LLC*, 2012 WL 1067643, at \*9 (D. Mass. Mar. 28, 2012) ("[A]s a matter of Massachusetts law, efforts by a defendant to 'pick off' named plaintiffs in a purported class action have been discussed with disfavor in the specific context of [MCPA] claims.").

(S.D. Fla. 1992) (holding defendants voluntarily assumed duty to provide warnings in Spanish through their joint advertising and product promotion efforts in Hispanic media).[13]

Here, Plaintiffs allege that the Red Sox assumed a duty of care to DraftKings MLB DFS contestants by virtue of the Red Sox's partnership with DraftKings to promote and market MLB DFS contests to the public. *E.g.*, AC ¶¶531, 541. Such duty required the Red Sox to (a) not engage in actions that would undermine the fairness of DraftKings' MLB DFS contests, (b) keep apprised of the conduct of subordinate employees to prevent them from engaging in such actions, (c) properly supervise and direct the conduct of subordinate employees to prevent them from engaging in such actions, and (d) disclose to MLB DFS contestants any knowledge that such competitions were unfair. *See* AC ¶¶536, 538-41. Through their Electronic Sign Stealing scheme (and the related concealment efforts and failures to disclose), the Red Sox then breached their duty to DraftKings MLB DFS contestants. Because of the Red Sox's breach of their duty to disclose their cheating scheme to MLB DFS contestants (or not engage in the cheating conduct in the first place), the Red Sox induced Plaintiffs to pay MLB DFS entry fees. The Red Sox's failure to disclose their cheating scheme thus caused Plaintiffs' injury, *i.e.*, the lost entry fees.

The Red Sox focus on several "sports fan" cases for the proposition that "sports fans [do

---

[13] *See also Disler v. Royal Caribbean Cruise Ltd.*, 2018 WL 1916614, at *3-4 (S.D. Fla. Apr. 23, 2018) (cruise line assumed a duty of care to arrange air evacuations through its marketing materials); *Oahn Nguyen Chung v. StudentCity.com, Inc.*, 854 F.3d 97 (1st Cir. 2017) (endorsing district court's finding that defendant assumed duty through its marketing efforts); *Cottam v. CVS Pharmacy*, 764 N.E.2d 814 (Mass. 2002) (pharmacy could voluntarily assume a duty to provide warnings to its customers by advertising promises to provide customers with information); *Allstate Ins. Co. v. Soulant Brothers, LLC*, 897 So.2d 693, 696-97 (La. Ct. App. 2004) (holding storage company that displayed signs saying it was providing surveillance, but was not providing surveillance, breached a voluntarily assumed duty); *Somerset Sav. Bank v. Chicago Title Ins. Co.*, 649 N.E.2d 1123, 1129 (Mass. 1995) (denying summary judgment where plaintiff argued title insurer voluntarily assumed duty to search for, and to disclose to the insured, any reasonably discoverable information that would affect the insured's decision to proceed with purchase by advertising claimed knowledge of local laws and practices).

not] have a legally cognizable interest in the quality or intensity of athletic performance presented or the means through which that performance is achieved." Sox Br. at 14.[14] The Red Sox then present a parade of horribles if the Red Sox are held to account every time a hypothetical sports fan plaintiff disagrees with what transpires at a sporting event.[15]

Although Plaintiffs here and the plaintiffs in the sports fan cases (*see supra*, n.14) each allege that they would not have paid money for the product they received, the similarities end there. This is not a case about sports fans being disappointed with the on-field product. To the contrary, in this case, Plaintiffs entered into a business transaction (purchasing entry to MLB DFS contests) with a company partially owned by the MLB Defendants and with which the Red Sox have a business partnership to promote and induce Plaintiffs' participation. It is because of this Red Sox business activity that the Red Sox assumed a duty to Plaintiffs. Further, unlike sports fans, Plaintiffs are not complaining about the subjective on-field sports product. Rather, Plaintiffs complain that the fundamental basis of the product they purchased—a game of skill premised on predicting statistics of MLB players—was undermined by the Red Sox's (among

