UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| KRISTOPHER R. OLSON, CHRISTOPHER LOPEZ, WARREN BARBER, CHRISTOPHER CLIFFORD and ERIK LIPTAK,<br><br>　　　　　　Plaintiffs,<br>　　v.<br><br>MAJOR LEAGUE BASEBALL; MLB ADVANCED MEDIA, L.P.; HOUSTON ASTROS, LLC; and BOSTON RED SOX BASEBALL CLUB, LP,<br><br>　　　　　　Defendants. | 20 Civ. 632 (JSR)<br>20 Civ. 1000 (JSR)<br><br>**ORAL ARGUMENT REQUESTED** |

---

**DEFENDANTS MAJOR LEAGUE BASEBALL AND MLB ADVANCED MEDIA LP'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

John L. Hardiman
Benjamin R. Walker
Hannah Lonky Fackler
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Tel:  212-558-4000
Fax:  212-558-3558
hardimanj@sullcrom.com
walkerb@sullcrom.com
facklerh@sullcrom.com

*Counsel for Major League Baseball and MLB Advanced Media LP*

March 13, 2020

**TABLE OF CONTENTS**

*Page*

I.   PLAINTIFFS' OPPOSITION CONCEDES THAT THEY SUFFERED NO INJURY. ...................................................................................................................2

II.  PLAINTIFFS' OMISSION THEORY FAILS AS A MATTER OF LAW .........................3

    A.  The MLB Defendants' Relationship with DraftKings Did Not Create Any Duty to Plaintiffs. ..............................................................................................3

    B.  Commissioner Manfred's Statements Did Not Give Rise to a Duty to Disclose Suspected Electronic Sign-Stealing. .........................................................5

    C.  Suspected Rule Violations Are Not "Basic Facts" That the MLB Defendants Were Required to Publicly Disclose to Benefit DraftKings Participants. ..............................................................................................................7

III. PLAINTIFFS' OPPOSITION FAILS TO REHABILITATE THEIR UNJUST ENRICHMENT CLAIM. ..................................................................................................9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams* v. *Nissan N. Am., Inc.*,
395 F. Supp. 3d 838 (S.D. Tex. 2018) ..................................................................................3

*Allen* v. *Steele*,
252 P.3d 476 (Colo. 2011) (en banc) ...................................................................................4

*Alper Restaurant, Inc.* v. *Catamount Devel. Corp.*,
29 N.Y.S.3d 604 (App Div. 2016) .....................................................................................4, 5

*Berger* v. *Sec. Pac. Info. Sys., Inc.*,
795 P.2d 1380 (Colo. App. 1990) ........................................................................................8

*Bigler-Engler* v. *Breg, Inc.*,
213 Cal. Rptr. 3d 82 (Ct. App. 2017) ...................................................................................4

*CLC Roofing, Inc.* v. *Helzer*,
2019 WL 3024483 (Tex. App. July 11, 2019) .....................................................................8

*Doe I* v. *Wal-Mart Stores, Inc.*,
572 F.3d 677 (9th Cir. 2009) ..............................................................................................10

*Durrell* v. *Sharp Healthcare*,
108 Cal. Rptr. 3d 682 (Ct. App. 2010) ...............................................................................10

*Fetter* v. *Schink*,
902 F. Supp. 2d 399 (S.D.N.Y. 2012) ..................................................................................5

*Gramercy Equities Corp.* v. *Dumont*,
531 N.E.2d 629 (N.Y. 1988) .................................................................................................5

*Gutter* v. *Wunker*,
631 So. 2d 1117 (Fla. Dist. Ct. App. 1994) ..........................................................................7

*Halkedis* v. *Two E. End Ave. Apartment Corp.*,
555 N.Y.S.2d 54 (App. Div. 1990) .......................................................................................2

*Heldenfels Bros., Inc.* v. *City of Corpus Christi*,
832 S.W.2d 39 (Tex. 1992) ................................................................................................10

*Hoffman* v. *162 N. Wolfe LLC*,
175 Cal. Rptr. 3d 820 (Ct. App. 2014) .................................................................................3

*J.A.O. Acquisition Corp.* v. *Stavitsky*,
   863 N.E.2d 585 (N.Y. 2007)...................................................................................4

*Le Mon* v. *Nat'l Football League*,
   277 So.3d 1166 (La. 2019) ......................................................................................8

*Lerner* v. *Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006).....................................................................................9

