UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRISTOPHER R. OLSON, CHRISTOPHER LOPEZ, WARREN BARBER, CHRISTOPHER CLIFFORD, AND ERIK LIPTAK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MAJOR LEAGUE BASEBALL; MLB ADVANCED MEDIA, LP; HOUSTON ASTROS, LLC; and BOSTON RED SOX BASEBALL CLUB, LP,<br><br>Defendants. | Case No. 1:20-cv-00632-JSR |

**HOUSTON ASTROS, LLC'S REPLY MEMORANDUM OF LAW
<u>IN FURTHER SUPPORT OF ITS MOTION TO DISMISS</u>**

**VINSON & ELKINS L.L.P.**

Michael C. Holmes (*admitted pro hac vice*)
2001 Ross Avenue
Suite 3900
Dallas, TX 75201
Tel: 214-220-7814
Fax: 214-999-7814
mholmes@velaw.com

Clifford Thau
Hilary L. Preston
1114 Avenue of the Americas
32nd Floor
New York, NY 10036
Tel: 212-237-0000
Fax: 917-849-5342
cthau@velaw.com
hpreston@velaw.com

*Attorneys for Houston Astros, LLC*

# Table of Contents

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................3

    I.     Plaintiffs' Claims Are Even More Attenuated Than Those Brought by Disgruntled Fans, Which Courts Have Repeatedly Rejected. ...........................................3

    II.    Plaintiffs' Arguments in the Opposition Cannot Save Their Fraud Claim. ......................4

        A.     The Opposition Does Not Identify Any False Statement or Duty to Disclose. ...............................................................................................................................4

        B.     Plaintiffs Do Not Allege the Required Strong Inference of Fraudulent Intent. ..................................................................................................................6

        C.     Plaintiffs Cannot Identify Plausible Allegations of Reliance or Damages in the Complaint...................................................................................................7

    III.   Because Plaintiffs Cannot Identify Any Duty Owed By the Astros, Their Negligence Claim Must be Dismissed. .............................................................................8

    IV.   Plaintiffs Do Not Dispute That Wagering is Not Covered by the DTPA, and Cannot Plausibly Allege that the Astros' Conduct Was a Producing Cause of Damages. ...........................................................................................................................8

    V.    Unjust Enrichment Is Not An Independent Cause of Action. ......................................10

CONCLUSION ............................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Baleares Link Exp., S.L. v. GE Engine Servs.-Dallas, LP*,
   335 S.W.3d 833 (Tex. App.— Dallas 2011, no pet).................................................................. 7

*Castillo v. Tyson*,
   701 N.Y.S.2d 423 (1st Dep't 2000) ........................................................................................ 3

*David O. Kemp, P.C. v. Nationwide Agribusiness Ins. Co.*,
   No. 3:11-CV-1745-N, 2012 WL 13019688 (N.D. Tex. June 12, 2012) .................................. 10

*Dunlap v. Gayle*,
   No. 13-12-00105-CV, 2013 WL 1500377 (Tex. App.—Corpus Christi Apr. 11, 2013,
   no pet.) .................................................................................................................................... 4

*Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*,
   51 S.W.3d 573 (Tex. 2001)................................................................................................. 6, 7

*Hand v. Dean Witter Reynolds Inc.*,
   889 S.W.2d 483 (Tex. App.—Houston [14th Dist.] 1994, write denied 1994).......................... 8

*Herpich v. Wallace*,
   430 F.2d 792 (5th Cir. 1970) ................................................................................................... 1

*Hoggett v. Brown*,
   971 S.W.2d 472 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) .................................... 6

*In re Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.*,
   942 F.3d 1160 (9th Cir. 2019) ................................................................................................. 3

*Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*,
   535 F.3d 359 (5th Cir. 2008) ................................................................................................... 5

*Kinnard v. Circle K Stores*,
   966 S.W.2d 613 (Tex. App.—San Antonio 1998, no pet.)........................................................ 9

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006) .................................................................................................... 6

*Mary Kay, Inc. v. Dunlap*,
   No. 3:12-CV-0029-D, 2012 WL 2358082 (N.D. Tex. June 21, 2012)...................................... 9

*Mayer v. Belichick*,
   605 F.3d 223 (3d Cir. 2010) .................................................................................................... 3

*Meineke Disc. Muffler v. Jaynes,*
   999 F.2d 120 (5th Cir. 1993) ................................................................................................... 9

