UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KRISTOPHER R. OLSON, CHRISTOPHER LOPEZ, WARREN BARBER, CHRISTOPHER CLIFFORD, AND ERIK LIPTAK, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

MAJOR LEAGUE BASEBALL; MLB ADVANCED MEDIA, L.P.; HOUSTON ASTROS, LLC; and BOSTON RED SOX BASEBALL CLUB, L.P.,

Defendants.

Case No. 1:20-CV-00632-JSR
Case No. 1:20-CV-01000-JSR

**ORAL ARGUMENT REQUESTED**

**DEFENDANT BOSTON RED SOX BASEBALL CLUB, L.P.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendant Boston Red Sox Baseball Club, L.P.*

March 13, 2020

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................... ii

CITATION AND ABBREVIATION CONVENTIONS.................................................. iv

I. PLAINTIFFS' COMMON LAW FRAUD CLAIM FAILS (COUNT 9). .............1

A. Plaintiffs Fail to Identify an Actionable Omission. ....................................1

B. Plaintiffs Fail to Plead the Requisite Strong Inference of Scienter. ............5

C. Plaintiffs Fail Adequately to Plead Actual or Reasonable Reliance. ...........6

D. Plaintiffs Fail to Plead Causation. ..............................................................7

II. PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENCE (COUNT 11). .........................................................................................7

III. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS (COUNT 12). .............8

IV. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE MCPA (COUNT 10). .........................................................................................9

A. Plaintiffs' Failure to Make a Proper Pre-Suit Demand Requires Dismissal. ..........................................................................................9

B. Plaintiffs Fail to Allege a Cognizable Injury under the MCPA. ................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baldino's Lock & Key Service, Inc. v. Google, Inc.*,
624 F. App'x 81 (4th Cir. 2015) ....................3, 4

*Benjamin v. Fremont Inv. & Loan.*,
Civ. No. 17-11727-PBS, 2018 WL 4017595 (D. Mass. Aug. 22, 2018) ....................9

*Bowers v. Federation Internationale de L'Automobile*,
489 F.3d 316 (7th Cir. 2007) ....................7

*Cottam v. CVS Pharmacy*,
764 N.E.2d 814, 821-23 (Mass. 2002) ....................8

*Cummings v. HPG Int'l, Inc.*,
244 F.3d 16 (1st Cir. 2001) ....................3

*Feltmate v. Dumas*,
No. C97-00566, 2000 WL 331995 (Mass. Super. Ct. Mar. 13, 2000) ....................6

*Iannacchino v. Ford Motor Co.*,
888 N.E.2d 879 (Mass. 2008) ....................10

*IKB Int'l S.A. v. Bank of Am. Corp.*,
584 Fed. Appx. 26, 27 (2d Cir. 2014) ....................5

*LEM 2Q, LLC v. Guar. Nat'l Title Co.*,
144 A.3d 174 (Pa. Super. Ct. 2016) ....................4

*Moynihan v. LifeCare Ctrs. of Am., Inc.*,
No. 02-P-495, 2003 WL 22717663 (Mass. App. Ct. Nov. 18, 2003) ....................9

*Nickerson v. Matco Tools Corp.*,
813 F.2d 529 (1st Cir. 1987) ....................2, 3

*Nota Constr. Corp. v. Keyes Assocs., Inc.*,
694 N.E.2d 401 (Mass. App. Ct. 1998) ....................3, 4

*Ramiro Aviles v. S & P Glob., Inc.*,
380 F. Supp. 3d 221 (S.D.N.Y. 2019) ....................5

*Rodi v. S. New Eng. Sch. of Law*,
389 F.3d 5 (1st Cir. 2004) ....................9

*Sentinel Prods. Corp. v. Mobile Chem. Co.*,
No. Civ.A. 98-11782-PBS, 2001 WL 92272 (D. Mass. Jan. 17, 2001)........................8