---

[14] The Red Sox cite *Mayer v. Belichik*, 605 F.3d 223, 230 (3d Cir. 2010); *In re Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.*, 2017 WL 6520608, at *9 (C.D. Cal. Aug. 25, 2017); *Bowers v. Federation Internationale de L'Automobile*, 489 F.3d 316, 322 (7th Cir. 2007); *Castillo v. Tyson*, 268 A.D.2d 336, 336-37 (N.Y. Sup. Ct. 1997), to argue that this purported lack of a "legally cognizable interest," *i.e.*, a lack of **injury**, means that the Red Sox had no **duty** to Plaintiffs and the Class. *See, e.g., Pacquiao*, 2017 WL 6520608, at *5 ("Courts in the United States … have long been hesitant to recognize a sports fan's post-event disappointment as a legally cognizable injury."). Such argument improperly conflates two distinct elements of Plaintiffs' negligence claim.
[15] The Red Sox also argue that they had no duty to Plaintiffs and the Class because there was no "contractual or other relationship between" them. *See* Sox Br. at 13. But the Red Sox offer no authority for this proposition. The Red Sox did incorporate the MLB's arguments concerning this proposition. Sox Br. at 13. Plaintiffs incorporate their response to the MLB brief. *See* MLB Opp. Br. at Section III.A-B. In any event, "[w]hile special relationships may create an affirmative duty to aid or protect, an assumed duty may arise even without a special relationship." *Adams v. United States*, 2009 WL 2399766 (D. Idaho July 28, 2009).

others') conduct.[16] Thus, Plaintiffs' claim is based on an objective concern: Defendants

(including the Red Sox) undercut the fundamental value proposition of the product they

purchased. The sports fan cases are inapposite.[17]

### C. Plaintiffs State a Claim for Fraud and Deceit.

Plaintiffs assert a claim against the Red Sox for fraud and deceit based on the Red Sox's

Electronic Sign Stealing scheme and their acts to conceal and otherwise not disclose that scheme.

To state a claim for common law fraud and deceit, a plaintiff must show that the defendant made

a false representation of material fact for the purpose of inducing the plaintiff to act thereon, and

that the plaintiff relied upon the representation as true. *See, e.g.*, *Zimmerman v. Kent*, 575 N.E.2d

70, 77 (Mass. Ct. App. 1991). Deceit may be perpetrated "by an implied as well as by an express

representation." *Nota Constr. Corp. v. Keyes Assocs., Inc.*, 694 N.E.2d 401, 403 (Mass. Ct. App.

1998) (quoting *Briggs v. Carol Cars, Inc.*, 553 N.E.2d 930 (Mass. 1990)). Furthermore, when the

defendant has a duty to disclose, Massachusetts law recognizes a claim for fraud and deceit for

failing to disclose a material fact, *i.e.*, a fact that the defendant knows may justifiably induce

another to act in a business transaction. *Id.* at 404. A defendant has such a to disclose (1) matters

known to the defendant that the defendant knows must be disclosed to prevent a partial or

ambiguous statement of fact from being misleading, as well as (2) those facts basic to the

transaction if the defendant knows that the plaintiff is about to enter into the transaction under a

mistake as to those facts and the plaintiff would reasonably expect such disclosure based on

objective circumstances. *Id.* (quoting Restatement (Second) of Torts §551).

---

[16] Plaintiffs further incorporate the arguments made in the MLB Opp. Br. and Astros Opp. Br. concerning the sports fan cases. *See, e.g.*, MLB Opp. Br. at 2, 10; Astros Opp. Br. at 2-7.

[17] The Red Sox also incorporate their arguments directed at Plaintiffs' fraud claims concerning causation and damages. Sox Br. at 13. Plaintiffs incorporate their response, *infra* at Section II.C.

### 1. Plaintiffs allege actionable omissions.

The Amended Complaint sets forth detailed allegations of the Red Sox's fraudulent course of conduct and its context, including, without limitation: (1) the Red Sox's actions in partnership with DraftKings to promote and market MLB DFS contests, *e.g.*, AC ¶¶6, 36-37, 185, 199-200, 463, 478; (2) how MLB DFS contests work, *e.g.*, *id.* ¶¶27-42, 464; (3) the Red Sox's Electronic Sign Stealing scheme, *e.g.*, *id.* ¶¶59, 101-14; (4) how the Red Sox's scheme affected MLB player statistics, *e.g.*, *id.* ¶¶60, 103-05, 110, 116-17, 197, 470; (5) the Red Sox's public representations concerning their players' statistical achievements *e.g.*, *id.* ¶¶111-12, 183-88, 472-73; 483-90; (6) the material and fundamental importance of MLB player statistics to MLB DFS contests, *e.g.*, *id.* ¶¶464, 477, 492; and, (7) the Red Sox concealment of their scheme, *e.g.*, *id.* ¶¶198-203, 471-82. These allegations more than suffice to allege that the Red Sox failed to disclose material facts (the Electronic Sign Stealing scheme) that they had a duty to disclose because the statistics were fundamental to the MLB DFS contests that the Red Sox marketed to Plaintiffs and because the Red Sox's public statements were misleading in light of the nondisclosed cheating scheme.