*Mayer* v. *Belichick*,
   605 F.3d 223 (3d Cir. 2010).....................................................................................8

*Nota Constr. Corp.* v. *Keyes Assocs., Inc.*,
   694 N.E.2d 401 (Mass. App. Ct. 1998) ...................................................................7

*In re Rumsey Land Co., LLC*,
   944 F.3d 1259 (10th Cir. 2019) ...............................................................................4

*SiOnyx* v. *Hamamatsu Photonics K.K.*,
   332 F. Supp. 3d 446 (D. Mass. 2018) ......................................................................9

*Sperry* v. *Crompton Corp.*,
   863 N.E.2d 1012 (N.Y. 2007).................................................................................10

*Steinhauser* v. *Steinhauser*,
   2018 WL 1100850 (S.D. Fla. January 24, 2018) ....................................................4

*Wells* v. *John Hancock Mutual Life Ins. Co.*,
   149 Cal. Rptr. 171 (Ct. App. 1978)..........................................................................8

*Zeising* v. *Kelly*,
   152 F. Supp. 2d 335 (S.D.N.Y. 2001).....................................................................5

**Other Authorities**

Restatement (Second) of Torts...............................................................................4, 6, 7

Plaintiffs' opposition brief ("Opposition" or "Opp.") confirms that this case is not a legitimate attempt to obtain legal redress. If it were, Plaintiffs would be able to say whether they *actually lost money* on any of the DraftKings fantasy baseball contests that they allege were tainted by electronic sign-stealing. Instead, they complain only that they would not have participated in the contests had they known more about MLB's[1] response to electronic sign-stealing, just as other disappointed fans have, in other contexts, attempted to use the courts as a forum to voice their displeasure with sports. As has been the case with all such prior attempts, Plaintiffs have not been able to locate a cognizable legal theory that would turn their displeasure into a lawsuit and, therefore, the Amended Complaint should be dismissed.

Plaintiffs' excuse to differentiate their claims from other disappointed fans' claims is fantasy baseball and MLB's relationship with it, which they allege imposes on MLB broad disclosure obligations. But that assertion depends on mischaracterizations of the statements MLB has made about that relationship, which the MLB Defendants exposed in their motion to dismiss. Rather than respond to these arguments, Plaintiffs essentially abandon the principal theory of the Amended Complaint that the MLB Defendants' made affirmative misrepresentations and focus solely on their theory that the MLB Defendants are liable to DraftKings participants for failing to immediately disclose suspicions of rule violations.

The threshold problem with this omission theory is that the MLB Defendants had no relationship with DraftKings participants that could give rise to any disclosure duty, despite Plaintiffs' invention of a new allegation that the MLB Defendants and DraftKings entered into a joint venture. And even if the MLB Defendants conceivably could have had some duty to

---

[1] Capitalized terms not otherwise defined herein have the same meaning ascribed to them in Defendants Major League Baseball and MLB Advanced Media, L.P's Memorandum of Law in Support of Their Motion to Dismiss, dated February 21, 2020 ("Br.").

DraftKings participants in some circumstances, Plaintiffs' Opposition fails to establish that the MLB Defendants had a duty to disclose anything about electronic sign-stealing, because the premise of such an alleged duty—that the MLB Defendants "avow[ed] [*sic*] to safeguard the fairness of [DraftKings] contests" (Opp. at 13)—is unsupported.  Plaintiffs never cite any such promise, because one was never made.

Plaintiffs' case boils down to the proposition that, by promoting DraftKings, the MLB Defendants undertook a nebulous duty to DraftKings participants to tell them any non-public information known by the MLB Defendants that could affect a player's performance (and thus the outcomes of DraftKings contests), and that any failure to do so rendered "illegitimate" the statistics that Plaintiffs concede were objectively accurate.  (Opp. at 11.)  Carried to its logical extreme, Plaintiffs' theory would require the MLB Defendants to immediately disclose any suspicion of rule breaking or any of a myriad of other things that could impact a player's on-field performance (*e.g.*, health issues or personal problems).  This simply has no grounding in any reasonable expectation that Plaintiffs could have had and plainly has no basis in the law.[2]

I.     **PLAINTIFFS' OPPOSITION CONCEDES THAT THEY SUFFERED NO INJURY.**

Plaintiffs' Opposition utterly fails to grapple with the most glaring deficiency in the Amended Complaint: failure to allege cognizable financial harm.  Plaintiffs do not even mention, much less challenge, Defendants' argument that any Plaintiff who won more money in DraftKings contests than he spent on entry fees would have no claim.  *See, e.g.*, *Halkedis* v. *Two E. End Ave. Apartment Corp.*, 555 N.Y.S.2d 54, 54 (App. Div. 1990) ("The claim of fraud is without merit . . . because plaintiffs reaped a substantial profit and cannot now be heard to complain that they