*Precision Imaging of New York, P.C. v. Allstate Ins. Co.*,
   263 F. Supp. 3d 471 (S.D.N.Y. 2017) ..................................................................................... 7

*SmithKline Beecham Corp. v. Doe,*
   903 S.W.2d 347 (Tex. 1995)................................................................................................... 6

*Timbercreek Canyon Prop. Owners Ass'n, Inc. v. Fowler*,
    07-14-00043-CV, 2015 WL 4776695 (Tex. App.—Amarillo Aug. 12, 2015, no pet.) ............ 10

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................................... 4

**Other Authorities**

Restatement (Second) of Torts § 551 ........................................................................................ 5, 6

Defendant Houston Astros, LLC submits this reply memorandum of law in further support of its motion (the "Motion") to dismiss the Amended Complaint, and in response to Plaintiffs' Memorandum in Opposition to the Motion (the "Opposition" or "Opp. at __.")[1]

## PRELIMINARY STATEMENT

The Moving Brief demonstrates that Plaintiffs, putative representatives of a class of DraftKings fantasy baseball participants, fail to state a claim against the Astros, an entity with which Plaintiffs have no contractual or fiduciary relationship, and that never provided any service or made any actionable representation to Plaintiffs. In the Opposition, Plaintiffs are unable to escape a body of case law holding that viewers of sporting events have no legal claim against teams for rules violations or similar acts. Plaintiffs do not dispute this legal principle, but try unsuccessfully to argue that the Astros somehow owe a *greater* duty to fantasy baseball participants than to ticketholders and fans. Plaintiffs' contention that they are "more akin to defrauded investors than to 'disgruntled fans'" underscores the absurdity of this position. Plaintiffs are not stockholders of the Astros to whom fiduciary duties could be owed, and the well-established statutory framework applied to protect investors in the securities markets unquestionably does not apply to participants in fantasy baseball contests.[2] Contrary to Plaintiffs' wishful thinking—as individuals who contracted with non-party DraftKings—their relationship

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Astros' Memorandum of Law in Support of the Motion, (Dkt. No. 37) (the "Moving Brief" or "Mov. Br. at __.")  As in the Moving Brief, the Astros incorporate by reference the arguments made in the Reply Memoranda of Law filed by MLB, MLBAM, and the Red Sox (the "MLB Reply" and the "Red Sox Reply," respectively).  The Astros will reference particular sections of the MLB Reply and the Red Sox Reply throughout the discussion below in an effort to avoid duplication.

[2] *See Herpich v. Wallace*, 430 F.2d 792, 801 (5th Cir. 1970) (the Securities Exchange Act is "a means for preventing inequitable and unfair practices on securities exchanges and over-the-counter markets and for insuring fairness and honesty in securities transactions generally.")

with the Astros is even more attenuated than those of fans whose claims for rules violations have been repeatedly dismissed.

As explained in the Moving Brief, Plaintiffs' fraud claim must be dismissed because Plaintiffs have failed to plausibly allege, let alone plead facts with particularity, that the Astros made any misrepresentation to Plaintiffs. Plaintiffs' identification of vague player statements regarding their performance, or even the Astros "Earn History" slogan, do not come close to alleging an actionable misrepresentation. And, Plaintiffs' citation to inapposite "partial disclosure" case law cannot create a duty to disclose because Plaintiffs cannot point any misleading statement by the Astros, or allege that any Plaintiff entered into a commercial transaction with the Astros. Plaintiffs also cite to inapposite standards in an attempt to argue that they have adequately alleged an intent to deceive, but fall far short of the Second Circuit's stringent requirement to plead facts giving rise to a "strong inference" of fraudulent intent. Finally, nothing in the Opposition can remedy the flaw that Plaintiffs have not plausibly alleged that they relied on any conduct by the Astros to their detriment. In the Opposition, Plaintiffs do not—because they cannot—contend that DraftKings baseball statistics were inaccurate and therefore cannot plausibly allege that they were harmed by any sign stealing. Grasping at straws, Plaintiffs contend that sign stealing "distorted" player statistics "in *unknown and unpredictable* ways"—demonstrating the pure speculation of their claims. *See* Opp. at 16 (emphasis added); *see also* Section II, *infra*.