*Sfiraiala v. Deutsche Bank Aktiengesellschaft*,
729 F. App'x 55 (2d Cir. 2018) ......................................................................5

*Shaulis v. Nordstrom, Inc.*,
865 F.3d 1 (1st Cir. 2017)..........................................................................10

*Silva v. Todisco Servs., Inc.*,
No. 1684CV02778-BLS2, 2018 WL 1413763 (Mass. Super. Ct. Mar. 6, 2018) ...........................................................................................6

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
332 F. Supp. 3d 446 (D. Mass. 2018) ..............................................................8

*Stanley Indus. Inc. v. W.M. Barr & Co.*,
784 F. Supp. 1570 (S.D. Fla. 1992) ................................................................8

*Zimmerman v. Kent*,
575 N.E.2d 70 (Mass. App. Ct. 1991) ........................................................3, 6

**Statutes & Rules**

Fed. R. Civ. P. 9(b) .......................................................................................5

M.G.L. c. 93A § 9(3) .......................................................................................9

**Other Authorities**

Restatement (Second) of Torts § 551(2)(b) ...........................................................2

Restatement (Second) of Torts § 551(2)(e) ...........................................................4

## CITATION AND ABBREVIATION CONVENTIONS

**Entities and Parties**

- "Boston Red Sox" or "Red Sox": Defendant Boston Red Sox Baseball Club, L.P.
- "Houston Astros" or "Astros": Defendant Houston Astros, LLC
- "MLB": Defendant Major League Baseball
- "MLBAM": Defendant MLB Advanced Media, L.P.
- "MLB Defendants": MLB and MLBAM
- "Plaintiffs": Named plaintiffs Kristopher R. Olson, Christopher Lopez, Warren Barber, Christopher Clifford and Erik Liptak, together with the putative classes they purport to represent

**Terms**

- "Br. __": Defendant Boston Red Sox Baseball Club, L.P.'s Memorandum of Law in Support of its Motion to Dismiss, dated February 21, 2020
- "Complaint" or "Compl.": The Amended Class Action Complaint filed in this matter on February 14, 2020
- "DFS": Daily fantasy sports
- "MCPA": The Massachusetts Consumer Protection Act (M.G.L. c. 93A)
- "Opp. __": Plaintiffs' Memorandum in Opposition to Defendant Boston Red Sox Baseball Club, L.P.'s Motion to Dismiss, dated March 6, 2020
- "MLB Reply": Defendant Major League Baseball and MLB Advanced Media LP's Reply Memorandum of Law in Support of Their Motion to Dismiss, dated March 13, 2020, filed concurrently herewith

Plaintiffs try desperately to distinguish themselves from the various sports audience members and ticketholders who uniformly have been barred from bringing the same type of claims that Plaintiffs bring here. Plaintiffs believe that the fact that they pay fees to participate in fantasy contests based on these games instead of buying tickets for seats somehow entitles them to more protection than those unsuccessful previous plaintiffs. Plaintiffs are wrong; their relationship to these games and these Defendants is even more attenuated than those at issue in those cases. Plaintiffs do not even attempt to rebut the inevitable consequence of allowing these claims to proceed, namely that it would open the floodgates to litigation over any blown call, rule infraction, flawed strategy and undisclosed injury, the very concern articulated by courts that previously dismissed more direct claims. Plaintiffs claims should be dismissed.[1]

## I. PLAINTIFFS' COMMON LAW FRAUD CLAIM FAILS (COUNT 9).

### A. Plaintiffs Fail to Identify an Actionable Omission.

Despite initially pursuing their fraud claim based on both alleged affirmative misrepresentations and omissions (Compl. ¶¶ 462-94), Plaintiffs now concede that they are proceeding exclusively on the theory that the Red Sox omitted to disclose material information—the alleged electronic sign-stealing—that it purportedly had a duty to disclose. (Opp. 15.)