The Red Sox's arguments attacking Plaintiffs' allegations concerning the Red Sox's and MLB's specific statements and representations generally mischaracterize the primary theory of Plaintiffs' claims, *i.e.*, that the Red Sox had a duty to disclose their cheating scheme and that they failed to do so. The Amended Complaint's recitation of various statements and representations by the Red Sox (and MLB) are relevant to whether the Red Sox (and MLB) had a duty to Plaintiffs to disclose the underlying cheating scheme because the failure to disclose the scheme rendered such statements and representations misleading. The Red Sox's and their players' and coaches' representations are not necessary to show that their cheating scheme

affected the facts basic to the MLB DFS contest transactions. Thus, even if the Court finds these affirmative representations not to be actionable, Plaintiffs' claims would still survive.

The Red Sox first contend, without citation to authority, that representations made between two parties (here, agreements to comply with MLB rules and regulations by the Red Sox and Red Sox players and coaches) cannot be the basis of a third party's fraud claim. However, two parties' dealings can be the basis of fraud claims by a third party. *See, e.g., Nota,* 694 N.E. at 405 (finding that an architectural firm's work for a school could be the basis for liability for a deceit claim brought by a subcontractor with whom the firm had no relations).

The Red Sox then argue that contracts which make promises of future performance (*e.g.,* their player and coach contracts) cannot be the basis of actionable fraud unless the person making the contractual representation believed it to be false at the time it was made. Sox Br. at 3-4.[18] The Red Sox posit that the Amended Complaint fails to set forth any facts to support such an inference. *Id.*[19] The Red Sox are wrong on both accounts. First, "nothing is clearer than the fact

---

[18] The Red Sox's cited cases are inapposite. *See* Sox. Br. at 4 (citing *Comley v. Media Planning Grp.,* 108 F. Supp. 3d 6, 15 n.13 (D. Mass. 2015); *LMNO Cable Grp., Inc. v. Discovery Comms., LLC,* 2017 WL 5479613, at *7 (C.D. Cal. 2017); *In re Crown Ranch Dev. Ltd.,* 2012 WL 1072221, at *5 (Bankr. E.D. Tex. 2012); *Beebe v. ePartners Inc.,* 2005 WL 8160338, at *3 (M.D. Fla. 2005)). Each case sets out the general rule that promises of future performance are not actionable as fraud unless the person making the representation believed it to be false at the time it was made. As set forth herein, however, (1) Plaintiffs need not show that these representations as to future performance are actionable to show that the Red Sox had a duty to disclose their cheating, and (2) Plaintiffs' allegations raise the inference that at least some of the alleged statements were made by individuals who believed them to be false at the time the statements were made. *See* discussion *infra.*

[19] The Red Sox also argue that the statements made by the MLB Commissioner about protecting the integrity of the game are not actionable, incorporating the MLB Br. at Section I.C. The Red Sox further argue that the Commissioner's statements were merely statements of future performance that were not alleged to have been false when made. Sox Br. at 4-5. The Red Sox misconstrue the legal significance of the Commissioner's statements. Specifically, the Commissioner's statements are cited in the Amended Complaint as part of the circumstances giving rise to the Red Sox's legal duty to disclose their electronic sign stealing scheme. *See, e.g.,* AC ¶489-90; *Nota,* 694 N.E.2d at 404.