---

[2] The MLB Defendants dispute many of the allegations in the Amended Complaint but accept Plaintiffs' well-pled allegations as true solely for purposes of this motion.

were defrauded."). Instead, Plaintiffs characterize their supposed losses as "the money wagered on DraftKings" (Opp. at 22), but a "wager" that wins surely is not actionable. Thus, Plaintiffs have not sufficiently pled that they were actually damaged, let alone that any injury was caused by nondisclosure of sign-stealing. Plaintiffs' failure in this regard is fatal to all their claims.

## II. PLAINTIFFS' OMISSION THEORY FAILS AS A MATTER OF LAW.

### A. The MLB Defendants' Relationship with DraftKings Did Not Create Any Duty to Plaintiffs.

Essentially conceding that their allegations of affirmative misstatements by the MLB Defendants in the Amended Complaint are meritless, Plaintiffs' Opposition takes the position that the "heart of Plaintiffs' claims" is that MLB "failed to disclose" that player statistics "were distorted by electronic sign-stealing conduct."[3] (Opp. at 10.) Plaintiffs do not seriously contest, because they cannot, that a prerequisite of such an omission claim is a relationship between the plaintiff and defendant that gives rise to a duty of disclosure. *See, e.g.*, *Hoffman* v. *162 N. Wolfe LLC*, 175 Cal. Rptr. 3d 820, 828 (Ct. App. 2014) (California courts "reject[] fraud claims founded on nondisclosure where there was an absence of a relationship between the plaintiff and the defendant"); *Adams* v. *Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 849 (S.D. Tex. 2018) ("Under Texas law, a duty to disclose in the context of fraudulent concealment arises only in limited

---

[3] This concession that alleged nondisclosure is "the heart" of all of Plaintiffs' claims renders foolish Plaintiffs' argument that the MLB Defendants "fail[ed] to address the 'unfair' conduct prong of Plaintiffs' claims" and have thus "conceded the substantive viability of such claims." (Opp. at 13.) By Plaintiffs' own admission, the theory underlying all of Plaintiffs' claims is the same, and thus the conduct that Plaintiffs allege was "deceptive" under state consumer protection statutes—nondisclosure of electronic sign-stealing—is the same conduct that they allege was "unfair"; indeed, they allege it was unfair *because* it was deceptive. Whatever label Plaintiffs choose to use, their claims fail for the same reasons. In any event, the MLB Defendants' motion did explicitly address why Plaintiffs' unfairness claims should be dismissed. (Br. at 9, 19–23.) Plaintiffs' contention that the motion ignored Plaintiffs' omission claim is also plainly wrong. (Opp. at 11.) The MLB Defendants specifically discussed that claim at length. (Br. at 17–18.)

circumstances where there is a fiduciary or confidential relationship.").[4]

In ostensible support of their argument that the MLB Defendants owed them a duty, Plaintiffs rely heavily on §§ 551 and 552 of the Restatement (Second) of Torts, but those sections support MLB's position because they require a "business transaction" between the plaintiff and defendant before any duty to disclose can arise, and no such transaction exists here.  Where the plaintiff and defendant "did not contract to buy anything [or] to perform services," and were not "part of an employment relationship," there is no "business transaction" for § 551 purposes.  *In re Rumsey Land Co., LLC*, 944 F.3d 1259, 1274 (10th Cir. 2019);[5] *see also, e.g.*, *Allen* v. *Steele*, 252 P.3d 476, 483–84 (Colo. 2011) (en banc) (applying Restatement § 552).