The Opposition similarly fails to refute the arguments in the Moving Brief that Plaintiffs' remaining claims must be dismissed. Plaintiffs do not cite a single case in response to the Astros' argument that—because no duty runs from the Astros to Plaintiffs—their negligence claim must fail. *See* Section III, *infra*. Plaintiffs also do not dispute that wagering competitions are not protected under the DTPA, but contend that DraftKings provides "collateral service" to DFS

2

wagering. Because Plaintiffs' DTPA claim is not directed to such services, however, this argument cannot save their claim. *See* Section IV, *infra*. Finally, despite Plaintiffs' protestations, they cannot escape the majority rule that unjust enrichment is not an independent claim under Texas law, requiring dismissal of Plaintiffs' unjust enrichment claim. *See* Section V, *infra*.

## ARGUMENT

**I. Plaintiffs' Claims Are Even More Attenuated Than Those Brought by Disgruntled Fans, Which Courts Have Repeatedly Rejected.**

In the Moving Brief, the Astros demonstrated that—according to a significant body of case law (including from two Federal Courts of Appeal and New York's Appellate Division)—there is no legal claim for a violation of a sports league's internal rules. *See* Mov. Br. at 7–9; *see also, e.g. In re Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.*, 942 F.3d 1160, 1171 (9th Cir. 2019); *Mayer v. Belichick*, 605 F.3d 223, 231 (3d Cir. 2010); *Castillo v. Tyson*, 701 N.Y.S.2d 423, 425 (1st Dep't 2000). In the Opposition, Plaintiffs do not challenge this body of case law. To the contrary, Plaintiffs appear to concede that a plaintiff who purchases "a license to attend or view a professional sporting event" has no right to an event free of rules violations. Opp. at 6.

Plaintiffs attempt to distinguish themselves from the "disgruntled fans" in these cases by characterizing themselves as "active participants" in games of skill as opposed to "passive viewers" of sporting events, but provide no case law or rationale in support of this distinction. Opp. at 2–5. Rather, Plaintiffs' argument only illustrates that their relationship to the Astros is even more attenuated than the relationship between teams and "disgruntled fans." Unlike the viewer of a sporting event, Plaintiffs concede that they did not enter any commercial transaction with the Astros, *see* Opp. at 6 ("entry into a MLB DFS contest is a consumer transaction that is distinct from viewing or attending an MLB game . . ."), but entered into a separate and distinct transaction *only* with DraftKings, *id.* ("Plaintiffs were and are participants in a separate and

3

*unrelated commercial transaction . . .*"). Accordingly case law providing that plaintiffs have no legal right to a sporting event free of rules violations applies with even greater force to Plaintiffs.

## II.     Plaintiffs' Arguments in the Opposition Cannot Save Their Fraud Claim.

Plaintiffs' fraud claim must be dismissed because, as demonstrated in the Moving Brief, they do not allege facts satisfying the elements required under Texas or other applicable state law[3], and do not satisfy the heightened pleading requirements of Rule 9(b). *See* Mov. Br. at 11–13.

### A.     The Opposition Does Not Identify Any False Statement or Duty to Disclose.

Defendants demonstrated in the Moving Brief that the offhand and vague statements about player performance, and the Astros theme of "Earn History," that Plaintiffs characterize as misrepresentations are not actionable statements of fact that can give rise to a fraud claim. *See* Mov. Br. at 10–11.  Rather than refute these arguments, Plaintiffs repeat the Complaint's allegations, to no avail. The cited player statements concerning swing mechanics (*see* Opp. at 9: "that's what spring training for me was for was getting used to this new swing and its starting to come out right now and it feels good") and the "Earn History" slogan (*id.*) cannot plausibly be characterized as representations concerning compliance with MLB rules.[4]  *See* Mov. Br. at 10. Even if they could, the statements are too vague and imprecise to be actionable misrepresentations. *See Dunlap v. Gayle*, No. 13-12-00105-CV, 2013 WL 1500377, at *4 (Tex. App.—Corpus Christi Apr. 11, 2013, no pet.) ("imprecise or vague representation[s] constitute[] a mere opinion," and therefore are not actionable misrepresentations); *see also* Red Sox Reply at 2.

---

[3] In the Moving Brief, the Astros cited primarily Texas law, but demonstrated that regardless of which State's law applies, Plaintiffs claims must be dismissed. *See* Mov. Br. at 10 n.2. Because Plaintiffs do not respond to the Astros' arguments regarding the law of other states, the Astros respond with Texas law herein.

[4] Plaintiffs also cite an October 17, 2018 statement by Jeffrey Luhnow concerning the Astros' monitoring of opposing team dugouts at away games. Opp. at 8. This conduct is not the subject of the Complaint, and Plaintiffs have not alleged facts suggesting that the statement was fraudulent.