Relying on the second and third prongs of the Restatement-based standard addressed in the Red Sox's brief (Br. 5) (thereby conceding that no duty arises from the first prong ((Br. 5-6)), Plaintiffs argue that the Red Sox had a duty to disclose the alleged electronic sign-stealing: (1) to correct a prior affirmative representation of fact rendered misleading by that omission; and (2) because the absence of electronic sign-stealing was a fact "basic" to Plaintiffs' DFS transactions. (Opp. 14-19.) Plaintiffs are wrong on both counts.

---

[1] The Red Sox incorporates herein all arguments in the MLB Reply that correspond to arguments previously incorporated from MLB in the Red Sox's opening brief.

No Duty to Correct a Misleading Statement. Plaintiffs concede that to make out an omission claim under the second prong, they must first identify an actual statement of fact that was rendered misleading by the alleged omission. (Opp. 14.) Even after abandoning their affirmative misstatement theory, Plaintiffs argue that those same representations are the statements that purportedly were rendered misleading by the failure to disclose the alleged electronic sign-stealing. (Opp. 15, 16 n.18-19, 17 n.20-21.) But Plaintiffs still miss the point; the prior statement in question must itself be a statement of *fact*. Restatement (Second) of Torts § 551(2)(b); (Opp. 14 (stating the standard as “to prevent a partial or ambiguous statement *of fact* from being misleading” (emphasis added)). Here, as the Red Sox explained in their opening brief, each of the affirmative statements in question was a statement of opinion or a promise of future performance, not a statement of present fact. (Br. 3-5.) For the same reasons those statements cannot be “false” unless the speaker did not believe the statement at the time it was made (*id.*), such a statement is likewise incapable of being labeled misleading—based on an omission or otherwise—unless the same showing is made. Thus, Plaintiffs’ omission theory fails for the same reasons already addressed in the Red Sox’s opening brief. (*Id.*)

Plaintiffs suggest that the Red Sox misstate the standard required to demonstrate that a promise of future performance is false or misleading at the time it was made, arguing that, under Massachusetts law, a fraud plaintiff need not prove that the defendant knew his statements to be false. (Opp. 16-17.) But Plaintiffs themselves admit in a footnote that the cases upon which the Red Sox relies correctly “set[] out the general rule that promises of future performance are not actionable as fraud unless the person making the representation believed it to be false at the time it was made”. (Opp. 16 n.18.) And the cases that Plaintiffs cite do not even purport to address promises of future performance. *See Nickerson v. Matco Tools Corp.*, 813 F.2d 529, 530 (1st Cir. 1987) (statement that employee had visited the company warehouse and observed that

sufficient product existed to fill orders); *Zimmerman v. Kent*, 575 N.E.2d 70, 81 (Mass. App. Ct. 1991) (statement that engineer had made certain estimates that he in fact had not made).[2]

Plaintiffs then argue that their allegations "raise the inference that *at least some* of the alleged statements were made by individuals who believed them to be false at the time the statements were made". (Opp. 16, n.18 (emphasis added).) But the subsequent discussion addresses only the alleged promises of adherence to MLB rules in Alex Cora's employment contract (Opp. 17), conceding that Plaintiffs cannot make that showing for any of the other promises of future performance discussed in the Red Sox's brief (Br. 3-5). Even with respect to Mr. Cora's alleged promise, the conclusory allegation that he "immediately set out to recreate" the Astros' alleged electronic sign-stealing scheme sets forth no plausible facts with respect to his state of mind when he signed his employment contract. Plaintiffs also fail to articulate how they could have been misled by a promise in a non-public contract that they never saw.[3]

Plaintiffs turn next to relying on unspecified promotional activities that the Red Sox supposedly engaged in relating to DraftKings, which Plaintiffs try to convert into affirmative "representations about the integrity of MLB DFS contests" (Opp. 18 n.23) to then form the basis of their omission claim. But again, Plaintiffs miss a critical step; they fail to specify any actual representation of fact, which is a necessary predicate for an omission claim.[4]

---

[2] To the extent *Nickerson* and *Zimmerman* purport to set forth a standard for fraud generally, the First Circuit specifically has disavowed it as inconsistent with the Restatement, which requires knowledge of falsity. *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 23 (1st Cir. 2001).