that under Massachusetts law plaintiffs need not prove that [the speaker] knew his statements to be false." *See Nickerson v. Matco Tools Corp.*, 813 F.2d 529, 530 (1st Cir. 1987); *see also Zimmerman*, 575 N.E.2d at 77, 81 ("The speaker need not know 'that the statement is false if the truth is reasonably susceptible of actual knowledge ... if, through a modicum of diligence, accurate facts are available to the speaker.").[20] In any event, Plaintiffs plead such facts. For example, the Amended Complaint details how in 2017, then-Astros bench coach Alex Cora enhanced the Astros Electronic Sign Stealing scheme, became the Red Sox Manager in 2018, and "immediately set out to recreate [the Astros' Electronic Sign Stealing] scheme[]." AC ¶¶74, 91, 108. Such allegations are sufficient to raise the inference that Cora's 2018 Red Sox contract was signed with the then-present intent to not comply with MLB rules and regulations.[21]

The Red Sox further argue that Plaintiffs allege no actionable failure to disclose their

---

[20] *Comley*, 108 F. Supp. 3d at n.13, relied upon by the Red Sox, is not contrary because the statements at issue there were vague promises to promote the plaintiff "someday," and not, as here, specific promises to comply with MLB Rules that the speaker knew he would not follow.

[21] The Red Sox also argue that their statements concerning the teams' players' performances are merely "general commentary on the teams' actual performance ... not any profound analysis or attribution of the causes of such performance." Sox Br. at 4. The Red Sox reason that such statements constitute the sort of "vague, generic, opinion-based puffery" that is not actionable. *Id.* The Red Sox cite *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 21-22 (1st Cir. 2001), in support. But in *Cummings*, the court merely noted some statements touting the "superlative quality of an item, such as 'mint condition' or 'prime merchandise'" was inactionable "puffing," and then upheld the basic proposition that statements susceptible of actual knowledge can give rise to a fraud claim if the statements are false. Here, the statements concerning the reasons for the Red Sox's players' statistics were susceptible of actual knowledge: the speakers knew that the Red Sox were cheating to obtain the statistics. The California, Texas, and Florida cases do not change the analysis. *See It's Just Lunch Int'l LLC v. Island Park Enter. Grp., Inc.*, 2009 WL 10673157, at *4-5 (C.D. Cal. 2009) (statements that could mean many things such that the statement can neither be demonstrably true or false not actionable); *Crown Ranch*, 2012 WL 1072221, at *5 (condemning statements of subjective opinion as inactionable); *MDVIP, Inc. v. Beber*, 222 So.3d 555, 561 (Fla. Dist. Ct. App. 2017)(same). In any event, here, the Red Sox's statements were made misleading by the Red Sox's failure to disclose the cheating scheme and thus, the Red Sox conduct is actionable irrespective of whether the statements, standing alone, were actionable or "puffing."

Electronic Sign Stealing scheme because the Red Sox had no duty to disclose it. Sox Br. at 5.[22] Specifically, the Red Sox contend that because their affirmative disclosures were not material, the failure to disclose the Electronic Sign Stealing scheme could not be an actionable omission. Sox Br. at 6. But the Red Sox misstate the rule.[23] Indeed, the key inquiry is whether the non-disclosed matters are material. *See, e.g., Nota*, 694 N.E.2d at 404 (discussing the duty to disclose material facts (quoting Restatement (Second) of Torts §551)). One cannot escape its duty to disclose by offering only non-material information on a topic while concealing the material facts. Here, the Red Sox made affirmative representations as to player performance that both expressly and implicitly described players' performance as honest. The Red Sox were therefore under an obligation to disclose the material fact of the Electronic Sign Stealing scheme because it made clear that the affirmative representations were misleading.

The Red Sox also argue that they had no duty to disclose based on allegations that the Electronic Sign Stealing scheme went to the basic facts of the transaction, because Plaintiffs and the Red Sox were not involved in a transaction. The Red Sox offer no authority for this

---

[22] The Red Sox cite *Davis v. Dawson*, 15 F. Supp. 2d 64, 137 (D. Mass. 1998), but *Davis* does not support their argument. *Davis* acknowledges that fraudulent disclosure may occur where, for example, "the seller sold and designed a product to include a particular part, had actual knowledge that the part had not been installed in the product sold to the buyer, and knowing that the part was missing, knew that it was responsible for the product's malfunction." *Id.* That is similar to the case here where the Red Sox jointly marketed DraftKings MLB DFS contests, knew that the key component of those contests (player statistics) was tainted by the Red Sox's cheating scheme, and therefore knew that they were responsible for the problems with the MLB DFS contests Plaintiffs purchased.