Plaintiffs try to sidestep this requirement by claiming for the first time in their Opposition that the relationship between the MLB Defendants and DraftKings amounted to a "joint venture" that effectively created a relationship between the MLB Defendants and every DraftKings customer.  (*See* Opp. at 8–10.)  But the Amended Complaint does not allege facts sufficient to establish the existence of a joint venture.  As Plaintiffs acknowledge, two "essential elements of a joint venture" are "intent of the parties to be associated as joint venturers" and "a provision for the sharing of profits and losses."  (Opp. at 8–9 (quoting *Alper Restaurant, Inc.* v. *Catamount Devel.*

---

[4] Plaintiffs' Opposition purports to transform their negligence claim into a negligent misrepresentation claim, apparently recognizing that an ordinary negligence claim is barred by the economic loss rule.  (*See* Br. at 18; Opp. at 15 n.9.)  But a negligent misrepresentation claim requires "a special or privity-like relationship" not alleged here.  *J.A.O. Acquisition Corp.* v. *Stavitsky*, 863 N.E.2d 585, 587 (N.Y. 2007); *see also, e.g.*, *Steinhauser* v. *Steinhauser*, 2018 WL 1100850, at *3 (S.D. Fla. January 24, 2018) (dismissing negligent misrepresentation claims where "there [were] no allegations of any relationship . . . to support these claims.").

[5] *See also, e.g.*, *Bigler-Engler* v. *Breg, Inc.*, 213 Cal. Rptr. 3d 82, 113 (Ct. App. 2017) (California Supreme Court "has described the necessary relationship giving rise to a duty to disclose" for fraud by omission claim as "necessarily aris[ing] from direct dealings between the plaintiff and defendant; it cannot arise between the defendant and the public at large").

*Corp.*, 29 N.Y.S.3d 604, 606 (App. Div. 2016).)  Nowhere does the Amended Complaint allege that the MLB Defendants and DraftKings intended to form a joint venture.  Nor does it allege that they agreed to share losses.  *See, e.g.*, *Fetter* v. *Schink*, 902 F. Supp. 2d 399, 404 (S.D.N.Y. 2012) ("[T]he fact that an individual may receive a share of the profits is not dispositive, since all of the elements of the relationship must be considered, including whether the alleged agreement contained a provision for sharing losses as well.").[6]

The issue is a red herring in any event because Plaintiffs cite no authority for the proposition that the existence of a joint venture would create a basis for liability here.  *Alper* is inapposite because it addressed only "liability under a contract," 29 N.Y.S.3d at 606, and Plaintiffs assert no contract claims.  *Gramercy Equities Corp.* v. *Dumont*, 531 N.E.2d 629, 633 (N.Y. 1988), merely stands for the proposition that one party to a joint venture may be liable for the fraud of the other party to the joint venture.  There is no allegation that DraftKings made any misrepresentations whatsoever, so there are no DraftKings misrepresentations for which the MLB Defendants could be responsible.  *Gramercy* certainly does not suggest, as Plaintiffs disingenuously claim, that the mere existence of a joint venture creates a duty of disclosure flowing from one party to the joint venture to customers of the other party to the venture.

    **B.**    **Commissioner Manfred's Statements Did Not Give Rise to a Duty to Disclose Suspected Electronic Sign-Stealing.**

Even assuming *arguendo* that Plaintiffs could establish a transaction or other

---

[6] MLB's former equity interest in DraftKings does not close this gap.  *See, e.g.*, *Zeising* v. *Kelly*, 152 F. Supp. 2d 335, 348–49 (S.D.N.Y. 2001) (allegation that receipt of "stock, an opportunity to participate in the management of the company, and an opportunity to invest . . . cannot be construed as providing for the sharing of profits and losses among the parties").  Nor do its sponsorship agreements.  Indeed, Plaintiffs' position would transform MLB into a co-venturer with all of its sponsors and would impose on MLB duties to all individuals who or entities that transacted with those sponsors, which includes businesses as diverse as tire or charcoal manufacturers and banks.

relationship between the MLB Defendants and Plaintiffs that could form the basis for a potential disclosure duty, the MLB Defendants cannot be liable for failing to disclose electronic sign-stealing allegations earlier than they did.  Again citing § 551 of the Restatement, Plaintiffs claim that the MLB Defendants should have made such a disclosure to avoid "mak[ing] untrue or misleading a previous representation."  (Opp. at 13.)  But Plaintiffs have not pointed to a single statement by the MLB Defendants that was even arguably rendered false or misleading by undisclosed allegations of electronic sign-stealing.  Nowhere in the Amended Complaint do Plaintiffs cite any representation suggesting that MLB would enforce its own rules in any particular manner or in any particular timeframe, or that it would immediately publicly disclose all suspected violations.  To the contrary, the MLB Constitution, which Plaintiffs rely on in their Amended Complaint (AC ¶ 44), explicitly grants the Commissioner authority to determine in his discretion when and what action is appropriate for any infraction (*see* Hardiman Decl. Ex. 1 at 1).