4

The Opposition also contends that the Astros "made numerous statements designed to assure the public . . . that MLB DFS contents functioned as games of skill based on honestly-derived performance statistics, and that appropriate safeguards were in place to keep fantasy baseball competitions fair." *See, e.g*. Opp. at 5. However, these contentions are unsupported by any factual allegations in the Complaint. Rather, Plaintiffs purport to support these sweeping statements with citations to irrelevant and conclusory Complaint allegations, or with no citation at all. *See, e.g. id.* (citing Compl. ¶¶ 3 and 7); *id.* at 6 (no citation); *see also* MLB Reply at 7.

Plaintiffs' arguments in the Opposition likewise cannot save their material omission theory. In the Moving Brief, the Astros demonstrated that Plaintiffs cannot proceed on such a theory because they have not plausibly alleged the existence of a duty to disclose and courts have specifically held that there is no duty on the part of a sports team to disclose rule violations. Mov. Br. at 11. Unable to distinguish this case law, Plaintiffs try a new theory, contending, based on Section 551 of the Restatement of Torts, that a duty to disclose existed because the Astros "possesse[d] superior information" to Plaintiffs and made "partial disclosure[s]," which the alleged sign stealing rendered misleading. Opp. at 10–11. As an initial matter, Plaintiffs do not plausibly explain how the sign stealing rendered any of the alleged "partial disclosures"—which include the Astros signing the MLB Constitution, general statements about player success, and the Astros' purported "aggressive marketing" of DraftKings (for which Plaintiffs do not cite a single factual allegation)—false or misleading.[5] *See* MLB Reply at 6–7; Red Sox Reply at 4–5.

---

[5] Plaintiffs also cite as "partial disclosures" statements by the Commissioner concerning baseball's integrity and characterizing fantasy baseball as a game of skill. Opp. at 12. Not only do Plaintiffs fail to adequately allege that such statements were misleading, Plaintiffs' conclusory allegation that Mr. Manfred was the Astros "duly authorized agent and spokesperson" is not plausible in light of the Complaint's allegations showing that the Astros do not control Mr. Manfred's actions. *See, e.g. Indian Harbor Ins. Co. v. Valley Forge Ins. Grp*., 535 F.3d 359, 364 (5th Cir. 2008)*.*

Moreover, as Plaintiffs acknowledge, the validity of Section 551 as a foundation for a duty to disclose is at least questionable. *See* Opp. at 10 n.37; *SmithKline Beecham Corp. v. Doe,* 903 S.W.2d 347, 352 (Tex. 1995) (stating that the Texas Supreme Court "has never embraced [Section 551] as a rule of law in Texas"). Even if valid, the line of cases upon which Plaintiffs rely for this proposition applies solely to counterparties in commercial transactions and, accordingly, does not apply to Plaintiffs' claims. *See, Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) (cited by Plaintiffs at Opp. p. 10 n.37) (prior statements "[c]learly . . . did not give rise to a duty to disclose" where the plaintiff and the defendants were not counterparties in a commercial transaction); *see also* MLB Reply at 4; Red Sox Reply at 4–5.

### B. Plaintiffs Do Not Allege the Required Strong Inference of Fraudulent Intent.

In the Moving Brief, the Astros demonstrated that Plaintiffs' fraud claim should be dismissed for the additional reason that they do not allege facts giving rise to a strong inference that the Astros intended to deceive any DraftKings user. Mov. Br. at 11–12. Plaintiffs do not—because they cannot—argue that the Complaint's allegations meet this requirement. Instead, Plaintiffs try to ignore the standard. Opp. at 14–15. The Second Circuit has made clear, however, that plaintiffs may not "base claims of fraud on speculation and conclusory allegations." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). Accordingly, Plaintiffs must—but do not— "allege facts that give rise to a strong inference of fraudulent intent." *Id.*; Red Sox Reply at 5–6.