[3] Plaintiffs' reliance on *Nota Construction Corp. v. Keyes Associates, Inc.*, 694 N.E.2d 401 (Mass. App. Ct. 1998) (Opp. 16), is misplaced. There, the defendant architect's contractual statement of fact (not a promise of future performance) was made precisely to be shared with subcontractors like the plaintiff to solicit bids. *Nota*, 694 N.E.2d at 405.

[4] Plaintiffs' attempt to distinguish *Baldino's Lock & Key Service, Inc. v. Google, Inc.*, 624 F. App'x 81 (4th Cir. 2015), on the basis that "the Red Sox are the ones whose conduct made representations about the integrity of MLB DFS contests misleading" misses the point. The Red

Plaintiffs also attempt to characterize Mr. Cora's generic, opinion-based puffery about the team's performance as "susceptible of actual knowledge". That misses the point. As discussed in the Red Sox's opening brief, those statements do not purport to analyze or attribute the cause of the team's performance—they simply describe it. (Br. 4.) And as demonstrated by the myriad cases cited by the Red Sox, which Plaintiffs conclusorily denounce as distinguishable (Opp. 17 n.21), subjective statements that a batter had a "good at-bat" or did "an outstanding job" are precisely the kind of puffery incapable of demonstrable truth or falsity. (Br. 4.)

No Omission of Facts Basic to the Transaction. Plaintiffs' argument that they can premise their omission claim on the Red Sox's alleged knowing concealment of "facts basic to the transaction" where there is no transaction between the parties likewise fails. The Restatement specifically provides that "[o]ne *party to a business transaction* is under a duty to exercise reasonable care to disclose *to the other* before *the transaction* is consummated . . . (e) facts basic *to the transaction* . . .". Restatement (Second) of Torts § 551(2)(e) (emphasis added). Numerous courts have confirmed that this provision applies only in the context of a business transaction between the parties. *See, e.g.*, *LEM 2Q, LLC v. Guar. Nat'l Title Co.*, 144 A.3d 174, 182 (Pa. Super. Ct. 2016) (Section 551 duties to disclose "apply only in the context of a *business transaction between the parties*").[5]

Even if Plaintiffs could show that a transaction between the parties is not a prerequisite to liability under § 551 (they cannot), Plaintiffs' "basic facts" theory still fails. Plaintiffs claim that they considered it a basic prerequisite to their participation in DraftKings

---

Sox cited *Baldino's* for the proposition that allowing DraftKings to place a logo or other signage on a stadium or website does not constitute a statement by the Red Sox. (Br. 6.)

[5] Plaintiffs' reliance on *Nota*, 694 N.E.2d at 405 (Opp. 19), again is misplaced because the plaintiff was not a stranger to the contract as discussed above.

DFS that the underlying performance metrics not only be reported correctly, but that they be achieved in a specific way. (Opp. 3, 19.) Plaintiffs do not plead any facts, as they must, to establish that the Red Sox had any basis to expect that Plaintiffs viewed the DFS contests in that idiosyncratic manner. (*See also infra* § I.C; MLB Reply § II.C.)

**B. Plaintiffs Fail to Plead the Requisite Strong Inference of Scienter.**

Plaintiffs argue that, under Massachusetts law, they need not plead a "strong inference" of scienter. (Opp. 19.) But it is black letter law that a federal court sitting in diversity applies federal procedural rules—including Fed. R. Civ. P. 9(b)—and the Second Circuit does require Plaintiffs to plead a "strong inference" of scienter. *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 281 (S.D.N.Y. 2019) ("[C]ourts in this Circuit have regularly held that Rule 9(b) requires a complaint raising a common-law fraud claim to allege facts that create not just a plausible inference, but a 'strong inference,' of scienter."); *IKB Int'l S.A. v. Bank of Am. Corp.*, 584 Fed. Appx. 26, 27 (2d Cir. 2014). Plaintiffs do not even try to argue they meet that standard.