[23] The only authority the Red Sox cite is *Baldino's Lock & Key Serv., Inc. v. Google, Inc.*, 624 F. App'x 81 82 (4th Cir. 2015), a case discussing the elements of Lanham Act claims, not common law fraud. In that case, the Fourth Circuit merely held that Google's sale of advertising space to entities that placed misleading advertisements did not create Lanham Act liability for Google because Google did not make the misleading representations. The Red Sox argue that allowing DraftKings to place signage at Red Sox events is similar. Not so. Unlike Google, the Red Sox are the ones whose conduct made representations about the integrity of MLB DFS contests misleading. It is the Red Sox's cheating scheme and related failure to disclose that constitutes the bad conduct here, not DraftKings' advertisements. *Baldino* is inapposite.

proposition and Massachusetts law is contrary. Indeed, in *Nota*, the plaintiff subcontractor's "transaction" was not with the architect defendant. *See Nota*, 694 N.E.2d at 405. Here, Plaintiffs' transaction is with the Red Sox's partner DraftKings. The Red Sox knew that its scheme would taint player statistics and that those statistics are basic to the MLB DFS contest transactions. Thus, the Red Sox had a duty to disclose the scheme.[24]

### 2. Plaintiffs need not allege scienter, but do anyway.

The Red Sox argue that Plaintiffs fail to plead the "requisite strong inference of scienter." Sox Br. at 8-9.[25] But "there is no requirement in Massachusetts law that the complaint show a strong inference of scienter." *Feldman v. Aspen Tech., Inc.*, 2007 WL 1089220, at \*9 (Mass. Super. Ct. 2007). Rather, the requirements of Fed. R. Civ. P. 9(b) apply to govern the pleading standard for fraud cases, and it provides that "[m]alice, intent, knowledge, and other condition of the mind of a person may be averred generally." *Feldman*, 2007 WL 1089220, at \*9 (quoting Fed. R. Civ. P. 9(b)). The Red Sox do not argue that Plaintiffs failed to meet the Rule 9(b) pleading standard (and Plaintiffs meet that standard anyway).

Even if the Court finds scienter is an element of the claim, such element can be demonstrated by "recklessness of sufficient degree to create an inference of intent." *See*

---

[24] The Red Sox also discuss the sports fan cases distinguished *supra*, Section II.B. *See* Sox Br. at 7-8. Those cases are distinguishable in connection with Plaintiffs' fraud and deceit claims on the same bases as applied to Plaintiffs' negligence claims. The Red Sox argument that their joint marketing with DraftKings does not distinguish those sports fan cases is contrary to law, which clearly establishes that marketing campaigns can create and expand duties to disclose. *See, e.g.*, *Stanley*, 784 F. Supp. 1570 (accepting plaintiffs' argument that the defendants voluntarily assumed duty to provide warnings in Spanish through their joint advertising and product promotion efforts in Hispanic media); *see also supra*, n.13.

[25] The Red Sox rely on *Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 451-52 (S.D.N.Y. 2010) and its quotation of *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). The quoted language from *Tellabs* concerns the PSLRA's pleading requirements applicable to securities cases, which is unsurprising given that *Glidepath* was also an investor suit. This case, however, is not a securities case. The *Glidepath* and *Tellabs* "strong inference of scienter" pleading requirement is not applicable.

*Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d 599, 619 (S.D.N.Y. 2010). "In order to survive a motion to dismiss, then, plaintiff must have either alleged motive and opportunity or facts constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 620. Here, Plaintiffs have alleged motive (monetary incentives through the Red Sox's partnership with DraftKings and MLB revenue sharing) and opportunity as well as facts constituting strong circumstantial evidence of reckless disregard for how manipulating player statistics would affect MLB DFS contestants in MLB DFS contests the Red Sox co-promoted with DraftKings and MLB. *See, e.g.*, AC ¶¶197-202.