The Amended Complaint selectively quotes a number of statements by Commissioner Manfred out of context to try to make it appear that he had made broad representations about preserving the integrity of the game for the benefit of fantasy baseball participants, but the MLB Defendants' motion exposed these allegations for the mischaracterizations that they are.  The statements Plaintiffs misleadingly purport to rely on were actually related to the League's concerns about (i) the risk that unregulated gambling could have a corrupting influence on baseball games (not that on-field rule violations could affect fantasy games) and (ii) the risk that fantasy games could be unfair because employees of fantasy operators might misuse insider data to manipulate fantasy contests (not because rule violations by baseball players could affect fantasy players).  (Br. at 11–13.)  The MLB Defendants could have no duty under any theory of liability to supplement or correct statements they never made.

Plaintiffs have no response, so their Opposition just ignores all of this. Instead, they double down with even broader mischaracterizations and do not tether any of their sweeping statements about what MLB supposedly "vouched" or "avowed" to allegations in the Amended Complaint or any actual representations by the Commissioner Manfred. (*See* Opp. at 2, 13.) Far from saving Plaintiffs' claims, ramping up the rhetoric just illustrates their infirmity.

Moreover, as the MLB Defendants also made clear in their motion, Plaintiffs were plainly on notice that rule violations generally, and electronic sign-stealing specifically, could occur. (Br. at 9-10.) Plaintiffs do not dispute this, but they attempt misdirection by claiming that when MLB announced punishments of electronic sign-stealing violations in 2017, it also "conveyed to the public that such conduct would not recur, and, if it did, MLB would act similarly if other electronic sign stealing were discovered." (Opp. at 13.) This is neither what MLB said at the time nor a reasonable reading of what it intended to "convey."

### C.  Suspected Rule Violations Are Not "Basic Facts" That the MLB Defendants Were Required to Publicly Disclose to Benefit DraftKings Participants.

Nor can Plaintiffs establish a duty to disclose electronic sign-stealing "as a 'fact basic to the transaction' that [the] MLB Defendants were required to disclose." (Opp. at 12 (discussing Restatement § 551(2)(e).) As is clear from the cases Plaintiffs cite in support of this proposition, and from the face of § 551(2)(e), they are putting the cart before the horse—failing to disclose certain basic facts about a transaction may create liability, but only if there was a duty to disclose these facts in the first place because of the relationship at issue. *See Nota Constr. Corp. v. Keyes Assocs., Inc.*, 694 N.E.2d 401, 405 (Mass. App. Ct. 1998) (architect failed to disclose basic facts in plans he knew would be provided to and relied on by potential bidders on project).[7]

---

[7] *See also Gutter* v. *Wunker*, 631 So. 2d 1117, 1118 (Fla. Dist. Ct. App. 1994) (attorney who received finder's fee for soliciting investors failed to disclose facts in offering documents that

As stated above, there was none here.

Plaintiffs also have not plausibly alleged that a perceived absence of sign-stealing was "basic" to their decision to participate in DraftKings contests, because they do not dispute that they were aware of prior rules infractions. Nor do they have a logical foundation for the premise that the MLB Defendants concealed information about sign-stealing in order to induce fans to participate in DraftKings contests, because they cannot point to a single statement in which the MLB Defendants connected enforcement of the rules of baseball with DraftKings.

Moreover, if the MLB Defendants were required to immediately disclose, as "basic facts," every suspected instance of electronic sign-stealing or other rule violation that could affect a player's performance, there would be no appreciable limit on their disclosure obligations. The same theory would justify mandatory disclosure of *anything* non-public that could affect performance, regardless of privacy concerns or other countervailing considerations, opening the courts to the morass of litigation arising from professional sports that has been uniformly rejected. *See, e.g.*, *Mayer* v. *Belichick*, 605 F.3d 223, 237 (3d Cir. 2010); *Le Mon* v. *Nat'l Football League*, 277 So.3d 1166, 1168 (La. 2019).

Plaintiffs argue that allegations of electronic sign-stealing are "basic facts" that should have been disclosed because they supposedly rendered player statistics "illegitimate" and "unreliable." (Opp. at 12.) But as the MLB Defendants made clear in their opening brief, and Plaintiffs concede, the statistics are undeniably accurate reflections of what occurred on the field.