The Opposition also mischaracterizes the substantive standard for fraudulent intent under Texas law. Plaintiffs contend that, even without privity, intent to deceive exists where a speaker "makes a misrepresentation . . . to a person or class of persons . . . who the speaker 'has reason to expect' will act in reliance upon the misrepresentation." Opp. at 14 (quoting *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 580 (Tex. 2001)). But Plaintiffs fail to discuss the crux of the Texas Supreme Court's ruling in *Ernst & Young*, which explains, "the reason-to-expect

6

standard requires more than mere foreseeability; the claimant's reliance must be *'especially likely'* and justifiable, and the transaction sued upon must be the type the defendant contemplated." 51 S.W.3d at 580 (emphasis added); *see also Baleares Link Exp., S.L. v. GE Engine Servs.-Dallas, LP*, 335 S.W.3d 833, 839 (Tex. App.—Dallas 2011, no pet.) ("Even an obvious risk that a third person will rely on a representation is not enough to impose liability." (internal quotations and alterations omitted)). Absent *any* factual allegation that the Astros intended for Plaintiffs to receive and rely on any alleged representations regarding sign stealing or player performance statistics, Plaintiffs' fraud claim must be dismissed. Mov. Br. at 12.

### C. Plaintiffs Cannot Identify Plausible Allegations of Reliance or Damages in the Complaint.

Plaintiffs' conclusory allegations of reliance—which, as discussed in the Moving Brief, do not allege a single instance in which Plaintiffs based a DFS wager on allegedly compromised player statistics, or otherwise explain how any Plaintiff made wagering decisions—are insufficient to survive a motion to dismiss. *See* Mov. Br. at 12–13. In addition, because Plaintiffs do not allege that DraftKings' statistics or salary algorithm was inaccurate, they cannot plausibly allege that sign stealing caused them any damage. *Id.* In the Opposition, Plaintiffs cannot remedy either fatal deficiency. Instead, Plaintiffs essentially admit the speculative nature of their claims, asserting that "the Astros' sign-stealing scheme 'distorted' in *unknown and unpredictable* ways player statistics." *See* Opp. at 16 (emphasis added). Such "counterfactual speculation is insufficient to satisfy the basic plausibility pleading requirement." *See Precision Imaging of New York, P.C. v. Allstate Ins. Co.*, 263 F. Supp. 3d 471, 477–78 (S.D.N.Y. 2017) (Rakoff, J.)); *see also* Red Sox Br. at 7–8 Moreover, Plaintiffs neither allege nor contend in the Opposition that they lost money on their DraftKings wagers (*i.e.* that their entry fees exceeded any DraftKings winnings), failing to plead any facts suggesting that they suffered actual damage. *See* MLB Reply at 2–3.

**III.     Because Plaintiffs Cannot Identify Any Duty Owed By the Astros, Their Negligence Claim Must be Dismissed.**

Plaintiffs' negligence claim against the Astros must be dismissed because, as demonstrated in the Moving Brief, Plaintiffs' conclusory allegations that the Astros owed them a duty of care do not state a claim, and contradict numerous decisions holding that no such duty exists.  *See* Mov. Br. at 10–11.  In the Opposition, Plaintiffs do not refute either of these points and, in fact, do not cite a single case.  Rather, they simply cross-reference the section of Opposition contending that the Astros had a duty to disclose for purposes of a fraud claim.  *See* Opp. at. 16–17.  For the reasons discussed in Section II above, no such duty exists.  *See also* Red Sox Reply at 7–8.

**IV.     Plaintiffs Do Not Dispute That Wagering is Not Covered by the DTPA, and Cannot Plausibly Allege that the Astros' Conduct Was a Producing Cause of Damages.**

In the Moving Brief, the Astros demonstrated that Plaintiffs' DTPA claim must be dismissed because DFS wagering competitions are not protected by the DTPA.  Mov. Br. at 15–17.  Plaintiffs attempt to confuse the issue in the Opposition with an irrelevant distinction between "games of chance" and "games of skill," but ultimately do not dispute that the wagering competitions that form the basis of their Complaint (however characterized) are intangibles, and not "goods or services" within the meaning of the DTPA.  *See* Opp. at 19.  Instead, Plaintiffs now contend that DraftKings provides a "collateral service" for these wagering competitions that *is* covered by the DTPA.  Opp. at 18–21.  Where a plaintiff's "central objective is the acquisition of an intangible"—here, the opportunity to participate in fantasy baseball wagering—he or she may bring a DTPA claim as consumer of a "collateral service" associated with that intangible only when plaintiff (1) "complain[s] about such service" and (2) when the service is "an important objective of the transaction."  *Hand v. Dean Witter Reynolds Inc.*, 889 S.W.2d 483, 500 (Tex. App.—Houston [14th Dist.] 1994, writ denied).  The Complaint fails to meet either requirement.