Plaintiffs also appear to misapprehend *whose* scienter they must plead. "When the defendant is a corporate entity . . . the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Sfiraiala v. Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55, 58 (2d Cir. 2018). Plaintiffs do not plead any facts that the Red Sox as an organization or its senior management was aware of the electronic sign-stealing allegedly conducted by unspecified players and a coach (Alex Cora), which Plaintiffs allege those individuals concealed. Instead, Plaintiffs seek to impute scienter of those players and coach to the Red Sox (Compl. ¶¶ 468-70, 476). Under *Sfiraiala*, Plaintiffs must plead that those individuals themselves possessed the requisite intent. Any "motive and opportunity" possessed by the Red Sox organization (Opp. 20 & n.26) is irrelevant. Plaintiffs fail to support a strong inference that those individuals intended to induce Plaintiffs to participate

in DraftKings DFS—as opposed to the more plausible inference that they acted (if at all) out of a desire to win. Plaintiffs do not dispute this, instead suggesting that they need not plead intent to induce under Massachusetts law. (Opp. 20.) Not only is that contradicted by their brief (Opp. 14 ("for the purpose of inducing the plaintiff to act thereon")), but they do not address the cases from the other states that clearly do require specific intent to induce (Br. 8).

**C. Plaintiffs Fail Adequately to Plead Actual or Reasonable Reliance.**

With respect to actual reliance, despite the fact that their omission claim relies in part on the existence of affirmative statements that Plaintiffs claim were rendered misleading, Plaintiffs still do not allege that they read or heard any of those statements. Their claim of actual reliance therefore fails for all the reasons stated in the Red Sox's opening brief. (Br. 9.)

With respect to reasonable reliance, a plaintiff must show that its purported reliance "was reasonable under the circumstances".[6] *Silva v. Todisco Servs., Inc.*, No. 1684CV02778-BLS2, 2018 WL 1413763, at *6 (Mass. Super. Ct. Mar. 6, 2018). Plaintiffs assert that their willingness to participate *at all* in DFS was based on an assumption that performance metrics would not be impacted by infractions of MLB regulations or other factors that affected performance in an "unknown way".[7] The unreasonableness of that assumption is demonstrated by Plaintiffs' own conduct during the relevant period and other information publicly available to them. (Br. 9-12.) Moreover, Plaintiffs do not plead that the pertinent MLB regulations were publicly available or that they read them, so Plaintiffs cannot reasonably claim to have relied on

[6] Plaintiffs incorrectly articulate a different standard that, on its face, applies only to affirmative misrepresentations, not omissions. (Opp. 21 (citing *Zimmerman*, 575 N.E.2d at 81).)

[7] Contrary to Plaintiffs' suggestion (Opp. 22), absolute certainty is not required; red flags are sufficient to undermine the reasonableness of reliance. *See Feltmate v. Dumas*, No. C97-00566, 2000 WL 331995, at *5 (Mass. Super. Ct. Mar. 13, 2000) (homebuyer's reliance on alleged omissions about susceptibility to flooding was unreasonable given existence of "red flags").

assumed compliance with them. Plaintiffs also attempt to distinguish MLB rule infractions from other elements of chance that they concede make it impossible to predict player performance with any certainty—because rule infractions supposedly affect metrics in an "unknown way". (Opp. 21.) That Plaintiffs are aware of the existence of weather, injury, non-electronic sign-stealing, poor officiating or any other of the myriad and maybe even "unfair" elements of chance that affect performance does not render them any more susceptible to prediction than rule infractions. Thus, Plaintiffs have not set forth any basis to conclude that they reasonably would have accorded rule infractions any unique significance in their decision to participate in DFS.