The Red Sox argue that their conduct was motivated by "a competitive desire to win," not to induce class members to participate in MLB DFS contests. Sox Br. at 8-9. Contrary to the Red Sox's supposition, Plaintiffs are not required to show that the Red Sox conduct was performed with the specific purpose of inducing Plaintiffs' reliance. *See Reisman v. KPMG Peat Marwick LLP*, 787 N.E.2d 1060, 1067 (Mass. Ct. App. 2003). Rather, Plaintiffs can satisfy their burden by showing, as they do, that they were among those whom the Red Sox had reason to expect would rely upon their statements and conduct. *Id.*; *see also* AC ¶¶ 197-203. As set forth above, the Red Sox were jointly soliciting Plaintiffs' and the Class's participation in MLB DFS contests with MLB and DraftKings. Plaintiffs need plead no more.[26]

### 3. Plaintiffs allege reasonable reliance.

Plaintiffs reasonably relied on the Red Sox's statements concerning player performance

---

[26] The Red Sox also rely on *Sfiraiala v. Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55, 57-58 (2d Cir. 2018), another securities case, for the proposition that scienter allegations are insufficient when they fail "to allege how any of the individual defendants personally benefited from making the alleged misrepresentations." But the Amended Complaint does allege how the Red Sox stood to benefit from not disclosing their cheating scheme, including, without limitation, through their MLB revenue sharing of DraftKings-related revenues. *See, e.g.*, AC ¶¶42, 502, 546.

and absence of disclosure of the Electronic Sign Stealing scheme that tainted the MLB DFS

contests. A plaintiff's reliance on a defendant's fraudulent misrepresentation or concealment

must be reasonable and justifiable under the circumstances. *See Copley Place Assocs., LLC v.*

*Tellez-Bortoni*, 73 N.E.3d 317, 319 (Mass. Ct. App. 2017). The recipient of a fraudulent

misrepresentation is justified in relying on its truth, although the plaintiff might have ascertained

the falsity of the representation through investigation. *See Zimmerman*, 575 N.E.2d at 81. The

statement relied upon must merely not be "preposterous or palpably false." *Id.*

   As set forth above, MLB DFS contestants would not participate in MLB DFS contests if

they knew that the games' statistics were rigged in a non-public, unknown way. The object of all

MLB DFS contestants is to win their contests. They use all manner of methods to predict MLB

player performance and build their fantasy team rosters. Of course, no method of predicting

MLB players' statistics is perfect, and Plaintiffs need neither plead nor prove that they can

predict such statistics with perfect accuracy. Because the games are based on the relative

performance of contestants' fantasy teams, MLB DFS contestants are merely trying to predict

MLB players' statistics better than other MLB DFS contestants. Thus, the relevant question is

whether MLB DFS players would participate in an MLB DFS contest knowing that its statistics

were tainted. The answer to that is no.

   The Red Sox argue that Plaintiffs' reliance on the belief that MLB player statistics would

not be tainted by violations of the MLB rules and regulations is not reasonable or justifiable in

light of the publicized pre-Class Period steroid abuse scandal and the other Electronic Sign

Stealing schemes engaged in by the Red Sox and Astros. Sox Br. at 10-11. The Red Sox argue

that because these other instances of misconduct were remedied with fines and suspensions, and

not revision of the players' statistics, Plaintiffs could not reasonably rely on the premise that

MLB player statistics would not be tainted by the Electronic Sign Stealing schemes at issue in this case. *Id.* The Red Sox's argument relies on a fundamental misstatement of Plaintiffs' claims. Plaintiffs do not allege that the Red Sox failed to inform them of the *risk* that the Red Sox could be cheating. Rather, Plaintiffs allege that the Red Sox failed to disclose that the Red Sox *actually were cheating*. Thus, the reasonability of reliance inquiry is based on the delta between the known risk of misconduct and the undisclosed actual ongoing misconduct. If that delta is sufficiently large, the plaintiff may reasonably rely on the lack of disclosure. If the risk of misconduct is so great that one must assume the MLB games lack all integrity, the reliance would not be reasonable.[27] Here, Plaintiffs had reason to believe that the past Electronic Sign Stealing had ceased and would not continue. For example, in 2017 the MLB Commissioner issued a statement following MLB's investigation into the Red Sox's prior cheating scandal in which he described the Red Sox's "absolute assurances" that the Red Sox would not further violate the Electronic Sign Stealing prohibition. *See* Golub Dec., Ex. 1; *see also, e.g.*, AC ¶¶66-67 (describing MLB's "thorough investigation" into the Astros conduct).