---

investors would rely upon); *Wells* v. *John Hancock Mut. Life Ins. Co.*, 149 Cal. Rptr. 171, 174–75 (Ct. App. 1978) (insurance company failed to disclose that insurance policy securing loan that was subject of transaction had lapsed); *Berger* v. *Sec. Pac. Info. Sys., Inc.*, 795 P.2d 1380, 1383 (Colo. App. 1990) (employer failed to disclose company's financial condition to employee); *CLC Roofing, Inc.* v. *Helzer*, 2019 WL 3024483, at *6 (Tex. Ct. App. July 11, 2019) (discussing Restatement § 551 but finding no duty to disclose because no fiduciary relationship).

Whether or not players comply with the rules is just one of many factors—known and unknown, predictable and not—that can affect a player's performance besides skill. Thus, Plaintiffs cannot dispute that they received from DraftKings exactly what they expected: contests determined by players' objective on-field performance. Plaintiffs try to make much of the MLB Defendants having referred to DraftKings contests as "games of skill" (Opp. at 1, 2, 4, 21), but they concede that the skill is analyzing "objectively measurable performance statistics." (Dkt. No. 44 at 3.) The raw material to detect advantages gained by any player or team's idiosyncratic tendencies, including as a result of sign-stealing, is in the statistics, and those statistics consistently reflected "measurable" real-life events observable to all DraftKings participants.[8]

### III. PLAINTIFFS' OPPOSITION FAILS TO REHABILITATE THEIR UNJUST ENRICHMENT CLAIM.

Plaintiffs' effort to rescue their unjust enrichment claim by emphasizing cases disclaiming any formal contractual relationship requirement (Opp. 16) and proclaiming that states "allow" their claim (*id.* at 24) misses that unjust enrichment is, at its core, "an equitable stopgap for occasional inadequacies in contractual remedies at law" inappropriate for the indirect relationship between Plaintiffs and the MLB Defendants here. *SiOnyx* v. *Hamamatsu Photonics K.K.*, 332 F. Supp. 3d 446, 472 (D. Mass. 2018). As a quasi-contractual claim, "[t]he lack of any

---

[8] Plaintiffs' theory as to the MLB Defendants' supposed motivation for their alleged deception is contradicted by their own allegations. Plaintiffs claim that the MLB Defendants (and all thirty member clubs) "determined to take no action to stop" alleged electronic sign-stealing to "avoid[] the detrimental consequences that would result from the public disclosure" because of their business with DraftKings. (Opp. at 6–7.) But Plaintiffs concede that MLB investigated—and disclosed to the public—rules violations in 2017 and 2018 (*see* AC ¶¶ 66, 106), which means that they are really saying, at most, that the MLB Defendants merely failed to act *quickly enough* in 2019. In sum, the Amended Complaint lacks a single plausible allegation connecting MLB's actions with respect to electronic sign-stealing and the League's relationship with DraftKings. *Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006) ("plaintiffs must allege facts that give rise to a strong inference of fraudulent intent").

prior relationship between Plaintiffs and [defendant] precludes the application of an unjust enrichment theory." *Doe I* v. *Wal-Mart Stores, Inc.*, 572 F.3d 677, 685 (9th Cir. 2009); *see also Sperry* v. *Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007) (unjust enrichment fails if "the connection . . . is simply too attenuated"). Unjust enrichment is improper where, as here, there is no underlying "fraud, duress, or . . . undue advantage," *Heldenfels Bros., Inc.* v. *City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992), and where "the plaintiff gets the exchange which he expected" at the time. *Durrell* v. *Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 700 (Ct. App. 2010).[9]

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed.

Dated: March 13, 2020

Respectfully submitted,

*/s/ John L. Hardiman*
John L. Hardiman
Benjamin R. Walker
Hannah Lonky Fackler
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Tel: 212-558-4000
Fax: 212-558-3558
hardimanj@sullcrom.com
walkerb@sullcrom.com
facklerh@sullcrom.com

*Counsel for Major League Baseball and MLB Advanced Media LP*

---

[9] Plaintiffs attempt to evade the *Martin* rule's limitations on MLB's liability for any of Plaintiffs' common-law claims by arguing that, because the thirty major league clubs have consented to the Commissioner speaking and acting for the League, they have ratified and approved the Commissioner's supposed "failure to take action to stop or disclose the member team misconduct." (Opp. at 23.) This is pure nonsense. A general delegation of authority does not amount to endorsement of conduct that supposedly benefited certain member clubs to the detriment of others. In any event, because Plaintiffs have not plausibly alleged any deception by Commissioner Manfred, they cannot possibly seek to attribute deception to all member clubs.