8

First, Plaintiffs do not complain about, but rather tout, the alleged collateral services provided by DraftKings: "creation of a unique interactive platform for multiple contestants to compete against one another" and "managing and transmitting huge amounts of player performance data to participants." Opp. at 21. Accordingly, such "collateral services" are not covered by the DTPA as a matter of law. *See Meineke Disc. Muffler v. Jaynes*, 999 F.2d 120, 125 (5th Cir. 1993) (plaintiff was not a DTPA consumer where his claim was based on misrepresentations about intangible trademarks and not the services provided by defendant).

Second, DraftKings' purported "collateral services" are merely incidental to Plaintiffs' wagering transactions—not an "important objective" thereof. *See Mary Kay, Inc. v. Dunlap*, No. 3:12-CV-0029-D, 2012 WL 2358082, at *3 (N.D. Tex. June 21, 2012) (dismissing DTPA claims where the object of the transaction was to provide plaintiff with intangible rights, not associated goods or services). Contrary to Plaintiffs' contentions, the creation of the DraftKings platform and DraftKings' management and transmission of player data are no more "central" to Plaintiffs' fantasy baseball wagering than Circle K's facilitation of plaintiff's lottery transaction in *Kinnard v. Circle K Stores*, 966 S.W.2d 613, 617–18 (Tex. App.—San Antonio 1998, no pet.), which the court found incidental to plaintiff's central objective. Accordingly, the cited DraftKings services do not change the fact that Plaintiffs are not consumers under the DTPA. *See id.* at 618.

Plaintiffs also make a half-hearted stab at arguing that the Astros' conduct was a "producing cause" of actual damages by cross-referencing their fraud damages arguments. *See* Opp. at 22. As described in the Moving Brief and in Section II.C s*upra*, Plaintiffs cannot plausibly allege that any sign stealing was the "cause in fact" of any actual damage.[6]

---

[6] Plaintiffs do not address, and therefore concede, the Astros' argument in the Moving Brief that the Complaint does not adequately allege a "false, misleading, deceptive and/or unfair" practice within the meaning of the DTPA. *See* Mov. Br. at 18 n.4.

9

## V. Unjust Enrichment Is Not An Independent Cause of Action.

As explained in the Moving Brief, the majority rule in Texas, followed by federal courts applying Texas law, is that unjust enrichment is not an independent cause of action. Accordingly, Plaintiffs' unjust enrichment claim must be dismissed. Mov. Br. at 18–19. In the Opposition, Plaintiffs cite the minority view in an unsuccessful attempt to refute this argument. Opp. at 23 n.99. Similarly, Plaintiffs' statement that "the Texas Supreme Court has expressly 'affirm[ed] an award of unjust enrichment damages,'" simply affirms the Astros' argument in the Moving Brief: "[u]njust enrichment is a measure of damages, not a cause of action." *See* Mov. Br. at 18.[7]

## CONCLUSION

For the foregoing reasons and those set forth in the Moving Brief, the Court should dismiss the Complaint. Because Plaintiffs have already had the opportunity to amend, and still fail to state a claim upon which relief can be granted, the Court should dismiss the Complaint with prejudice.

Dated: March 13, 2020                                             Respectfully submitted,

|  |  |
|---|---|
| Michael C. Holmes *(admitted pro hac vice)* <br> VINSON & ELKINS LLP <br> 2001 Ross Avenue <br> Suite 3900 <br> Dallas, TX 75201 <br> Tel: 214-220-7814 <br> Fax: 214-999-7814 <br> mholmes@velaw.com | /s/ *Hilary L. Preston* <br> Clifford Thau <br> Hilary L. Preston <br> VINSON & ELKINS LLP <br> 1114 Avenue of the Americas <br> New York, NY 10036 <br> Tel: 212-237-0000 <br> Fax: 917-849-5342 <br> cthau@velaw.com <br> hpreston@velaw.com |

---

[7] Even if unjust enrichment could be recognized as a separate cause of action, Plaintiffs have not alleged the required promise by one party to another for payment of some monetary or other benefit. *Timbercreek Canyon Prop. Owners Ass'n, Inc. v. Fowler*, No. 07-14-00043-CV, 2015 WL 4776695, at *6 (Tex. App.—Amarillo Aug. 12, 2015, no pet.) Nor do Plaintiffs allege facts demonstrating that they conferred any benefit upon the Astros. *David O. Kemp, P.C. v. Nationwide Agribusiness Ins. Co.*, No. 3:11-CV-1745-N, 2012 WL 13019688, at *3 (N.D. Tex. June 12, 2012).