### D. Plaintiffs Fail to Plead Causation.

Plaintiffs' only response to the Red Sox's arguments on causation is that "knowledge of **other** misconduct [does not mean] that Plaintiffs' injuries cannot legally be caused by **this** misconduct". (Opp. 24.) Plaintiffs miss the point. The Red Sox's argument is that Plaintiffs' continued participation in DFS despite multiple public reports of electronic signing-stealing during the class period refutes the central premise of their causation theory—that they would not have participated in DFS if they knew the "truth". (Br. 12.) Moreover, Plaintiffs ignore that the "other" misconduct that they purport to distinguish is of the same nature and actually forms a part of their allegations against Defendants in this matter. (*Id.*)

## II. PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENCE (COUNT 11).

Plaintiffs' attempts to distinguish the sports cases that establish the absence of a duty by the Red Sox to Plaintiffs (Br. 13-15) all fail.

*First*, Plaintiffs argue that those cases address only the "injury" element of their negligence claims, not the existence of a duty. (Opp. 13 n.14.) Plaintiffs are wrong. *See, e.g.*, *Bowers v. Federation Internationale de L'Automobile*, 489 F.3d 316, 325 (7th Cir. 2007) ("The defendants had no duty to provide a race to anyone, however, except insofar as they took on a

contractual obligation to provide one."). Each of the sports cases cited in the Red Sox's brief discusses that plaintiffs had no "right" to certain disclosures about a match or a certain quality of play, which is another way of saying that the defendants owed them no duty. (Br. 7-8, 14-15.)

*Second*, Plaintiffs point to the Red Sox's unspecified marketing activities relating to DraftKings. (Opp. 12-13.) But those activities in no way distinguish the sports cases, where defendant athletes', sports teams', leagues' and promoters' similar marketing of their own events did not give rise to any relevant duty of care to viewers. (Br. 8.) None of the cases that Plaintiffs cite to argue that "advertising conduct" can give rise to a duty of care establishes otherwise. (Opp. 11-12 & n.13.) Each of those cases involved a company advertising its own product—in which case they had preexisting duties independent of advertising—or a party that otherwise made an express factual representation that gave rise to a duty. *E.g.*, *Stanley Indus. Inc. v. W.M. Barr & Co.*, 784 F. Supp. 1570, 1573-76 (S.D. Fla. 1992) (products liability case holding that manufacturer and retailer had duty to include warnings on product in Spanish instead of just English when the product was marketed in Hispanic media); *Cottam v. CVS Pharmacy*, 764 N.E.2d 814, 821-23 (Mass. 2002) (pharmacy assumes duty to warn customers of side effects when it advertises promise to do so or voluntarily includes a partial list). Since Plaintiffs fail to identify any representation made by the Red Sox about DraftKings, those cases are inapposite.

## III. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS (COUNT 12).

The Red Sox incorporates the MLB Reply as to the unjust enrichment claim.[8]

---

[8] The additional case that Plaintiffs cite for the proposition that unjust enrichment claims may proceed in the alternative until trial, *Sentinel Products Corp. v. Mobile Chemical Co.*, No. Civ.A. 98-11782-PBS, 2001 WL 92272 (D. Mass. Jan. 17, 2001), is inapplicable because this is not a case where "the enforceability of the contract is in dispute". *See SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 332 F. Supp. 3d 446, 473 (D. Mass. 2018) (addressing *Sentinel*).