The Red Sox also argue that Plaintiffs' allegations of reliance are "conclusory" and insufficient to show actual reliance. Sox Br. at 9 (citing AC ¶492). But the Red Sox are incorrect that the only allegation concerning reliance was the single paragraph the Red Sox cite. To the contrary, Plaintiffs allege that MLB DFS contestants, including Plaintiffs, "rely on the accuracy of the past statistics in making decisions about whether to draft a player to their lineups and how much to 'spend' on a player in the draft." AC ¶31.[28] Because Plaintiffs alleged how MLB DFS

---

[27] Surely the Red Sox and the other Defendants do not mean to suggest that MLB games are so tainted by cheating that everyone must reasonably assume that such cheating constantly affects all games.

[28] *See also, e.g., id.* ¶481 (Plaintiffs relied on player performance statistics in entering into MLB DFS contests); *id.* ¶482 (Plaintiffs would "reasonably and justifiably rely upon [the failure to

contests operate, the importance of MLB player statistics, and how the Electronic Sign Stealing

scheme compromised the statistics and therefore the MLB DFS games, Plaintiffs' allegations of

reliance (*i.e.*, how the Electronic Sign Stealing scheme and the Red Sox's—and all

Defendants'—failure to disclose such scheme(s) induced Plaintiffs' to purchase MLB DFS

entries that they would not have purchased but for the Red Sox conduct) cannot reasonably be

described as "conclusory."[29]

### 4. Plaintiffs allege causation.

In attacking Plaintiffs' allegations of causation, the Red Sox conflate the concepts of

reasonable reliance and causation. The Red Sox's sole argument is that because Plaintiffs alleged

the existence of other Electronic Sign Stealing schemes, Plaintiffs' injury could not have been

---

disclose material information concerning the sign stealing scheme] in deciding whether or not to
enter into [MLB DFS] competitions"); *id.* ¶¶116-17 (describing the importance of player
statistics to MLB DFS contests and how electronic sign stealing corrupted those statistics); *id.*
¶¶30-42 (describing how MLB DFS games operate).
[29] The Red Sox rely on three cases for asserting Plaintiffs' allegations are conclusory and
insufficient; each is distinguishable. In *Int'l Fund Mgmt. S.A. v. Citigroup, Inc.*, 822 F. Supp. 2d
368, 386-87 (S.D.N.Y. 2011), the securities plaintiffs' reliance allegations were limited to stating
that the "Plaintiffs and/or their investment managers read and relied upon [defendant's 10-Ks],
including the false financial statements and other statements alleged herein to be false and
misleading." Plaintiffs' allegations here go further, including, *inter alia*, to explain how the Red
Sox omissions materially affected MLB DFS contests and how such omissions affect MLB DFS
contestants' decisions about participating in such contests. In *Stiles v. Wells Fargo Bank*, 2014
WL 7146950, at *5 (N.D. Cal. 2014), the plaintiff alleged only that defendants intended that
plaintiff rely on misrepresentations and that the plaintiff so relied. The *Stiles* court held that the
plaintiff must allege actual reliance, which "occurs when the defendant's misrepresentation is an
immediate cause of the plaintiff's conduct, altering [her] legal relations, and when, absent such
representation, the plaintiff would not, in all reasonable probability have entered into the
transaction." Although Plaintiffs' claims here are based on omissions and not material
misrepresentations, Plaintiffs have met the *Stiles* standard with detailed allegations
demonstrating that no MLB DFS contestants, including Plaintiffs would "in all reasonable
probability, have entered into the transaction." Finally, in *Hall v. Sea World Entm't, Inc.*, 2015
WL 9659911, at *15-17(S.D. Cal. Dec. 23, 2015), the causes of action concerned advertisements
that the plaintiffs did not allege they had actually seen or heard. This case, by contrast, concerns
allegations that the Red Sox failed to disclose their conduct. Necessarily, no Plaintiff could have
seen or heard the Red Sox's failure to act in accordance with its legal obligation. *Hall* is
inapposite.

caused by the Red Sox's failure to disclose the Electronic Sign Stealing scheme at issue in this lawsuit. Sox Br. at 12. The Red Sox do not explain, or provide any authority, for the proposition that knowledge of *other* misconduct means that Plaintiffs' injuries cannot legally be caused by *this* misconduct. In any event, because no reasonable MLB DFS contestant would participate in a MLB DFS contest based on statistics known to be rigged in an unknown way, the Red Sox's failure to disclose the Electronic Sign Stealing scheme caused Plaintiffs' injuries (the induced purchase of entry fees).[30]