## IV. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE MCPA (COUNT 10).

### A. Plaintiffs' Failure to Make a Proper Pre-Suit Demand Requires Dismissal.

Plaintiff is wrong that the demand requirement is procedural and thus inapplicable in this federal diversity case. (Opp. 9-10 (citing an inapplicable Wisconsin consumer protection statute).) Courts addressing the MCPA have held that its demand requirement is "not merely a procedural nicety", but a "prerequisite to suit" and "special element of the cause of action" that must be pleaded. *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 19 (1st Cir. 2004). Federal courts sitting in diversity have applied this demand requirement. *See, e.g.*, *id.* Plaintiff Olson argues that he has not yet formally asserted an MCPA claim, but rather provided notice of his intent to amend after expiration of the 30-day period. But the MCPA's plain language requires the demand at least 30 days prior to the filing of any "action", M.G.L. c. 93A § 9(3), not a claim, so this deficiency cannot now be cured. *See Benjamin v. Fremont Inv. & Loan.*, Civ. No. 17-11727-PBS, 2018 WL 4017595, at *5 (D. Mass. Aug. 22, 2018) (allowing amendment only "[i]n the event a demand letter *was* mailed or delivered" 30 days before filing suit (emphasis added)).

Plaintiff Olson also incorrectly argues that he "need not list a specific monetary loss in the demand letter" (Opp. 10). None of the cases cited by Plaintiffs in which courts have allowed demand letters without a dollar amount (Opp. 10 & n.11) supports a blanket rule that excuses such detail. *See Moynihan v. LifeCare Ctrs. of Am., Inc.*, No. 02-P-495, 2003 WL 22717663, at *1 (Mass. App. Ct. Nov. 18, 2003) (demand deficient where it "contained neither a reasonable description of the plaintiff's injuries nor a damage figure of an amount which would enable the defendant to assess the plaintiff's claim").[9] Plaintiff could have printed his

[9] Plaintiff cites no authority, and there is none in the statute, for the notion that the pre-suit demand requirement is "less important" in the putative class action context (Opp. 11 n.12).

DraftKings account statement showing entry fees paid and proceeds received. Instead, the Red Sox had no basis to understand the extent of his alleged losses (or whether he made money).

**B. Plaintiffs Fail to Allege a Cognizable Injury under the MCPA.**

In his opposition, Plaintiff Olson makes clear that the only injury he alleges under the MCPA is that the Red Sox's failure to disclose its alleged electronic sign-stealing "caused him to pay entry fees that he would not have paid if the Red Sox's conduct were known". (Opp. 7.) But that is precisely the type of "purchase-as-injury" theory that the First Circuit and Massachusetts Supreme Judicial Court have rejected. *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 10 (1st Cir. 2017). In fact, Plaintiff's claimed "injury" is directly analogous to the purchase price of the sweater at issue in *Shaulis*, which the plaintiff there likewise claimed she would never have paid if she knew it was sold to her under false pretenses. *Id.* at 11.[10] The case on which Olson relies, *Iannacchino v. Ford Motor Co.*, 888 N.E.2d 879 (Mass. 2008), which is addressed at length in *Shaulis*, is not to the contrary. There, plaintiffs did demonstrate an economic loss distinct from the alleged deception itself that was "measurable by the cost to bring the vehicles into compliance". *Id.* at 886-87. Plaintiff does not attempt to make any analogous showing here. At best, he alleges that the statistics on which the DFS contests were premised were "tainted", thus creating *some* risk that *some* contestants might have performed better or worse than they hypothetically would have in the absence of electronic sign-stealing. (Opp. 4-5.) That is simply not enough for Olson to demonstrate injury under the MCPA. *Shaulis*, 865 F.3d at 10 (it is "not enough to claim that the defendant's improper conduct created a *risk* of real economic damages", the plaintiff must show that he actually suffered some such harm (quotation omitted)).

[10] Seizing on dicta about a Rolex watch, Plaintiff suggests that the holding in *Shaulis* "is not that a 'purchase-as-injury' theory is barred by the MCPA, but rather that the conduct inducing purchase must be material to the purchase". (Opp. 8.) Plaintiff is wrong. *Shaulis* was an unqualified rejection of the purchase-as-injury theory. 865 F.3d at 11.

Dated: March 13, 2020

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

by

*/s/* Lauren A. Moskowitz

Katherine B. Forrest
Michael T. Reynolds
Lauren A. Moskowitz
Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendant Boston Red Sox Baseball Club, L.P.*