### D. Plaintiffs State a Claim for Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must demonstrate (1) a benefit conferred on the defendant by the plaintiff, (2) an appreciation or knowledge of the benefit by the defendant, and (3) acceptance or retention of the benefit by defendant under circumstances which make such acceptance or retention inequitable. *See, e.g.*, *In re Telexfree Securities Litig.*, 389 F. Supp. 3d 101, 106 (D. Mass. 2019). Plaintiffs paid entry fees into DraftKings MLB DFS contests. These entry fees were conferred on the Red Sox through their partnership with DraftKings and the Red Sox's receipt of portions of those entry fees through revenue sharing with MLB. *E.g.*, AC ¶546. The Red Sox accepted and retained such revenue despite engaging in their Electronic Sign Stealing scheme and engaging in the other conduct discussed in this brief and the Amended Complaint.

The Red Sox argue that Plaintiffs' unjust enrichment claim fails because (1) a party with an adequate remedy at law cannot claim unjust enrichment, (2) California and Texas do not allow unjust enrichment claims as an independent cause of action, and (3) Plaintiffs and the Red

---

[30] The Red Sox also argue that Plaintiffs failed to plead actual loss, incorporating the MLB motion to dismiss in support. *See* Sox Br. at 13 (citing MLB Br. Section III). Plaintiffs hereby incorporate their response to the MLB motion to dismiss. *See* MLB Opp. Br. at Section III.D.1.

Sox do not have a direct relationship. For each argument, the Red Sox rely only on the MLB's motion to dismiss brief. Plaintiffs hereby incorporate their response to the MLB's motion to dismiss. *See* MLB Opp. Br. at Section III.F.[31]

## III.   CONCLUSION

For all of the foregoing reasons, and those set forth in Plaintiffs' Oppositions to Defendants Major League Baseball and MLB Advanced Media LP's Motion to Dismiss and The Houston Astros, LLC's Motion to Dismiss, filed contemporaneously herewith, Plaintiffs respectfully request that the Court deny the Red Sox's Motion to Dismiss.

---

[31] In any event, unjust enrichment does not require a particular relationship between the parties." *Greenwald v. Chase Manhattan Mortgage Corp.*, 241 F.3d 76, 78 n.1 (1st Cir. 2001). Unjust enrichment does not require that a defendant receive direct payments from a plaintiff. *Id.* at 81. And "[u]nder the doctrine of unjust enrichment, a plaintiff seeks restitution of a benefit conferred on another whose retention of the benefit at plaintiff's expense would be unconscionable." *Massachusetts v. Mylan Labs*, 357 F. Supp. 2d 314, 323 (D. Mass. 2005). Moreover, to the extent Plaintiffs' remedies at law nullify their unjust enrichment claims, Massachusetts courts have allowed plaintiffs to maintain both claims until trial. *See, e.g.*, *Sentinel Prod. Corp. v. Mobile Chem. Co.*, 2001 WL 92272, at *22 n.15 (D. Mass. Jan. 17, 2001) ("It may be that the existence of an action at law will render the unjust enrichment claim duplicitous at the trial stage. However, the plaintiff should have the option under which theory to proceed.").

Respectfully submitted,

Date: March 6, 2020

By: /s/ David S. Golub
David S. Golub
Steven L. Bloch
Ian W. Sloss
SILVER GOLUB & TEITELL LLP
184 Atlantic Street
Stamford, CT 06901
Tel (203) 325-4491
Email: dgolub@sgtlaw.com
Email: sbloch@sgtlaw.com
Email: isloss@sgtlaw.com

Eric L. Cramer (*pro hac vice*)
Patrick F. Madden (*pro hac vice*)
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Tel (215) 875-3000
Email: ecramer@bm.net
Email: pmadden@bm.net

John D. Radice
Kenneth Pickle
Natasha Fernandez-Silber
April Lambert
RADICE LAW FIRM, P.C.
475 Wall Street
Princeton, NJ 08540
Tel (646) 245-8502
Email: jradice@radicelawfirm.com
Email: kpickle@radicelawfirm.com
Email: nsilber@radicelawfirm.com
Email: alambert@radicelawfirm.com

*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATION

I hereby certify that on March 6, 2020, the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

   /s/ David S. Golub          
DAVID S. GOLUB
