# Exhibit A-2
# [REDACTED]

## CLASS ALLEGATIONS

241.    Plaintiffs Olson, Lopez, Barber, Clifford, and Liptak bring this action on behalf of

themselves and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a),

23(b)(1), 23(b)(2) and 23(b)(3), as representatives of the class defined as follows (the

"Nationwide Class")[119]:

> All individuals who participated in MLB fantasy baseball contests that took place
> from April 1, 2015 through October 30, 2019 and paid an entry fee for, and
> entered a lineup into, an MLB fantasy baseball contest.

242.    Plaintiff Olson also seeks to certify the following Massachusetts subclass (the

"Massachusetts Subclass"):

> All individuals residing in the Commonwealth of Massachusetts who participated
> in MLB fantasy baseball contests that took place from April 1, 2015 through
> October 30, 2019 and paid an entry fee for, and entered a lineup into, an MLB
> fantasy baseball contest.

243.    Plaintiff Lopez also seeks to certify the following California subclass (the

"California Subclass"):

> All individuals residing in the State of California who participated in MLB DFS
> contests that took place from April 1, 2015 through October 30, 2019 and paid an
> entry fee for, and entered a lineup into, an MLB fantasy baseball contest.

244.    Plaintiff Barber also seeks to certify the following Texas subclass (the "Texas

Subclass"):

> All individuals residing in the State of Texas who participated in MLB
> fantasy baseball contests that took place from April 1, 2015 through
> October 30, 2019 and paid an entry fee for, and entered a lineup into, an
> MLB fantasy baseball contest.

245.    Plaintiff Clifford also seeks to certify the following Florida subclass (the "Florida

Subclass"):

---

[119] Collectively, the Class and the Subclasses defined below are referred to as the "Classes."

All individuals residing in the State of Florida who participated in MLB
fantasy baseball contests that took place from April 1, 2015 through
October 30, 2019 and paid an entry fee for, and entered a lineup into, an
MLB fantasy baseball contest.

246.   Plaintiff Liptak also seeks to certify the following Colorado subclass (the

"Colorado Subclass"):

All individuals residing in the State of Colorado who participated in MLB
fantasy baseball contests that took place from April 1, 2015 through
October 30, 2019 and paid an entry fee for, and entered a lineup into, an
MLB fantasy baseball contest.

247.   Plaintiffs Olson, Lopez, Barber, Clifford, and Liptak, on behalf of the Nationwide

Class, seek certification of claims against Defendants MLB and MLBAM for violation of the

MASS. GEN. LAW, Ch. 93A, § 1 *et seq*., CAL. BUS. & PROF. CODE § 17200, *et seq*., CAL. CIV.

CODE § 1750, *et seq*., TEX. BUS. & COM. CODE ANN. § 17.41 *et seq*., FLA. STAT. § 501.204, *et*

*seq*., and COLO. REV. STAT. § 6-1-101, *et seq*., and the substantially similar laws of the following

states:

Alabama, Alaska, Arkansas, Connecticut, Delaware, District of Columbia,
Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana,
Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana,
Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North
Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina,
South Dakota, Tennessee, Utah, Vermont, Virginia, Washington, West Virginia,
Wisconsin, Wyoming.

248.   Plaintiffs Olson, Lopez, Barber, Clifford, and Liptak, on behalf of the Nationwide

Class, seek certification of claims against all Defendants for fraud/fraudulent non-disclosure,

negligent misrepresentation, and unjust enrichment, in violation of the laws of Massachusetts,

California, Texas, Florida and Colorado, and the substantially similar laws of the following

states:

Alabama, Alaska, Arkansas, Connecticut, Delaware, District of Columbia,
Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana,

Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming.

249.    Plaintiffs, on behalf of the Nationwide Class, seeks certification of a claim against Defendant Houston Astros for violation of the TEX. BUS. & COM. CODE ANN. § 17.41 *et seq*.

250.    Plaintiff Olson, on behalf of the Massachusetts Subclass, seeks certification of a claim against Defendant Boston Red Sox Baseball Club, L.P. for violation of the MASS. GEN. LAW, Ch. 93A, § 1 *et seq*.

251.    Plaintiff Olson, on behalf of the Massachusetts Subclass, seeks certification of claims against Defendants MLB, MLBAM and Boston Red Sox for violation of the MASS. GEN. LAW., Ch. 93A, § 1, *et seq*., and against all Defendants for fraud, unjust enrichment and negligence.

252.    Plaintiff Lopez, on behalf of the California Subclass, seeks certification of claims against Defendants MLB and MLBAM for violations of CAL. BUS. & PROF. CODE § 17200, *et seq*., CAL. CIV. CODE § 1750, *et seq*., and against all Defendants for fraud, unjust enrichment and negligence.

253.    Plaintiff Barber, on behalf of the Texas Subclass, seeks certification of claims against Defendants MLB and MLBAM for violation of TEX. BUS. & COM. CODE ANN. § 17.41 *et seq*., and against all Defendants for fraud, unjust enrichment and negligence.

254.    Plaintiff Clifford, on behalf of the Florida Subclass, seeks certification of claims against Defendants MLB and MLBAM for violation of FLA. STAT. § 501.204, *et seq*, and against all Defendants for fraud, unjust enrichment and negligence.

255.     Plaintiff Liptak, on behalf of the Colorado Subclass, seeks certification of claims

against Defendants MLB and MLBAM for violations of COLO. REV. STAT. § 6-1-101, *et seq.*,

and against all Defendants for fraud, unjust enrichment and negligence.

256.     Plaintiffs reserve the right to expand, narrow or otherwise modify or refine the

definition of the Classes based on additional information obtained through further investigation

and discovery, and/or in order to accommodate any of the Court's manageability concerns.

257.     All Defendants concealed the existence of their conduct.  Plaintiffs and the

members of the Classes were unaware of the facts alleged herein without any fault or lack of

diligence on their part and could not have reasonably discovered Defendants' conduct. For this

reason, any statute of limitations that would otherwise apply should be tolled to the earliest date

of Defendants' wrongful conduct.  In addition, Defendants are estopped from relying on any

applicable statute of limitation.

258.     ***Numerosity***. Members of the Classes are so numerous (consisting of millions of

DraftKings users) and geographically dispersed that individual joinder is impracticable.

Beginning no later than 2017, DraftKings operated in 43 states as well as the District of

Columbia and collected entry fees for millions of entries purchased in states other than New

York.  Data published by The Fantasy Sports & Gaming Association establishes that in 2017 and

subsequent years covered by this lawsuit there were more than 50 million fantasy sports players

of which approximately 39% participated in fantasy baseball.[120] Published data specific to

DraftKings shows that in May 2018, DraftKings had approximately 19 million contest entries,

---

[120] *Industry Demographics*, FANTASY SPORTS & GAMING ASSOC., https://thefsga.org/industry-demographics/  (accessed Feb. 13, 2020).

generating approximately $137 million in handle and $14 million in revenue, with daily fantasy baseball responsible for 9.5 million of those entries.[121]

259.   The members of the Class are readily identifiable from information and records in the possession, custody or control of MLB, and/or in the possession, custody or control of the MLB Defendants' joint venture partner, DraftKings.

260.   ***Commonality and Predominance***. Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting only individual members of the Classes, including, but not limited to:

    a.  Whether the MLB Defendants engaged in false, misleading, deceptive and/or unfair acts or practices;

    b.  Whether the MLB Defendants violated state consumer protection statutes;

    c.  Whether the MLB Defendants made material omissions and/or misrepresentations;

    d.  Whether the MLB Defendants engaged in fraud;

    e.  Whether the MLB Defendants are liable to Plaintiffs and the Classes for compromising the fairness of the MLB fantasy baseball contests;

    f.  Whether the MLB Defendants made negligent misrepresentations;

    g.  Whether the Houston Astros are liable to Plaintiffs and the Classes for compromising the fairness of DraftKings MLB fantasy baseball contests;

    h.  Whether the Houston Astros engaged in false, misleading, deceptive and/or unfair acts or practices;

    i.  Whether the Houston Astros violated the Texas Deceptive Trade Practices Act;

    j.  Whether the Houston Astros made material omissions and/or misrepresentations;

---

[121] Eric Ramsey, *DraftKings, FanDuel Generated About $220 Million In Entry Fees In May*, LEGAL SPORTS REPORT (June 7, 2018), https://www.legalsportsreport.com/20932/daily-fantasy-sports-data-may-2018/ (accessed Feb. 13, 2020).

k.  Whether the Houston Astros engaged in fraud;

l.  Whether the Houston Astros made negligent misrepresentations;

m.  Whether the Boston Red Sox are liable to Plaintiffs and the Classes for compromising the fairness of the MLB fantasy baseball contests;

n.  Whether the Boston Red Sox engaged in false, misleading, deceptive and/or unfair acts or practices;

o.  Whether the Boston Red Sox violated the Massachusetts Consumer Protection Act;

p.  Whether the Boston Red Sox made material omissions and/or misrepresentations;

q.  Whether the Boston Red Sox engaged in fraud;

r.  Whether the Houston Astros are liable to Plaintiffs and the Classes for compromising the fairness of DraftKings MLB fantasy baseball contests;

s.  Whether the Boston Red Sox made negligent misrepresentations;

t.  Whether the MLB Defendants, the Houston Astros and the Boston Red Sox have been unjustly enriched, at Plaintiffs' and the Classes' expense, by their conduct;

u.  Whether Plaintiffs and the Classes are entitled to actual damages, statutory damages and/or punitive damages, and the measure of those damages;

v.  Whether Plaintiffs and the Classes are entitled to restitution, disgorgement and/or other equitable relief or injunctive relief.

261.    *Typicality*. The Plaintiffs' claims are typical of the claims of the members of the Classes. Plaintiffs and the members of the Classes were injured through the same conduct described herein and they assert the same (or similar) claims for relief.

262.    *Adequacy of Representation*. Plaintiffs will fairly and adequately protect the interests of the Classes. The interests of Plaintiffs are consistent with and not antagonistic to the interests of the other members of the Classes. Plaintiffs have lost significant amounts individually and have agreed to act for the benefit of all of the victims similarly situated and not

to put their individual interests ahead of any member of the Classes. Plaintiffs have retained competent counsel that is highly experienced in prosecuting complex fraud, consumer, and class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Classes.

263.    *Superiority*. A class action is superior to all other available methods for the fair and efficient adjudication of the claims of Plaintiffs and the members of the Classes. The damages suffered by individual members of the Classes are relatively small compared to the burden and expense of individual litigation of their claims against Defendants. It would be extremely difficult for members of the Classes, on an individual basis, to obtain effective redress for the wrongs committed against them. Further, even if members of the Classes could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court.

264.    This proposed class action is manageable. Plaintiffs know of no special difficulty to be encountered in the maintenance of the action that would preclude its maintenance as a class action.

265.    Class certification, therefore, is appropriate under FED. R. CIV. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Classes, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

266.     Class certification is also appropriate under FED. R. CIV. P. 23(b)(1), because the prosecution of separate actions by numerous individual members of the Classes may create a risk that inconsistent or varying adjudications would establish incompatible standards of conduct for the parties opposing the Classes, and may substantially impair or impede the interests of other members of the Classes to protect their interests.

267.     Class certification is also appropriate under FED. R. CIV. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Classes as a whole.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## UNFAIR/DECEPTIVE PRACTICES IN VIOLATION OF STATE CONSUMER PROTECTION STATUTES
### (Against the MLB Defendants)

#### Common Allegations

268.     Plaintiffs repeat and incorporate herein by reference the above allegations.

269.     In 2015, the MLB Defendants, in partnership with DraftKings, established MLB-branded fantasy baseball contests as a commercial offering to consumers nationwide and, at all times relevant thereafter, exercised control over and monitored the manner in which the contests were conducted and marketed.  The MLB-DraftKings agreement outlining their partnership to commercialize the "Official Daily Fantasy Game of Major League Baseball" required that the MLB Defendants pre-approve (a) the form of each of the contests; (b) the terms of use and conditions of participation of each of the contests; (c) the maximum entry fees for the contests; (d) all DraftKings' advertising and marketing of the contests; and (e) any changes to the form of

the contests or terms of use and conditions of participation of each of the contests.  The MLB Defendants fully exercised these rights of control and monitoring of the MLB-branded contests.

270.     Beginning in 2015, and continuing through 2019, the MLB Defendants were contractually required to, and did, actively advertise, market and promote the MLB fantasy baseball contests to consumers nationwide, including through the MLB Defendants' social media, media platforms, websites, mobile applications, off-line activity, and through integrated links on MLB's platforms directly to contestant sign-up forms.  The MLB Defendants further caused MLB's member Clubs and MLB's media and marketing affiliates to participate in such marketing and promotion activities.

271. ████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

272. ████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████████

273. ████████████████████████████████████████████
█████████████████████████████████████████████
███████████████████████████

274.    Accordingly, at all material times, MLB fantasy baseball contests were a commercial product promoted, marketed and sold to the consuming public by the MLB Defendants, in partnership with DraftKings, ███████████████.

**A.    Massachusetts Consumer Protection Act ("MCPA"), M.G.L. c. 93A, § 1, *et seq.* (Brought on Behalf of Plaintiff Olson and the Massachusetts Subclass Against the MLB Defendants)**

275.    Plaintiff Olson, the Massachusetts Subclass Members, and the MLB Defendants are "persons" as defined by M.G.L. c. 93A, § 1(a).

276.    At all times mentioned herein, the MLB Defendants engaged in trade or commerce in Massachusetts, as defined by M.G.L. c. 93A, § 1(b), in that they advertised, offered for sale, sold or distributed goods or services in Massachusetts and/or engaged in trade or commerce directly or indirectly affecting the people of Massachusetts.

**The MLB Defendants' Unfair Acts and Practices in Violation of the MCPA**

277.    Internet fantasy sports competitions are only legal in Massachusetts when they constitute games of skill, *i.e.*, when "all winning outcomes reflect the relative knowledge and skill of the participants." 31 U.S.C. § 5362(1)(E)(ix)(ii).

278.    During the ███████ 2017, 2018 and 2019 baseball seasons, undisclosed electronic sign stealing by MLB member Clubs, as described above, compromised and corrupted the player performance statistics upon which the MLB fantasy baseball contests depended, and prevented the exercise of skill by contestants paying to participate in the contests, rendering the contests unfair.

279.    During the ███████ 2017, 2018 and 2019 baseball seasons, the MLB Defendants advertised, marketed, promoted and sold, through direct links to contest sign-up

forms from their media platforms, MLB fantasy baseball games to consumers in Massachusetts that were not games of skill.

280.    During the ███████, 2017, 2018 and 2019 baseball seasons, the MLB Defendants induced consumers in Massachusetts to pay entry fees to participate in MLB fantasy baseball games that were not games of skill and that were, thus, conducted in violation of federal and Massachusetts law.

281.    During the ███████ 2017, 2018 and 2019 baseball seasons, the MLB Defendants knew that they were advertising, marketing and promoting MLB fantasy baseball games that were not true games of skill to consumers in Massachusetts, and knowingly and intentionally induced consumers in Massachusetts to pay entry fees to participate in such contests.

282.    ████████████████████████████████████

████████████████████████████████████████

██████████████████████

283.    The MLB Defendants' conduct, as described above, constituted unfair acts and practices in the conduct of trade or commerce in that the MLB Defendants' acts and practices were illegal, immoral, unethical, oppressive or unscrupulous.

284.    The MLB Defendants' unfair acts and practices caused substantial injuries to Plaintiff Olson and other consumers in the Massachusetts Subclass in that the MLB Defendants' unfair acts caused Plaintiff Olson and other consumers to pay to participate in MLB fantasy baseball contests in Massachusetts that were not games of skill and to lose the money they paid in entry fees on contests that did not allow them to use skill and were, as a result, games of

chance that were illegal and that Plaintiff Olson and the Massachusetts Subclass members would not have chosen to engage in.

**The MLB Defendants' Deceptive Acts and Practices in Violation of the MCPA**

285.    The MLB Defendants caused consumers to be advised and agree, as a pre-condition of paying to participate in the MLB fantasy baseball contests, that the contests were games of skill.  Plaintiff Olson and the other members of the Massachusetts Subclass each electronically received this written representation prior to participating in the contests and electronically acknowledged and agreed to it (in electronically-stored records on dates available to the MLB Defendants through their contractual relationship with DraftKings).

286.    During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants were aware that undisclosed electronic sign stealing by MLB member Clubs compromised and corrupted the player performance statistics upon which the MLB fantasy baseball contests depended, and prevented the exercise of skill by contestants, rendering the contests unfair.

287.    During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants knew that the MLB fantasy baseball contests were not games of skill, but did not disclose that fact to contestants or correct the written representation made to all contestants that the contests were games of skill.

288.    During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants issued daily recommendations of players and lineups for selection by MLB fantasy baseball contestants that the MLB Defendants knew did not account for the undisclosed electronic sign stealing and, thus, were misleading.

289.    During the 2017, 2018 and 2019 baseball seasons, defendant MLB knowingly and intentionally disregarded its long-standing public commitment to maintaining the integrity of the

game of baseball, and did not disclose to MLB fantasy baseball contestants that it would not act to prevent and would not disclose egregious violations of its Official Rules by its member Clubs that affected the fairness of the MLB fantasy baseball contests.

290.    In September 2017, defendant MLB issued a public statement – known to plaintiff Olson and other members of the Classes – purporting to disclose the results of its investigation of electronic sign stealing, █████████████████████████████████████████████

████████████████████████████████.

291.    During the 2017, 2018 and 2019 baseball seasons, the defendant Astros and defendant Red Sox – both defendant MLB Clubs  – concealed from the public, including Plaintiff Olson and the Massachusetts Subclass, their impermissible electronic sign stealing and issued false and misleading statements (as set forth above) attributing team player performance success to legitimate baseball factors.  The MLB Defendants, although aware, at a minimum, of the Astros' misconduct, did not cause the Astros' false statements to be corrected.

292.    The MLB Defendants' conduct, as described above, constituted deceptive acts and practices in the conduct of trade or commerce in that the MLB Defendants' acts and practices had the capacity to mislead Plaintiff Olson and other consumers in Massachusetts, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted.

293.    The MLB Defendants' deceptive acts and practices caused substantial injuries to Plaintiff Olson and other consumers in Massachusetts in that the MLB Defendants' deceptive business practices caused Plaintiff Olson and other consumers in the Massachusetts Subclass to pay to participate in MLB fantasy baseball contests that were not games of skill and to lose the money they paid in entry fees on contests that did not allow them to use skill and were, as a

result, games of chance that were illegal and that Plaintiff Olson and the Massachusetts Subclass members would not have chosen to engage in.

294.    Plaintiff Olson paid to participate in MLB fantasy baseball contests during the Class Period based upon the conduct, representations and omissions of the MLB Defendants, as set forth in paragraphs 150-73 above.

295.    Plaintiff Olson and the Massachusetts Subclass members seek relief, pursuant to M.G.L. c. 93A § 9, for the injuries they have suffered as a result of the MLB Defendants' unfair and deceptive acts and practices, including, without limitation, actual damages, statutory double or treble damages, injunctive and/or other equitable relief, and/or attorneys' fees and costs.

**B.      California Unfair Competition Law ("UCL"), Cal. Bus. & Pro. Code § 17200. (Brought on Behalf of Plaintiff Lopez and the California Subclass Against the MLB Defendants)**

296.    At all times mentioned herein, the MLB Defendants engaged in trade or commerce in California, in that they advertised, offered for sale, sold or distributed goods or services in California and/or engaged in trade or commerce directly or indirectly affecting the people of California.

### The MLB Defendants' Unlawful Acts and Practices in Violation of the UCL

297.    Internet fantasy sports competitions are only legal in California when they constitute games of skill, *i.e.*, when "all winning outcomes reflect the relative knowledge and skill of the participants."  31 U.S.C. § 5362(1)(E)(ix)(ii).

298.    During the ████████ 2017, 2018 and 2019 baseball seasons, undisclosed electronic sign stealing by MLB member Clubs compromised and corrupted the player performance statistics upon which the MLB fantasy baseball contests depended, and prevented

the exercise of skill by contestants paying to participate in the contests, rendering the contests unfair.

299.    During the ███████████ 2017, 2018 and 2019 baseball seasons, the MLB Defendants advertised, marketed and promoted MLB fantasy baseball games to consumers in California that were not games of skill.

300.    During the ███████████ 2017, 2018 and 2019 baseball seasons, the MLB Defendants induced consumers in California to pay entry fees to participate in MLB fantasy baseball games that were not games of skill and that were, thus, conducted in violation of federal and California law.

301.    ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████

302.    The MLB Defendants' conduct, as described above, constituted unlawful acts and practices in the conduct of trade or commerce in California in violation of the UCL, Cal. Bus. & Prof. Code § 17203, in that the MLB Defendants violated (i) the UIGEA, 31 U.S.C. 5361, *et seq.*, and specifically, 31 U.S.C. § 5362(1)(E)(ix)(ii), by marketing on-line gambling contests, and (ii) the California Consumer Legal Remedies Act, § 1750 *et seq.*, as described below.

303.    The MLB Defendants' unlawful acts and practices caused substantial injuries to Plaintiff Lopez and other consumers in the California Subclass in that the MLB Defendants' unfair acts caused Plaintiff Lopez and the California Subclass members to pay to participate in MLB fantasy baseball contests in California that were not games of skill and to lose the money they paid in entry fees on contests that did not allow them to use skill and were, as a result,

games of chance that were illegal and that Plaintiff Lopez and the California Subclass members would not have chosen to engage in.

### The MLB Defendants' Unfair Acts and Practices in Violation of the UCL

304.    During the ██████████ 2017, 2018 and 2019 baseball seasons, the MLB Defendants advertised, marketed and promoted MLB fantasy baseball games to consumers in California that were not games of skill.

305.    During the ██████████ 2017, 2018 and 2019 baseball seasons, the MLB Defendants induced consumers in California to pay entry fees to participate in MLB fantasy baseball games that were not games of skill and that were, thus, conducted in violation of federal and California law.

306.    The MLB Defendants received substantial fees and revenues as a result of their advertising, marketing and promoting of MLB fantasy baseball games that were not true games of skill to consumers in California.

307.    During the ██████████ 2017, 2018 and 2019 baseball seasons, the MLB Defendants knew that they were advertising, marketing and promoting MLB fantasy baseball games that were not true games of skill to consumers in California, and knowingly and intentionally induced consumers in California to pay entry fees to participate in such contests.

308.    The MLB Defendants' conduct, as described above, constituted unfair acts and practices in the conduct of trade or commerce in California, in violation of the UCL, Cal. Bus. & Prof. Code § 17203, in that the MLB Defendants' acts and practices were immoral, unethical, oppressive or unscrupulous; caused substantial injury to Plaintiff Lopez and the California Subclass; were not outweighed by any countervailing benefits to consumers or competition; and

the injuries could not reasonably have been avoided.  Further, the acts and practices were within

the penumbra of common law, statutory or other established concepts of unfairness.

309.    The MLB Defendants' unfair acts and practices caused substantial injuries to

Plaintiff Lopez and other consumers in the California Subclass in that the MLB Defendants'

unfair acts caused Plaintiff Lopez and other consumers in the California Subclass to pay to

participate in MLB fantasy baseball contests in California that were not games of skill and to

lose the money they paid in entry fees on contests that did not allow them to use skill and were,

as a result, games of chance that were illegal and that Plaintiff Lopez and the California Subclass

members would not have chosen to engage in.

### The MLB Defendants' Deceptive Acts and Practices in Violation of the UCL

310.    The MLB Defendants caused consumers to be advised and agree, as a pre-

condition of paying to participate in the MLB fantasy baseball contests, that the contests were

games of skill.  Plaintiff Olson and the other members of the California Subclass each received

this written representation prior to participating in the contests and acknowledged and agreed to

it  (in electronic data on dates available to the MLB Defendants through their contractual

relationship with DraftKings).

311.    During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants were

aware that undisclosed electronic sign stealing by MLB member Clubs compromised and

corrupted the player performance statistics upon which the MLB fantasy baseball contests

depended, and prevented the exercise of skill by contestants, rendering the contests unfair.

312.    During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants knew that

the MLB fantasy baseball contests were not games of skill, but did not disclose that fact to

contestants or correct the written representation made to all contestants that the contests were games of skill.

313.   During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants issued daily recommendations of players and lineups for selection by MLB fantasy baseball contestants that the MLB Defendants knew did not account for the undisclosed electronic sign stealing and, thus, were misleading.

314.   During the 2017, 2018 and 2019 baseball seasons, defendant MLB knowingly and intentionally disregarded its long-standing public commitment to maintaining the integrity of the game of baseball, and did not disclose to MLB fantasy baseball contestants that it would not act to prevent and would not disclose egregious violations of its Official Rules by its member Clubs that affected the fairness of the MLB fantasy baseball contests.

315.   During the 2017, 2018 and 2019 baseball seasons, the defendant Astros and defendant Red Sox – both defendant MLB Clubs  – concealed from the public, including Plaintiffs and the Classes, their impermissible electronic sign stealing and issued false and misleading statements (as set forth above) attributing team player performance success to legitimate baseball factors.  The MLB Defendants, although aware, at a minimum, of the Astros' misconduct, did not cause the Astros' false statements to be corrected.

316.   The MLB Defendants' conduct, as described above, constituted deceptive acts and practices in the conduct of trade or commerce in California, in violation of the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*, in that the MLB Defendants' acts and practices had the capacity to mislead Plaintiff Lopez and other consumers in California, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted.

317.    The MLB Defendants' deceptive acts and practices caused substantial injuries to Plaintiff Lopez and other consumers in California in that the MLB Defendants' deceptive business practices caused Plaintiff Lopez and other consumers in the California Subclass to pay to participate in MLB fantasy baseball contests that were not games of skill and to lose the money they paid in entry fees on contests that did not allow them to use skill and were, as a result, games of chance that were illegal and that Plaintiff Lopez and the California Subclass members would not have chosen to engage in.

318.    Plaintiff Lopez paid to participate in MLB fantasy baseball contests during the Class Period based upon the conduct, representations and omissions of the MLB Defendants, as set forth in paragraphs 174-91 above.

319.    As a result of the MLB Defendants' unlawful, unfair and fraudulent acts and practices in violation of UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*, Plaintiff Lopez and the California Subclass members seek compensatory restitution of the entry fees they paid and lost as a result of the MLB Defendants' acts of unfair competition in violation of the UCL, disgorgement of the MLB Defendants' unjust gains, and such other equitable or injunctive relief as may be appropriate, and reasonable attorneys' fees (pursuant to Cal. Code of Civ. Proc. § 1021.5).

**C.    California Consumer Legal Remedies Act ("CLRA"). Cal. Civ. § 1750 *et seq*. (Brought on Behalf of Plaintiff Lopez and the California Subclass Against the MLB Defendants)**

**The MLB Defendants' Unlawful Business Practices in Violation of the CLRA**

320.    The MLB Defendants caused consumers in California to be advised and agree, as a pre-condition of paying to participate in the MLB fantasy baseball contests, that the contests were games of skill.  Plaintiff Lopez and the other members of the California Subclass each received this written representation prior to participating in the contests and acknowledged and

agreed to it  (in electronic data on dates available to the MLB Defendants through their contractual relationship with DraftKings).

321.    During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants were aware that undisclosed electronic sign stealing by MLB member Clubs compromised and corrupted the player performance statistics upon which the MLB fantasy baseball contests depended, and prevented the exercise of skill by contestants, rendering the contests unfair.

322.    During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants knew that the MLB fantasy baseball contests were not games of skill, but did not disclose that fact to contestants or correct the written representation made to all contestants that the contests were games of skill.

323.    During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants issued daily recommendations of players and lineups for selection by MLB fantasy baseball contestants that the MLB Defendants knew did not account for the undisclosed electronic sign stealing and, thus, were misleading.

324.    During the 2017, 2018 and 2019 baseball seasons, defendant MLB knowingly and intentionally disregarded its long-standing public commitment to maintaining the integrity of the game of baseball, and did not disclose to MLB fantasy baseball contestants that it would not act to prevent and would not disclose egregious violations of its Official Rules by its member Clubs that affected the fairness of the MLB fantasy baseball contests.

325.    During the 2017, 2018 and 2019 baseball seasons, the defendant Astros and defendant Red Sox – both defendant MLB Clubs  – concealed from the public, including Plaintiffs and the Classes, their impermissible electronic sign stealing and issued false and misleading statements (as set forth above) attributing team player performance success to

90

legitimate baseball factors.  The MLB Defendants, although aware, at a minimum, of the Astros' misconduct, did not cause the Astros' false statements to be corrected.

326.    The MLB Defendants' conduct, as described above, constituted unlawful business practices in violation of the CLRA, Cal. Civ. § 1770a, in that the MLB Defendants engaged in proscribed conduct by, inter alia: "Misrepresenting the source, sponsorship, approval, or certification of goods and services." (§ 1770(a)(2)); "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have…." (§1770(a)(5)); "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." (§ 1770(a)(7)); "Advertising goods or services with intent not to sell them as advertised." (§ 1770(a)(9)); and "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." (§ 1770(a)(14)).  In particular, the MLB Defendants:

    a.  misrepresented that the MLB fantasy baseball contests were games of skill when they were not;

    b.  failed to disclose that the MLB fantasy baseball contests were not games of skill, which was known to the MLB Defendants at the time of the transaction, and which failure to disclose was intended by the MLB Defendants to induce consumers into paying entry fees to participate in MLB fantasy baseball contests which the consumer would not have entered had the information been disclosed;

    c.  Advertised MLB fantasy baseball contests as games of skill with the intent not to conduct them as advertised.

327.    Plaintiff Lopez and other consumers in California relied on the MLB Defendants fraudulent misrepresentations that the MLB fantasy baseball contests were games of skill in deciding to pay to participate in such contests.

328.    The MLB Defendants' unlawful business practices caused substantial injuries to Plaintiff Lopez and other consumers in California in that they caused Plaintiff Lopez and other consumers in the California Subclass to pay to participate in MLB fantasy baseball contests that were not games of skill and to lose the money they paid in entry fees on contests that did not allow them to use skill and were, as a result, games of chance that were illegal and that Plaintiff Lopez and the California Subclass members would not have chosen to engage in.

329.    Plaintiff Lopez paid to participate in MLB fantasy baseball contests during the Class Period based upon the conduct, representations and omissions of the MLB Defendants, as set forth in paragraphs 174-91 above.

330.    Plaintiff Lopez and the California Subclass members seek relief, pursuant to the CLRA, Cal. Civ. § 1750 *et seq.*, for the injuries they have suffered as a result of the MLB Defendants' unlawful business practices, including, without limitation, actual economic damages and statutory damages recoverable pursuant to the CLRA, restitution, injunctive relief or other equitable relief as applicable, punitive damages as applicable, and attorneys' fees and costs..

**D.    Texas Deceptive Trade Practices Act ("TDTPA"), Tex. Bus. & Com. Code § 17.41 *et seq.* (Brought on Behalf of Plaintiff Barber and the Texas Subclass Against the MLB Defendants)**

331.    Plaintiff Barber and the Texas Subclass Members are "consumers" as defined by Tex. Bus. & Com. Code. § 17.45(4).

332.    At all times mentioned herein, the MLB Defendants engaged in trade or commerce in Texas, as defined by Tex. Bus. & Com. Code. § 17.45(6) in that they advertised, offered for sale, sold or distributed goods or services in Texas and/or engaged in trade or commerce directly or indirectly affecting the people of Texas.

**The MLB Defendants' Unconscionable Action or Course of Action
In Violation of the TDTPA**

333.     Internet fantasy sports competitions are only legal in Texas when they constitute games of skill, *i.e.*, when "all winning outcomes reflect the relative knowledge and skill of the participants." 31 U.S.C. § 5362(1)(E)(ix)(ii).

334.     During the ███████ 2017, 2018 and 2019 baseball seasons, undisclosed electronic sign stealing by MLB member Clubs compromised and corrupted the player performance statistics upon which the MLB fantasy baseball contests depended, and prevented the exercise of skill by contestants paying to participate in the contests, rendering the contests unfair.

335.     During the ███████ 2017, 2018 and 2019 baseball seasons, the MLB Defendants advertised, marketed and promoted MLB fantasy baseball games to consumers in Texas that were not games of skill.

336.     During the ███████ 2017, 2018 and 2019 baseball seasons, the MLB Defendants induced consumers in Texas to pay entry fees to participate in MLB fantasy baseball games that were not games of skill and that were, thus, conducted in violation of federal and Texas law.

337.     During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants knew that they were advertising, marketing and promoting MLB fantasy baseball games that were not true games of skill to consumers in Texas, and knowingly and intentionally induced consumers in Texas to pay entry fees to participate in such contests.

338.     ███████████████████████████████████████
███████████████████████████████████████████
███████████████████

339.     The MLB Defendants' conduct, as described above, constituted an unconscionable action or course of action in the conduct of trade or commerce, in violation of Tex. Bus. & Com. Code. §§ 17.50(a)(3) and 17.45(5), in that the MLB Defendants' acts and practices took advantage, to consumers' detriment, of consumers' lack of knowledge to a grossly unfair degree.

340.     The MLB Defendants' unconscionable action or course of action caused substantial injuries to Plaintiff Barber and other consumers in the Texas Subclass in that the MLB Defendants' unconscionable acts caused Plaintiff Barber and other consumers in the Texas Subclass to pay to participate in MLB fantasy baseball contests in Texas that were not games of skill and to lose the money they paid in entry fees on contests that did not allow them to use skill and were, as a result, games of chance that were illegal and that Plaintiff Barber and the Texas Subclass members would not have chosen to engage in.

## The MLB Defendants' False, Misleading or Deceptive Acts and Practices in Violation of the TDTPA

341.     The MLB Defendants caused consumers in Texas to be advised and agree, as a pre-condition of paying to participate in the MLB fantasy baseball contests, that the contests were games of skill.  Plaintiff Barber and the other members of the Texas Subclass each received this written representation prior to participating in the contests and acknowledged and agreed to it  (in electronic data on dates available to the MLB Defendants through their contractual relationship with DraftKings).

342.     During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants were aware that undisclosed electronic sign stealing by MLB member Clubs compromised and corrupted the player performance statistics upon which the MLB fantasy baseball contests depended, and prevented the exercise of skill by contestants, rendering the contests unfair.

94

343.     During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants knew that the MLB fantasy baseball contests were not games of skill, but did not disclose that fact to contestants or correct the written representation made to all contestants that the contests were games of skill.

344.     During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants issued daily recommendations of players and lineups for selection by MLB fantasy baseball contestants that the MLB Defendants knew did not account for the undisclosed electronic sign stealing and, thus, were misleading.

345.     During the 2017, 2018 and 2019 baseball seasons, defendant MLB knowingly and intentionally disregarded its long-standing public commitment to maintaining the integrity of the game of baseball, and did not disclose to MLB fantasy baseball contestants that it would not act to prevent and would not disclose egregious violations of its Official Rules by its member Clubs that affected the fairness of the MLB fantasy baseball contests.

346.     During the 2017, 2018 and 2019 baseball seasons, the defendant Astros and defendant Red Sox – both defendant MLB Clubs – concealed from the public, including Plaintiffs and the Classes, their impermissible electronic sign stealing and issued false and misleading statements (as set forth above) attributing team player performance success to legitimate baseball factors.  The MLB Defendants, although aware, at a minimum, of the Astros' misconduct, did not cause the Astros' false statements to be corrected.

347.     The MLB Defendants' conduct, as described above, constituted false, misleading or deceptive acts and practices in the conduct of trade or commerce, in violation of Tex. Bus. & Com. Code. § 17.50(a)(1), in that the MLB Defendants engaged in proscribed conduct by, inter alia: "Representing that goods or services have sponsorship, approval, characteristics,

ingredients, uses, benefits, or quantities that they do not have….” (§17.46(a)(5)); “Representing

that goods or services are of a particular standard, quality, or grade, or that goods are of a

particular style or model, if they are of another.” (§ 17.46(a)(7)); “Advertising goods or services

with intent not to sell them as advertised.” (§ 17.46(a)(9)); and “Representing that an agreement

confers or involves rights, remedies, or obligations that it does not have or involve, or that are

prohibited by law.” (§ 17.46(a)(12)).  In particular, the MLB Defendants:

    a.  misrepresented that the MLB fantasy baseball contests were games of skill
when they were not;

    b.  failed to disclose that the MLB fantasy baseball contests were not games of
skill, which was known to the MLB Defendants at the time of the transaction,
and which failure was intended by the MLB Defendants to induce  consumers
into paying entry fees to participate in MLB fantasy baseball contests which
the consumer would not have entered had the information been disclosed;

    c.  caused, for the purpose of inducing consumers to pay to participate in MLB
fantasy baseball contests, statements about the contests that they knew
materially misrepresented the character of the contests

    d.  advertised MLB fantasy baseball contests as games of skill with the intent not
to conduct them as advertised.

348.    The MLB Defendants’ false, misleading and deceptive acts and practices caused

substantial injuries to Plaintiff Barber and other consumers in Texas in that they caused Plaintiff

Barber and other consumers in the Texas Subclass to pay to participate in MLB fantasy baseball

contests that were not games of skill and to lose the money they paid in entry fees on contests

that did not allow them to use skill and were, as a result, games of chance that were illegal and

that Plaintiff Barber and the Texas Subclass members would not have chosen to engage in.

349.    Plaintiff Barber paid to participate in MLB fantasy baseball contests during the

Class Period based upon the conduct, representations and omissions of the MLB Defendants, as

set forth in paragraphs 192-206 above.

350.    Plaintiff Barber and the Texas Subclass members seek relief, pursuant to Tex.

Bus. & Com. Code. § 17.50(a)(1), for the injuries they have suffered as a result of the MLB

Defendants' unfair and deceptive acts and practices, including, without limitation, actual

economic damages, statutory treble damages for the MLB Defendants' knowing violations of the

TDUTPA, and other relief, including attorneys' fees and costs, recoverable under the Act.

### E.    Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. § 501, *et seq.* (Brought on Behalf of Plaintiff Clifford and the Florida Subclass Against the MLB Defendants)

351.    Plaintiff Clifford and the Florida Subclass Members are "consumers," as defined

by the FLA. STAT. § 501.203(7).

352.    At all times mentioned herein, the MLB Defendants engaged in trade or

commerce in Florida, as defined by FLA. STAT. § 501.203(8), in that they advertised, offered for

sale, sold or distributed goods or services in Florida and/or engaged in trade or commerce

directly or indirectly affecting the people of Florida.

### The MLB Defendants' Unfair Acts and Practices In Violation of the FDUTPA

353.    Internet fantasy sports competitions are only legal in Florida when they constitute

games of skill, *i.e.*, when "all winning outcomes reflect the relative knowledge and skill of the

participants."  31 U.S.C. § 5362(1)(E)(ix)(ii).

354.    During the ▇▇▇▇▇▇▇ 2017, 2018 and 2019 baseball seasons, undisclosed

electronic sign stealing by MLB member Clubs compromised and corrupted the player

performance statistics upon which the MLB fantasy baseball contestants depended, and

prevented the exercise of skill by contestants paying to participate in the contests, rendering the

contests unfair.

355.     During the ███████████ 2017, 2018 and 2019 baseball seasons, the MLB Defendants advertised, marketed and promoted MLB fantasy baseball games to consumers in Florida that were not games of skill.

356.     During the ███████████ 2017, 2018 and 2019 baseball seasons, the MLB Defendants induced consumers in Florida to pay entry fees to participate in MLB fantasy baseball games that were not games of skill and that were, thus, conducted in violation of federal and Florida law.

357.     During the ███████████ 2017, 2018 and 2019 baseball seasons, the MLB Defendants knew that they were advertising, marketing and promoting MLB fantasy baseball games that were not true games of skill to consumers in Florida, and knowingly and intentionally induced consumers in Florida to pay entry fees to participate in such contests.

358.     ████████████████████████████████████████
████████████████████████████████████████
████████████████

359.     The MLB Defendants' conduct, as described above, constituted unfair acts and practices in the conduct of trade or commerce in that the MLB Defendants' acts and practices were illegal, immoral, unethical, oppressive or unscrupulous.

360.     The MLB Defendants' unfair acts and practices caused substantial injuries to Plaintiff Clifford and other consumers in the Florida Subclass in that the MLB Defendants' unfair acts caused Plaintiff Clifford and other consumers to pay to participate in MLB fantasy baseball contests in Florida that were not games of skill and to lose the money they paid in entry fees on contests that did not allow them to use skill and were, as a result, games of chance that

were illegal and that Plaintiff Clifford and the Florida Subclass members would not have chosen to engage in.

### The MLB Defendants' Deceptive Acts and Practices in Violation of the FDUTPA

361.    The MLB Defendants caused consumers to be advised and agree, as a pre-condition of paying to participate in the MLB fantasy baseball contests, that the contests were games of skill.  Plaintiff Clifford and the other members of the Florida Subclass each received this written representation prior to participating in the contests and acknowledged and agreed to it  (in electronic data on dates available to the MLB Defendants through their contractual relationship with DraftKings).

362.    During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants were aware that undisclosed electronic sign stealing by MLB member Clubs compromised and corrupted the player performance statistics upon which the MLB fantasy baseball contests depended, and prevented the exercise of skill by contestants, rendering the contests unfair.

363.    During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants knew that the MLB fantasy baseball contests were not games of skill, but did not disclose that fact to contestants or correct the written representation made to all contestants that the contests were games of skill.

364.    During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants issued daily recommendations of players and lineups for selection by MLB fantasy baseball contestants that the MLB Defendants knew did not account for the undisclosed electronic sign stealing and, thus, were misleading.

365.    During the 2017, 2018 and 2019 baseball seasons, defendant MLB knowingly and intentionally disregarded its long-standing public commitment to maintaining the integrity of the

game of baseball, and did not disclose to MLB fantasy baseball contestants that it would not act

to prevent and would not disclose egregious violations of its Official Rules by its member Clubs

that affected the fairness of the MLB fantasy baseball contests.

366.    During the 2017, 2018 and 2019 baseball seasons, the defendant Astros and

defendant Red Sox – both defendant MLB Clubs  – concealed from the public, including

Plaintiffs and the Classes, their impermissible electronic sign stealing and issued false and

misleading statements (as set forth above) attributing team player performance success to

legitimate baseball factors.  The MLB Defendants, although aware, at a minimum, of the Astros'

misconduct, did not cause the Astros' false statements to be corrected.

367.    The MLB Defendants' conduct, as described above, constituted deceptive acts

and practices in the conduct of trade or commerce in that the MLB Defendants' acts and

practices had the capacity to mislead Plaintiff Clifford and other consumers in Florida, acting

reasonably under the circumstances, to act differently from the way they otherwise would have

acted.

368.    The MLB Defendants' deceptive acts and practices caused substantial injuries to

Plaintiff Clifford and other consumers in Florida in that the MLB Defendants' deceptive business

practices caused Plaintiff Clifford and other consumers in the Florida Subclass to pay to

participate in MLB fantasy baseball contests that were not games of skill and to lose the money

they paid in entry fees on contests that did not allow them to use skill and were, as a result,

games of chance that were illegal and that Plaintiff Clifford and the Florida Subclass members

would not have chosen to engage in.

369.     Plaintiff Clifford paid to participate in MLB fantasy baseball contests during the

Class Period based upon the conduct, representations and omissions of the MLB Defendants, as

set forth in paragraphs 207-23 above.

370.     Plaintiff Clifford and the Florida Subclass members seek relief for the injuries

they have suffered as a result of the MLB Defendants' unfair and deceptive acts and practices, as

provided by FLA. STAT. § 501.211 and applicable law.

F.     **Colorado Consumer Protection Act ("CCPA"), C.R.S.  § 6-1-101, *et seq.***
       **(Brought on Behalf of Plaintiff Liptak and the Colorado Subclass Against the**
       **MLB Defendants)**

371.     The MLB Defendants and the Colorado Subclass Members are "persons" as

defined by C.R.S. § 6-1-102(6).

372.     At all times mentioned herein, in the course of their business, the MLB

Defendants advertised, offered for sale, sold or distributed goods or services in Colorado.

373.     Internet fantasy sports competitions are only legal in Colorado when they

constitute games of skill, *i.e.*, when "all winning outcomes reflect the relative knowledge and

skill of the participants."  31 U.S.C. § 5362(1)(E)(ix)(ii).

374.     During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants were

aware that undisclosed electronic sign stealing by MLB member Clubs compromised and

corrupted the player performance statistics upon which the MLB fantasy baseball contests

depended, and prevented the exercise of skill by contestants, rendering the contests unfair games

of chance and illegal.

375.     During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants knew that

the MLB fantasy baseball contests were not games of skill, but did not disclose that fact to

contestants or correct the written representation made to all contestants that the contests were games of skill.

376.   During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants issued daily recommendations of players and lineups for selection by MLB fantasy baseball contestants that the MLB Defendants knew did not account for the undisclosed electronic sign stealing and, thus, were misleading.

377.   During the 2017, 2018 and 2019 baseball seasons, defendant MLB knowingly and intentionally disregarded its long-standing public commitment to maintaining the integrity of the game of baseball, and did not disclose to MLB fantasy baseball contestants that it would not act to prevent and would not disclose egregious violations of its Official Rules by its member Clubs that affected the fairness of the MLB fantasy baseball contests.

378.   During the 2017, 2018 and 2019 baseball seasons, the defendant Astros and defendant Red Sox – both defendant MLB Clubs – concealed from the public, including Plaintiff Liptak and the Colorado Subclass, their impermissible electronic sign stealing and issued false and misleading statements (as set forth above) attributing team player performance success to legitimate baseball factors. The MLB Defendants, although aware, at a minimum, of the Astros' misconduct, did not cause the Astros' false statements to be corrected.

379.   During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants advertised, marketed and promoted MLB fantasy baseball games to consumers in Colorado that were not games of skill.

380.   The MLB Defendants caused consumers to be advised and agree, as a pre-market condition of paying to participate in the MLB fantasy baseball contests, that the contests were games of skill. Plaintiff Liptak and the other members of the Colorado Subclass each received

this written representation prior to participating in the contests and acknowledged and agreed to it  (in electronic data on dates available to the MLB Defendants through their contractual relationship with DraftKings).

381.     During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants induced consumers in Colorado to pay entry fees to participate in MLB fantasy baseball games that were not games of skill and that were, thus, conducted in violation of federal and Colorado law.

382.     During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants knew that they were advertising, marketing and promoting MLB fantasy baseball games that were not true games of skill to consumers in Colorado, and knowingly and intentionally induced consumers in Colorado to pay entry fees to participate in such contests.

383.     ███████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████

384.     The MLB Defendants' conduct, as described above, constituted unfair and deceptive acts and practices in the course of the MLB Defendants' business in Colorado in that the MLB Defendants engaged in proscribed conduct by (a) "Knowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property" (C.R.S.  § 6-1-101(e)); "Represent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model if he knows or should know they are of another" (C.R.S.  § 6-1-101(g)); "Advertis[ing] goods, services, or property with intent not to sell them as advertised" (C.R.S.  § 6-1-101(i)); and "Fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to

disclose such information was intended to induce the consumer to enter into a transaction"

(C.R.S. § 6-1-101(u)). In particular, the MLB Defendants:

    a.  misrepresented that the MLB fantasy baseball contests were games of skill when they were not;

    b.  failed to disclose that the MLB fantasy baseball contests were not games of skill, which was known to the MLB Defendants at the time of the transaction, and which failure to disclose was intended by the MLB Defendants to induce consumers into paying entry fees to participate in MLB fantasy baseball contests which the consumer would not have entered had the information been disclosed;

    c.  Advertised MLB fantasy baseball contests as games of skill with the intent not to conduct them as advertised.

385.    The MLB Defendants' unfair and deceptive trade practices significantly impacted the public as potential consumers of the MLB fantasy baseball contests in that they deceptively induced potential consumers to pay to participate in MLB fantasy baseball contests in Colorado that were not games of skill and to lose the money they paid in entry fees on contests that did not allow them to use skill and were, as a result, games of chance that were illegal and that Plaintiff Liptak and the Colorado Subclass members would not have chosen to engage in.

386.    The MLB Defendants' unfair and deceptive acts and practices caused substantial injuries to Plaintiff Liptak and other consumers in the Colorado Subclass in that the MLB Defendants' unfair and deceptive acts and practices caused Plaintiff Liptak and other consumers in Colorado to pay to participate in MLB fantasy baseball contests in Colorado that were not games of skill and to lose the money they paid in entry fees on contests that did not allow them to use skill and were, as a result, games of chance that were illegal and that Plaintiff Liptak and the Colorado Subclass members would not have chosen to engage in.

387.     Plaintiff Liptak paid to participate in MLB fantasy baseball contests during the Class Period based upon the conduct, representations and omissions of the MLB Defendants, as set forth in paragraphs 224-39 above.

388.     Plaintiff Liptak and the Colorado Subclass members seek relief, pursuant to C.R.S. § 6-1-113, for the injuries they have suffered as a result of the MLB Defendants' unfair and deceptive acts and practices, including, without limitation, the greater of $500.00 or their actual damages or three times their actual damages based on the MLB Defendants' bad faith conduct, attorneys' fees and costs.

G.     **Nationwide Consumer Protection Acts**

**(Plaintiffs, on Behalf of the Nationwide Class Against the MLB Defendants)**

389.     Plaintiffs Olson, Lopez, Barber, Clifford, and Liptak, on behalf of themselves and the Nationwide Class, assert these claims under the consumer protections acts of the States listed below against the MLB Defendants. The MLB Defendants' conduct, as described in §§ A through F of this First Claim for Relief, constituted unfair and deceptive acts or practices and/or unconscionable, false, misleading or deceptive acts that violated the following State consumer protection acts (substantially similar to the consumer protection acts at issue in §§ A through F (MASS. GEN. LAW, Ch. 93A, § 1 *et seq*., CAL BUS. & PROF. CODE § 17200, *et seq*., CAL. CIV. CODE § 1750, *et seq*., TEX. BUS. & COM. CODE ANN. § 17.41, *et seq.*, FLA. STAT. § 501.204, *et seq*, CRS § 6-1-101, *et seq*.):

> Alabama: ALA. CODE § 8-19-1, *et seq.;* Alaska: ALASKA STAT. § 45.50.471, *et seq*.; Arkansas: ARK. CODE ANN. § 4-88-107, *et seq*.; Connecticut: CONN. GEN. STAT. § 42-110b, *et seq*.; Delaware: DEL. CODE ANN. TITLE 6, § 2511, *et seq*.; District of Columbia: D.C. CODE § 28-3901, *et seq*.; Georgia: OFFICIAL CODE OF GA. § 10-1-390, *et seq*.; Hawaii: HAW. REV. STAT. § 480, *et seq*.; Idaho: IDAHO CODE § 48-601, *et seq*.; Illinois: ILL. COMP. STAT. § 505/1, *et seq*. and § 510/1, *et seq*. ; Indiana: IND. CODE § 24-5-0.5-1, *et seq*. Iowa: IOWA CODE § 714.16, *et seq*. Kansas: KAN. STAT. § 50-623, *et seq*.; Kentucky: KY. REV. STAT. ANN. §

367.110, *et seq.*; Louisiana: LA. REV. STAT. ANN. § 51.1405, *et seq.*; Maine: ME. REV. STAT. TIT. 5, § 205-A, *et seq.*; Maryland: MD. CODE ANN., MD COM. LAW § 13-101, *et seq.*; Michigan: MICH. COMP. LAWS § 445.901, *et seq.*; Minnesota: MINN. STAT. § 325F.68, *et seq.*; Mississippi: MISS. CODE. ANN. § 75-24-1, *et seq.*; Missouri: MO REV. STAT. § 407.010, *et seq.*; Montana: MONT. CODE ANN. § 30-14-101, *et seq.*; Nebraska: NEB. REV. STAT. § 59-1601, et seq., § 87-301, *et seq.*; Nevada: NEV. REV. STAT. § 598.0903, *et seq.*; New Hampshire: N.H. REV. STAT. ANN. § 358-A:1, *et seq.*; New Jersey: N.J. STAT. ANN. § 56:8-1, *et seq.* New Mexico: N.M. STAT. ANN. § 57-12-1, *et seq.* New York: N.Y. GEN. BUS. § 349, *et seq.*; North Carolina: NC GEN. STAT. § 75-1.1, *et seq.*; North Dakota: N.D. CENT. CODE § 51-15-01, *et seq.*; Ohio: OHIO REV. CODE ANN. § 1345.01, *et seq.*; Oklahoma: OKLA. STAT. TIT. 15, § 751, *et seq.*; Oregon: OR REV. STAT. § 646.605, *et seq.*; Pennsylvania: 73 PA. STAT ANN. § 201-1, *et seq.*; Rhode Island: R.I. GEN LAWS § 6-13.1-1, *et seq.*; South Carolina: S.C. CODE § 39-5-10, *et seq.*; South Dakota: S.D. CODIFIED LAWS § 37-24-1, *et seq.*; Tennessee: TENN. CODE ANN. § 47-18-104, *et seq.* Utah: UTAH CODE ANN. § 13-11-1, *et seq.*; Vermont: VT. STAT. ANN. TIT. 9, § 2451, *et seq.*; Virginia: VA. CODE Ann. § 59.1-196, *et seq.*; Washington: REV. CODE WA. § 19.86.010, *et seq.*; West Virginia: W. VA. CODE § 46A-6-104, *et seq.*; Wisconsin: WIS. STAT. § 100.20, *et seq.*; Wyoming: WYO. STAT. ANN. § 40-12-101, *et seq.*

390.    The MLB Defendants' unfair and deceptive trade practices significantly impacted the public as potential consumers of the MLB fantasy baseball contests in that they deceptively induced potential consumers to pay to participate in MLB fantasy baseball contests in the foregoing States that were not games of skill and to lose the money they paid in entry fees on contests that did not allow them to use skill and were, as a result, games of chance that were illegal and that Plaintiffs and the Nationwide Class members would not have chosen to engage in.

391.    Plaintiffs paid to participate in MLB fantasy baseball contests during the Class Period based upon the conduct, representations and omissions of the MLB Defendants, as set forth above in this Claim for Relief.

392.    The MLB Defendants' wrongful acts and practices in violation of the State consumer protection acts listed in paragraph 388 caused substantial injuries to the members of

the Nationwide Class in each State in that the MLB Defendants' unlawful acts and practices

unfair acts caused the members of the Nationwide Class to pay to participate in MLB fantasy

baseball contests in their respective States that were not games of skill and to lose the money

they paid in entry fees on contests that did not allow them to use skill and were, as a result,

games of chance that were illegal and that the Nationwide Class members would not have chosen

to engage in.

393.     Plaintiffs seek relief, to the fullest extent permitted by the Nationwide Class

members' applicable State consumer protection acts, on behalf of the members of the

Nationwide Class for the injuries the Nationwide Class members suffered as a result of the MLB

Defendants' wrongful conduct in violation of the Nationwide Class members' State consumer

protection acts.

**SECOND CLAIM FOR RELIEF**

**FRAUD/FRAUDULENT NON-DISCLOSURE**
**(Brought by Plaintiffs and the Nationwide Class and the Subclasses Against the MLB
Defendants)**

394.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

395.     In 2015, the MLB Defendants, in partnership with DraftKings, established MLB-

branded fantasy baseball contests as a commercial offering to consumers nationwide and, from

the outset, and in particular during the 2017, 2018 and 2019 baseball seasons at issue in this

lawsuit, exercised control over and monitored the contests and the manner in which the contests

were marketed and conducted through their contractual rights of pre-approval of (a) the form of

each of the contests; (b) the terms of use and conditions of participation of each of the contests;

(c) the maximum entry fees for the contests; (d) DraftKings' marketing and promotion of the

contests; and (e) any changes to the form of the contests or terms of use and conditions of participation of each of the contests.

396.     Beginning in 2015, and continuing through 2019, the MLB Defendants were contractually required to, and did, actively advertise, market and promote the MLB fantasy baseball contests to consumers nationwide, including through the MLB Defendants' social media, media platforms, mobile applications, and off-line activity, and caused MLB's member Clubs and MLB's media and marketing affiliates to participate in such marketing and promotion activities.



### a.     Fraud

400.     The MLB Defendants caused each of the Plaintiffs and every member of the Classes to be advised in writing and agree, as a pre-condition of paying to participate in the MLB fantasy baseball contests, that the contests were games of skill.  Each of the Plaintiffs and each member of the Classes received this written representation prior to participating in the contests

and acknowledged and agreed to it (in electronic data on dates available to the MLB Defendants through their contractual relationship with DraftKings).

401.    The written representation to each Plaintiff and to every member of the Classes in the MLB fantasy baseball contests' Conditions of Participation that the contests were "contests of skill" was material to each Plaintiff's and every member of the Classes' decision to pay to participate in the contests.

402.    Each named Plaintiff, and every member of the Classes, relied on the representation that the contests were "contests of skill" in deciding to pay to participate in the contests.

403.    During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants were aware that undisclosed electronic sign stealing by MLB member Clubs compromised and corrupted the player performance statistics upon which the MLB fantasy baseball contests depended, and prevented the exercise of skill by contestants.

404.    During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants, knew that the representation to Plaintiffs that the contests were "contests of skill" was false.

405.    Plaintiffs and the members of the Classes relied on the false representation that the MLB fantasy baseball contests were contests of skill in deciding to pay to participate in the contests and would not have paid to participate if they knew that MLB Club electronic sign stealing prevented the exercise of skill and that the contests were, as a result, not contests of skill.

406.    ████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

████████████

407.  ████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████

408.  ████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████

409.    On October 17, 2018, in response to the Red Sox's publicly disclosed complaint about the Astros' sign stealing, Manfred issued a public statement, disseminated to the media nationwide, stating that MLB had conducted a "thorough investigation" of the Red Sox's complaint and had determined that the Astros had not engaged in impermissible conduct.

410.    Manfred's October 17, 2018 statement was false and fraudulent.  MLB did not conduct a "thorough investigation," and had no basis to exonerate the Astros, which had, in fact, engaged in season-long electronic sign stealing (which had been reported by another Club, the Oakland Athletics, to Manfred in August 2018) and had attempted to engage in the misconduct alleged, as well as similar conduct the week before in a game against the Cleveland Indians.

411.   Manfred's fraudulent statement on October 17, 2018 was made for the purpose of concealing the Astros' misconduct and its effect on the fairness of Astros' player performances, from the public, including Plaintiffs and other MLB fantasy baseball contestants.

412.   Plaintiff Olson and other members of the Classes were aware of Manfred's ███████████████████ October 18, 2018 statement█, which were published and aired on local sport media, as well as on ESPN.

413.   ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

414.   Manfred's October 17, 2018 statement caused Plaintiff Olson and other members of the Classes to believe that the Astros had not engaged in electronic sign stealing, that MLB would thoroughly investigate any allegation of electronic sign stealing, which would not tolerated by MLB and was not being perpetrated

415.   Plaintiffs and other members of the Classes were aware that if an MLB Club or Clubs were engaging in electronic sign stealing, that would corrupt both the initial MLB fantasy lineup player selection process and the subsequent player performance results that determine the contest winners.  They were also aware that the effects of electronic sign stealing would be variable (depending, for example, on which games, which players and which at bats it affected) and could not, therefore, be accurately factored into fantasy team player selection decisions, thus preventing the exercise of skill to win or lose a contest.

416.   Whether MLB Clubs were engaging in electronic sign stealing was material to the decision of Plaintiffs and other members of the Classes to pay to participate in MLB fantasy baseball contests.

417.    Plaintiff Olson and other members of the Classes relied on Manfred's ████████

████████ October 17, 2018 statement█ in deciding to continue paying to participate in MLB

fantasy baseball contests.

418.    Plaintiff Olson and other members of the Classes were injured as a result of their

reliance on Manfred's fraudulent ████████████ October 2018 statement█, which led them

to believe that MLB would not tolerate electronic sign stealing and that it had not, other than in

the Red Sox's isolated and terminated instance, and would not be perpetrated.

### b.    Fraudulent Non-Disclosure

419.    During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants knew that

the MLB fantasy baseball contests were not games of skill, but did not disclose that fact to

contestants or correct the written representation made to all contestants that the contests were

games of skill.

420.    During the 2017, 2018 and 2019 baseball seasons, the MLB Defendants issued

daily recommendations of players and lineups for selection by MLB fantasy baseball contestants

that the MLB Defendants knew did not account for the undisclosed electronic sign stealing and,

thus, were misleading.

421.    During the 2017, 2018 and 2019 baseball seasons, defendant MLB knowingly and

intentionally disregarded its long-standing public commitment to maintaining the integrity of the

game of baseball, and did not disclose to MLB fantasy baseball contestants that it would not act

to prevent and would not disclose egregious violations of its Official Rules by its member Clubs

that affected the fairness of the MLB fantasy baseball contests.

422.    During the 2017, 2018 and 2019 baseball seasons, the defendant Astros and

defendant Red Sox – both MLB member Clubs – concealed from the public, including Plaintiffs

and the Classes, their impermissible electronic sign stealing and issued false and misleading statements (as set forth above) attributing team player performance success to legitimate baseball factors. The MLB Defendants, although aware, at a minimum, of the Astros' misconduct, did not cause the Astros' false statements to be corrected.

423.    Manfred's ████████████████ October 17, 2018 statement misleadingly led members of the public, including Plaintiff Olson and other members of the Classes, to believe that MLB would promptly investigate and would not tolerate electronic sign stealing and that electronic sign stealing was not being perpetrated by MLB Clubs.

424.    The MLB Defendants failed to disclose to Plaintiffs and the Classes the following facts basic to Plaintiffs' and the Classes' decisions to pay to participate in the MLB fantasy baseball contests that the MLB Defendants established, in partnership with DraftKings, and approved, marketed and promoted, and financially benefited from:

> a.  That the player performance statistics upon which the contests were based, and upon which contestants relied to exercise winning skill, were corrupted and unreliable as a result of MLB member Clubs' electronic sign stealing;
>
> b.  That the contests were not games of skill;
>
> c.  That the MLB Defendants' daily recommendations of players and lineups for the fantasy baseball contests were misleading in that they did not account for the effects of the undisclosed electronic sign stealing;
>
> d.  That MLB had determined not to prevent or disclose egregious violations of its Official Rules concerning electronic sign stealing by member Clubs that affected the fairness of the MLB fantasy baseball contests;
>
> e.  That the Astros' statements attributing its player performance success to legitimate baseball factors were false.

425.    The MLB Defendants failed to disclose to Plaintiffs and the Classes the following information acquired by the MLB Defendants that rendered their prior representations to

Plaintiffs and the Class Members that the MLB fantasy baseball contests were games of skill untrue:

    a.  That the player performance statistics upon which the contests were based, and upon which contestants relied to exercise winning skill, were corrupted and unreliable as a result of MLB member Clubs' electronic sign stealing;

    b.  That the contests were not games of skill;

    c.  That MLB had determined not to prevent or disclose egregious violations of its Official Rules concerning electronic sign stealing by member Clubs that affected the fairness of the MLB fantasy baseball contests;

    d.  That the Astros' statements attributing its player performance success to legitimate baseball factors.

    426.    The MLB Defendants failed to disclose to Plaintiffs and the Classes the following information necessary to prevent the MLB Defendants' partial or ambiguous statements about the MLB fantasy baseball contests from being misleading:

    a.  That the player performance statistics upon which the contests were based, and upon which contestants relied to exercise winning skill, were corrupted and unreliable as a result of MLB member Clubs' electronic sign stealing;

    b.  That the MLB Defendants' daily recommendations of players and lineups for the fantasy baseball contests did not account for the effects of the undisclosed electronic sign stealing;

    c.  That, in addition to the electronic sign stealing by the Red Sox disclosed by the Commissioner in September 2017, the Astros were also in 2017 perpetrating electronic sign stealing ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆;

    d.  That MLB did not intend to adopt safeguards to insure that MLB fantasy baseball contests were fairly conducted so that contestants had a fair opportunity to win;

    e.  That MLB did not intend to stop or disclose member Club electronic sign stealing.

427.    The named Plaintiffs and the members of the Classes would not have paid to participate in the MLB fantasy baseball contests if they had known that MLB member Clubs were engaging in the electronic sign stealing described above.

428.    Each of the named Plaintiffs was aware of MLB's long-standing opposition to gambling on baseball and believed that MLB would not promote (or lend its name) to fantasy baseball contests if they were not games of skill and involved gambling.  In particular, each of the named Plaintiffs was aware of MLB's ban of former star MLB player Pete Rose and refusal to reinstate Rose because of his involvement with gambling.  Each of the named Plaintiffs was further aware of MLB's historic opposition to gambling on baseball, dating back to the ban on the Chicago White Sox players involved in the infamous  1919 World Series "Black Sox" gambling scandal and refusal to reinstate former star MLB player Shoeless Joe Jackson because of his involvement with gambling.  Each of the named Plaintiffs was further aware of MLB's continuing public opposition to sports gambling throughout the period at issue in this lawsuit.

429.    Each of the named Plaintiffs was aware of MLB's long-standing representations of its commitment to insuring the honesty and integrity of the game of Baseball and, based on those representations, believed that MLB would not knowingly allow conduct by MLB member Clubs contrary to MLB's Official Rules and regulations or otherwise contrary to the integrity of the game of Baseball.

430.    The information set forth in paragraphs 424-26 above was material to Plaintiffs' and the Classes' decision to pay to participate in MLB fantasy baseball contests.

431.    Each of the Plaintiffs was induced to, and did, pay to participate in MLB fantasy baseball contests by the MLB Defendants' intentional failure to disclose the information set forth in paragraphs 424-26 above.

432.    Each of the Plaintiffs was induced to, and did, pay to participate in MLB fantasy baseball contests by the MLB Defendants' material omissions.

433.    None of the Plaintiffs would have paid to participate in MLB fantasy baseball contests had the MLB Defendants disclosed the facts and information set in paragraphs 424-26 above.

434.    Like Plaintiffs, the Classes were induced to, and did, pay to participate in MLB fantasy baseball contests by the MLB Defendants' intentional failure to disclose the information set forth in paragraphs 424-26 above.

435.    Like Plaintiffs, no members of the Classes would have paid to participate in MLB fantasy baseball contests had the MLB Defendants disclosed the facts and information set in paragraphs 424-26 above.

436.    The MLB Defendants knew that Plaintiffs and the Classes would not pay to participate in MLB fantasy baseball contests if the MLB Defendants disclosed the facts and information set in paragraphs 424-26 above.

437.    As a direct and proximate result of the MLB Defendants' fraudulent non-disclosure and omissions of the material facts and information set forth in paragraphs 424-26 above, Plaintiffs and the Classes paid and lost the amount of their MLB fantasy baseball contest entry fees, and have, thus, suffered damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### NEGLIGENT MISREPRESENTATION
**(Brought by Plaintiffs and the Nationwide Class and the Subclasses Against the MLB Defendants)**

438.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

439.    The MLB Defendants supplied the following false information, in course of their business and in connection with MLB fantasy contests in which they had a pecuniary interest, to Plaintiffs and the Classes:

    a.   That the contests were conducted as games of skill;

    b.   That MLB recognized the need to adopt safeguards to insure that the contests were fairly conducted so that contestants had a fair opportunity to win;

    c.   That MLB was committed to maintaining the honesty and integrity of the game of baseball;

    d.   That the MLB Defendants' daily recommendations of players and lineups to for the MLB fantasy baseball contests were accurate.

440.    The MLB Defendants failed to exercise reasonable care or competence in communicating or causing to be communicated the false information set forth in paragraph 439.

441.    The MLB Defendants made the misrepresentations set forth in paragraph 439 with the specific intent and purpose of inducing Plaintiffs and the Classes to pay to participate in MLB fantasy contests and/or had reason to expect that Plaintiffs and the Classes would, in fact, rely upon the misrepresentations in deciding to pay to participate in the contests.

442.    Each of the Plaintiffs was specifically aware of the false information supplied by the MLB Defendants set forth in paragraph 439 and each Plaintiff specifically and justifiably relied upon that false information in deciding to pay to participate in the contests.

443.    None of the Plaintiffs would have paid to participate in the MLB fantasy contests if he had known of the falsity of the MLB Defendants' misrepresentations set forth in paragraph 439 above.

444.    Like Plaintiffs, the members of the Classes were specifically aware of the false information supplied by the MLB Defendants set forth in paragraph 439 and specifically and justifiably relied upon that false information in deciding to pay to participate in the contests.

445.    Like Plaintiffs, no members of the Classes would have paid to participate in the MLB fantasy contests if they had known of the falsity of the MLB Defendants' misrepresentations set forth in paragraph 439 above.

446.    The MLB Defendants knew that Plaintiffs and the Classes would not pay to participate in MLB fantasy baseball contests if the true facts, falsely misrepresented as set forth in paragraph 439, were known to them.

447.    As a direct and proximate result of the MLB Defendants' misrepresentations as set forth in paragraph 439, Plaintiffs and the Classes paid and lost the amount of their MLB fantasy baseball contest entry fees, and have, thus, suffered damages in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT
**(Brought by Plaintiffs and the Nationwide Class and the Subclasses Against the MLB Defendants)**

448.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

449.    ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████



450. ███████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████████████████████

████████████████████████████████

451. ███████████████████████████████

████████████████████████████████

████████████████████████████████

█████████████████████████████████████

███████████████████████████████████

██████████████████████████████████

█████████████████████████████████

██████████████████████

452. ███████████████████████████████

███████████████████████████████████

453. ███████████████████████████████

████████████████████████████████████

████████████████████████████████

██████████████

454.    The MLB Defendants knew and wrongfully concealed that ███████████

Clubs engaged in wrongful electronic sign stealing that resulted in compromised and dishonest

player performance statistics that precluded MLB fantasy baseball contestants from winning the contests based on skill and rendered the contests, and the MLB Defendants' marketing and promotion of the contests as games of skill, unfair and deceptive.

455.



456.

457.

458.     The MLB Defendants' wrongful conduct was knowing and intentional for the purpose of obtaining the financial benefits described above, and the MLB Defendants appreciated and had knowledge of the monetary benefits they would be able to obtain from Plaintiffs and the Classes as a result of their wrongful conduct.

459.     The MLB Defendants have been unjustly enriched at the expense of Plaintiffs and the Classes and, under principles of equity and good conscience, the MLB Defendants should not be permitted to retain the substantial monetary benefits they wrongfully obtained at the expense of Plaintiffs and the Classes.

460.    The MLB Defendants are liable to Plaintiffs and the Classes for the amount of the monetary benefits received by the MLB Defendants at the expense of Plaintiffs and the Classes.

461.    The MLB Defendants should be compelled to disgorge into a common fund or constructive trust for the benefit of Plaintiffs and the Classes all unlawful, inequitable and unjust proceeds received and/or realized as a result of their wrongful conduct.

## FIFTH CLAIM FOR RELIEF

### Texas Deceptive Trade Practices Act ("TDTPA"), Tex. Bus & Com. Code §17.41 *et seq.*
### (Brought by Plaintiffs and the Nationwide Class
### and Texas Subclass Against Defendant Houston Astros, LLC)

462.    Plaintiffs repeat and incorporate herein by reference the above allegations.

463.    At all times mentioned herein, Defendant Houston Astros, LLC was a Defendant MLB Club and an owner (through an affiliate) and one of the principal financial supporters of defendant MLBAM.

464.    Defendant Astros approved the MLB Defendants' undertakings with DraftKings set forth above and, in particular, ratified the MLB-Agreement and agreed to being included as one of the "MLB Parties" subject to obligations to market and promote MLB fantasy baseball contests.

465.    In 2015, the MLB Defendants, in partnership with DraftKings, and acting on behalf of Defendant Astros, established MLB-branded fantasy baseball contests as a commercial offering to consumers nationwide and, from the outset, and in particular during the 2017, 2018 and 2019 baseball seasons at issue in this lawsuit, exercised control over and monitored the manner in which the contests were conducted and marketed through their contractual rights of pre-approval of (a) the form of each of the contests; (b) the terms of use and conditions of participation of each of the contests; (c) the maximum entry fees for the contests; (d) DraftKings'

marketing and promotion of the contests; and (e) any changes to the form of the contests or terms of use and conditions of participation of each of the contests.

466.    In 2015, Defendant Houston Astros entered into a direct contractual agreement with DraftKings, described by the Astros and DraftKings as a partnership intended to complement the MLB-DraftKings agreement, to market and promote MLB fantasy baseball contests.

467.    Beginning in 2015, and continuing through 2019, Defendant Houston Astros was contractually required to, and did, actively advertise, market and promote the MLB fantasy baseball contests, including through its social media, media platforms and mobile applications, and television and radio advertising, and further through in-stadium banners and promotions.

468.



469.

470.

471. ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████

472.     Plaintiffs and the Texas Subclass and the Nationwide Subclass Members are "consumers" as defined by Tex. Bus. & Com. Code. § 17.45(4).

473.     At all times mentioned herein, Defendant Houston Astros engaged in trade or commerce in Texas, as defined by Tex. Bus. & Com. Code. § 17.45(6) in that they advertised, offered for sale, sold or distributed goods or services in Texas and/or engaged in trade or commerce directly or indirectly affecting the people of Texas.

## Defendant Houston Astros' Unconscionable Action or Course of Action In Violation of the TDTPA

474.     Internet fantasy sports competitions are only legal in Texas when they constitute games of skill, *i.e.*, when "all winning outcomes reflect the relative knowledge and skill of the participants." 31 U.S.C. § 5362(1)(E)(ix)(ii).

475.     During the 2017, 2018 and 2019 baseball seasons, undisclosed electronic sign stealing by Defendant Houston Astros compromised and corrupted the player performance statistics upon which the MLB fantasy baseball contests depended, and prevented the exercise of skill by contestants paying to participate in the contests, rendering the contests unfair.

476.     During the 2017, 2018 and 2019 baseball seasons, Defendant Houston Astros advertised, marketed and promoted MLB fantasy baseball games to consumers that were not games of skill.

477.     During the 2017, 2018 and 2019 baseball seasons, Defendant Houston Astros induced consumers to pay entry fees to participate in MLB fantasy baseball games that were not games of skill and that were, thus, conducted in violation of federal and Texas law.

478.     During the 2017, 2018 and 2019 baseball seasons, Defendant Houston Astros knew that they were advertising, marketing and promoting MLB fantasy baseball games that were not true games of skill to consumers, and knowingly and intentionally induced consumers to pay entry fees to participate in such contests.

479.     ███████████████████████████████████████

███████████████████████████████████████████████████

████████████████

480.     Defendant Houston Astros' conduct, as described above, constituted an unconscionable action or course of action in the conduct of trade or commerce, in violation of Tex. Bus. & Com. Code. §§ 17.50(a)(3) and 17.45(5), in that Defendant Houston Astros' acts and practices took advantage, to consumers' detriment, of consumers' lack of knowledge to a grossly unfair degree.

481.     Defendant Houston Astros' unconscionable action or course of action caused substantial injuries to Plaintiffs and the members of the Texas and Nationwide Subclasses in that Defendant Houston Astros' unconscionable acts caused Plaintiffs and members of the Subclasses to pay to participate in MLB fantasy baseball contests in Texas that were not games of skill and to lose the money they paid in entry fees on contests that did not allow them to use skill and were, as a result, games of chance that were illegal and that they would not have chosen to engage in.

**Defendant Houston Astros' False, Misleading or Deceptive Acts
and Practices in Violation of the TDTPA**

482.    Defendant Houston Astros caused consumers to be advised and agree, as a pre-condition of paying to participate in the MLB fantasy baseball contests, that the contests were games of skill.  Plaintiffs and the members of the Texas and Nationwide Subclasses each received this written representation prior to participating in the contests and acknowledged and agreed to it  (in electronic data on dates available to Defendant Houston Astros through its contractual relationship with DraftKings).

483.    During the 2017, 2018 and 2019 baseball seasons, Defendant Houston Astros was aware that its undisclosed electronic sign stealing compromised and corrupted the player performance statistics upon which the MLB fantasy baseball contests depended, and prevented the exercise of skill by contestants, rendering the contests unfair.

484.    During the 2017, 2018 and 2019 baseball seasons, Defendant Houston Astros knew that the MLB fantasy baseball contests were not games of skill, but did not disclose that fact to contestants or correct the written representation made to all contestants that the contests were games of skill.

485.    During the 2017, 2018 and 2019 baseball seasons, Defendant Houston Astros knew that the daily recommendations of players and lineups for selection by MLB fantasy baseball contestants issued by the MLB Defendants did not account for the Astros' undisclosed electronic sign stealing and, thus, were misleading, but took no action to correct or disclose the misleading nature of the recommendations.

486.    During the 2017, 2018 and 2019 baseball seasons, Defendant Astros concealed from the public, including Plaintiffs and the Texas and Nationwide Subclasses, its impermissible

electronic sign stealing and issued false and misleading statements (as set forth above) attributing team player performance success to legitimate baseball factors.

487.    Defendant Houston Astros' conduct, as described above, constituted false, misleading or deceptive acts and practices in the conduct of trade or commerce, in violation of Tex. Bus. & Com. Code. § 17.50(a)(1), in that Defendant Houston Astros engaged in proscribed conduct by, inter alia: "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have…." (§17.46(a)(5)); "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." (§ 17.46(a)(7)); "Advertising goods or services with intent not to sell them as advertised." (§ 17.46(a)(9)); and "Representing that an agreement confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." (§ 17.46(a)(12)).  In particular, the MLB Defendants:

      a.  misrepresented that the MLB fantasy baseball contests were games of skill when they were not;

      b.  failed to disclose that the MLB fantasy baseball contests were not games of skill, which was known to Defendant Houston Astros at the time of the transaction, and which failure to disclose was intended by Defendant Houston Astros to induce  consumers into paying entry fees to participate in MLB fantasy baseball contests which the consumer would not have entered had the information been disclosed;

      c.  caused, for the purpose of inducing consumers to pay to participate in MLB fantasy baseball contests, statements about the contests that they knew materially misrepresented the character of the contests

      d.  advertised MLB fantasy baseball contests as games of skill with the intent not to conduct them as advertised.

488.    Defendant Houston Astros' false, misleading and deceptive acts and practices caused substantial injuries to Plaintiffs and other consumers in Texas and nationwide in that they caused Plaintiffs and other consumers in the Texas and Nationwide Subclasses to pay to

participate in MLB fantasy baseball contests that were not games of skill and to lose the money

they paid in entry fees on contests that did not allow them to use skill and were, as a result,

games of chance that were illegal and that Plaintiffs and the members of the Texas and

Nationwide Subclasses would not have chosen to engage in.

489.    Plaintiffs and the Texas and Nationwide Subclass members seek relief, pursuant

to Tex. Bus. & Com. Code § 17.50(a)(1), for the injuries they have suffered as a result of

Defendant Houston Astros' unfair and deceptive acts and practices, including, without limitation,

actual economic damages, statutory treble damages for Defendant Houston Astros' knowing

violations of the TDUTPA, and other relief, including attorneys' fees and costs, recoverable

under the Act.

### SIXTH CLAIM FOR RELIEF

### FRAUDULENT NON-DISCLOSURE
**(Brought by Plaintiffs and the Nationwide Class and the
Subclasses Against the Houston Astros, LLC)**

490.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

491.    Defendant Houston Astros, LLC failed to disclose to Plaintiffs and the Classes the

following facts basic to Plaintiffs' and the Classes' decisions to pay to participate in the MLB

fantasy baseball contests that the Astros, through its membership in defendant MLB and

ownership interest in MLBAM and through the Astros' direct partnership arrangement with

DraftKings, established, approved, marketed and promoted, and financially benefited from:

a.  That the player performance statistics upon which the contests were based,
    and upon which contestants relied to exercise winning skill, were corrupted
    and unreliable as a result of the Astros' electronic sign stealing;

b.  That the contests were not games of skill;

c.  That the Astros' statements attributing its player performance success to
    legitimate baseball factors were false.

127

492.    Defendant Houston Astros, LLC failed to disclose to Plaintiffs and the Classes the following information acquired by the Astros that rendered its prior representations to Plaintiffs and the Classes that the MLB fantasy baseball contests were games of skill untrue:

    a.    That the player performance statistics upon which the contests were based, and upon which contestants relied to exercise winning skill, were corrupted and unreliable as a result of the Astros' electronic sign stealing;

    b.    That the contests were not games of skill;

    c.    That the Astros' statements attributing its player performance success to legitimate baseball factors.

493.    Defendant Houston Astros, LLC failed to disclose to Plaintiffs and the Classes the following information necessary to prevent the Astros' partial or ambiguous statements about the MLB fantasy baseball contests misleading:

    a.    That the player performance statistics upon which the contests were based, and upon which contestants relied to exercise winning skill, were corrupted and unreliable as a result of the Astros' electronic sign stealing;

    b.    That the Astros' statements attributing its player performance success to legitimate baseball factors were incomplete and untrue.

494.    The information set forth in paragraphs 491-93 above was material to Plaintiffs' decision to pay to participate in MLB fantasy baseball contests.

495.    Each of the Plaintiffs was induced to, and did, pay to participate in MLB fantasy baseball contests by the Astros' intentional failure to disclose the information set forth in paragraphs 491-93 above.

496.    Each of the Plaintiffs was induced to, and did, pay to participate in MLB fantasy baseball contests by the Astros' material omissions.

497.    None of the Plaintiffs would have paid to participate in MLB fantasy baseball contests had the Astros disclosed the facts and information set in paragraphs 491-93 above.

498.    Like Plaintiffs, the Classes were induced to, and did, pay to participate in MLB fantasy baseball contests by the Astros' intentional failure to disclose the information set forth in paragraphs 491-93 above.

499.    Like Plaintiffs, no members of the Classes would have paid to participate in MLB fantasy baseball contests had the Astros disclosed the facts and information set in paragraphs 491-93 above.

500.    Defendant Houston Astros, LLC knew that Plaintiffs and the Classes would not pay to participate in MLB fantasy baseball contests if the Astros disclosed the facts and information set in paragraphs 491-93 above.

501.    As a direct and proximate result of Defendant Houston Astros, LLC's fraudulent non-disclosures and omissions of the material facts and information set forth in paragraphs 491-93 above, Plaintiffs and the Classes paid and lost the amount of their MLB fantasy baseball contest entry fees, and have, thus, suffered damages in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### NEGLIGENT MISREPRESENTATION
**(Brought by Plaintiffs and the Nationwide Class and the Subclasses Against the Houston Astros, LLC)**

502.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

503.    Defendant Houston Astros, LLC supplied the following false information, in course of its business and in connection with MLB fantasy contests in which they had a pecuniary interest, to plaintiffs' and the Classes:

   a.   That the contests were conducted as games of skill;

b. That the Astros' player performance success was the result of legitimate baseball factors;

504. Defendant Houston Astros, LLC failed to exercise reasonable care or competence in communicating or causing to be communicated the false information set forth in paragraph 503.

505. Defendant Houston Astros, LLC made the misrepresentations set forth in paragraph 503 with the specific and purpose of inducing Plaintiffs and the Classes to pay to participate in MLB fantasy contests and/or had reason to expect that Plaintiffs and the Classes would, in fact, rely upon the misrepresentations in deciding to pay to participate in the contests.

506. Each of the Plaintiffs was specifically aware of and each of the Plaintffs specifically and justifiably relied upon the false information supplied by Defendant Houston Astros, LLC set forth in paragraph 503 in deciding to pay to participate in the contests.

507. None of the Plaintiffs would not have paid to participate in the MLB fantasy contests if he had known of the falsity of Defendant Houston Astros, LLC's misrepresentations set forth in paragraph 503 above.

508. Like Plaintiffs, the members of the Classes were specifically aware of the false information supplied by Defendant Houston Astros, LLC set forth in paragraph 503 and specifically and justifiably relied upon that false information in deciding to pay to participate in the contests.

509. Like Plaintiffs, no members of the Classes would have paid to participate in the MLB fantasy contests if they had known of the falsity of Defendant Houston Astros, LLC's misrepresentations set forth in paragraph 503 above.

510.    Defendant Houston Astros, LLC knew that Plaintiffs and the Classes would not pay to participate in MLB fantasy baseball contests if the true facts, falsely misrepresented as set forth in paragraph 503, were known to them.

511.    As a direct and proximate result of Defendant Houston Astros, LLC's misrepresentations as set forth in paragraph 503 above, Plaintiffs and the Classes paid and lost the amount of their MLB fantasy baseball contest entry fees, and have, thus, suffered damages in an amount to be proven at trial.

### EIGHTH CLAIM FOR RELIEF

#### UNJUST ENRICHMENT
**(Brought by Plaintiffs and the Nationwide Class and the
Subclasses Against the Houston Astros, LLC)**

512.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

513.    ███████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
█████████████████████████

514.    ███████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
█████████████████████████

515. ██████████████████████████████

█████████████████████████████████

█████████████████████████████████

█████████████████████████████████

█████████████████████████████████

█████████████████████████████████

████████████████████████████████

█████████████████████████████████

█████████████████████████████

516. █████████████████████████████

█████████████████████████████████

███████

517. ██████████████████████████████

████████████████████████████████

█████████████████████████████████

██████████████████████

518.    Defendant Houston Astros, LLC knew and wrongfully concealed that it was engaged in wrongful electronic sign stealing that resulted in compromised and dishonest player performance statistics that precluded MLB fantasy baseball contestants from winning the contests based on skill and rendered the contests, and the Astros' marketing and promotion of the contests as games of skill, unfair and deceptive.

519. ██████████████████████████████

███████████████████████████████



520.

521.

522.

523.     Defendant Houston Astros, LLC has been unjustly enriched at the expense of Plaintiffs and the Classes and, under principles of equity and good conscience, the Astros should not be permitted to retain the substantial monetary benefits it wrongfully obtained at the expense of Plaintiffs and the Classes.

524.     Defendant Houston Astros, LLC is liable to Plaintiffs and the Classes for the amount of the monetary benefits received by the Astros at the expense of Plaintiffs and the Classes.

525.     Defendant Houston Astros, LLC should be compelled to disgorge into a common fund or constructive trust for the benefit of Plaintiffs and the Classes all inequitable and unjust proceeds it has received and/or realized as a result of its wrongful conduct.

## NINTH CLAIM FOR RELIEF

**A.   Massachusetts Consumer Protection Act ("MCPA"), M.G.L. c. 93A, § 1, *et seq.*  (Brought on Behalf of Plaintiff Olson and the Massachusetts Subclass Against the Boston Red Sox Baseball Club, L.P.)**

526.    Plaintiffs repeat and incorporate herein by reference the above allegations.

527.    At all times mentioned herein, Defendant Boston Red Sox Baseball Club, L.P. was a Defendant MLB Club and an owner (through an affiliate) and one of the principal financial supporters of defendant MLBAM.

528.    Defendant Red Sox approved the MLB Defendants' undertakings with DraftKings set forth above and, in particular, ratified the MLB-Agreement and agreed to being included as one of the "MLB Parties" subject to obligations to market and promote MLB fantasy baseball contests.

529.    In 2015, the MLB Defendants, in partnership with DraftKings, and acting on behalf of Defendant Red Sox, established MLB-branded fantasy baseball contests as a commercial offering to consumers nationwide and, from the outset, and in particular during the 2017, 2018 and 2019 baseball seasons at issue in this lawsuit, exercised control over and monitored the manner in which the contests were conducted and marketed through their contractual rights of pre-approval of (a) the form of each of the contests; (b) the terms of use and conditions of participation of each of the contests; (c) the maximum entry fees for the contests; (d) DraftKings' marketing and promotion of the contests; and (e) any changes to the form of the contests or terms of use and conditions of participation of each of the contests.

530.    In 2015, Defendant Boston Red Sox entered into a direct contractual agreement with DraftKings, described by the Red Sox and DraftKings as a "partnership" intended to

complement the MLB-DraftKings agreement, to market and promote MLB fantasy baseball contests.

531.    Beginning in 2015, and continuing through 2019, Defendant Boston Red Sox was contractually required to, and did, actively advertise, market and promote the MLB fantasy baseball contests, including through its social media, media platforms and mobile applications, and television and radio advertising, and further through in-stadium banners and promotions.



536.    At all times mentioned herein, Defendant Boston Red Sox engaged in trade or commerce in Texas, as defined by M.G.L. c. 93A, § 5, in that it advertised, offered for sale, sold

or distributed goods or services in Texas and/or engaged in trade or commerce directly or indirectly affecting the people of Texas.

**Defendant Red Sox's Unfair Acts and Practices in Violation of the MCPA**

537.   Internet fantasy sports competitions are only legal in Massachusetts when they constitute games of skill, *i.e.*, when "all winning outcomes reflect the relative knowledge and skill of the participants." 31 U.S.C. § 5362(1)(E)(ix)(ii).

538.   During the 2017, 2018 and 2019 baseball seasons, undisclosed electronic sign stealing by Defendant Boston Red Sox compromised and corrupted the player performance statistics upon which the MLB fantasy baseball contests depended, and prevented the exercise of skill by contestants paying to participate in the contests, rendering the contests unfair.

539.   During the 2017, 2018 and 2019 baseball seasons, Defendant Red Sox advertised, marketed and promoted MLB fantasy baseball games to consumers in Massachusetts that were not games of skill.

540.   During the 2017, 2018 and 2019 baseball seasons, the Defendant Red Sox induced consumers in Massachusetts to pay entry fees to participate in MLB fantasy baseball games that were not games of skill and that were, thus, conducted in violation of federal and Massachusetts law.

541.   During the 2017, 2018 and 2019 baseball seasons, Defendant Red Sox knew that it was advertising, marketing and promoting MLB fantasy baseball games that were not true games of skill to consumers in Massachusetts, and knowingly and intentionally induced consumers in Massachusetts to pay entry fees to participate in such contests.

136

542.   Defendant Red Sox received substantial fees and revenues as a result of its advertising, marketing and promoting of MLB fantasy baseball games that were not true games of skill to consumers in Massachusetts.

543.   Defendant Red Sox's conduct, as described above, constituted unfair acts and practices in the conduct of trade or commerce in that Defendant Red Sox's acts and practices were illegal, immoral, unethical, oppressive or unscrupulous.

544.   Defendant Red Sox's unfair acts and practices caused substantial injuries to Plaintiff Olson and other consumers in the Massachusetts Subclass in that the Red Sox's unfair acts caused Plaintiff Olson and other consumers to pay to participate in MLB fantasy baseball contests in Massachusetts that were not games of skill and to lose the money they paid in entry fees on contests that did not allow them to use skill and were, as a result, games of chance that were illegal and that Plaintiff Olson and the Massachusetts Subclass members would not have chosen to engage in.

**Defendant Red Sox's Deceptive Acts and Practices in Violation of the MCPA**

545.   Defendant Red Sox caused consumers to be advised and agree, as a pre-condition of paying to participate in the MLB fantasy baseball contests, that the contests were games of skill.  Plaintiff Olson and the other members of the Massachusetts Subclass each electronically received this written representation prior to participating in the contests and electronically acknowledged and agreed to it (in electronic data on dates available to Defendant Red Sox through their contractual relationship with DraftKings).

546.   During the 2017, 2018 and 2019 baseball seasons, Defendant Red Sox was aware that its undisclosed electronic sign stealing compromised and corrupted the player performance

statistics upon which the MLB fantasy baseball contests depended, and prevented the exercise of skill by contestants, rendering the contests unfair.

547.    During the 2017, 2018 and 2019 baseball seasons, Defendant Red Sox knew that the MLB fantasy baseball contests were not games of skill, but did not disclose that fact to contestants or correct the written representation made to all contestants that the contests were games of skill.

548.    During the 2017, 2018 and 2019 baseball seasons, Defendant Red Sox knew that the daily recommendations of players and lineups for selection by MLB fantasy baseball contestants issued by the MLB Defendants did not account for the Red Sox's undisclosed electronic sign stealing and, thus, were misleading, but took no action to correct or disclose the misleading nature of the recommendations.

549.    During the 2017, 2018 and 2019 baseball seasons, Defendant Red Sox concealed from the public, including Plaintiff Olson and the Massachusetts Subclass, its impermissible electronic sign stealing and issued false and misleading statements (as set forth above) attributing team player performance success to legitimate baseball factors.

550.    Defendant Red Sox's conduct, as described above, constituted deceptive acts and practices in the conduct of trade or commerce in that the Red Sox's acts and practices had the capacity to mislead Plaintiff Olson and other consumers in Massachusetts, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted.

551.    Defendant Red Sox's deceptive acts and practices caused substantial injuries to Plaintiff Olson and other consumers in Massachusetts in that the Red Sox's deceptive business practices caused Plaintiff Olson and other consumers in the Massachusetts Subclass to pay to participate in MLB fantasy baseball contests that were not games of skill and to lose the money

they paid in entry fees on contests that did not allow them to use skill and were, as a result, games of chance that were illegal and that Plaintiff Olson and the Massachusetts Subclass members would not have chosen to engage in.

552.    Plaintiff Olson and the Massachusetts Subclass members seek relief, pursuant to M.G.L. c. 93A § 9, for the injuries they have suffered as a result of Defendant Red Sox's unfair and deceptive acts and practices, including, without limitation, actual damages, statutory double or treble damages, injunctive and/or other equitable relief, and/or attorneys' fees and costs.

**TENTH CLAIM FOR RELIEF**

**FRAUDULENT NON-DISCLOSURE**
**(Brought by Plaintiffs and the Nationwide Class and the Subclasses Against the Boston
Red Sox Baseball Club, L.P.)**

553.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

554.    Defendant Boston Red Sox Baseball Club, L.P. failed to disclose to Plaintiffs and the Classes the following facts basic to Plaintiffs' and the Classes' decisions to pay to participate in the MLB fantasy baseball contests that the Red Sox, through its membership in defendant MLB and ownership interest in MLBAM and through the Red Sox's direct partnership arrangement with DraftKings, established, approved, marketed and promoted, and financially benefited from:

      a.   That the player performance statistics upon which the contests were based, and upon which contestants relied to exercise winning skill, were corrupted and unreliable as a result of the Red Sox's electronic sign stealing;

      b.   That the contests were not games of skill

      c.   That the Red Sox's statements attributing its player performance success to legitimate baseball factors were false.

555.    Defendant Boston Red Sox Baseball Club, L.P. failed to disclose to Plaintiffs and the Classes the following information acquired by the Red Sox that rendered its prior representations to Plaintiffs and the Classes that the MLB fantasy baseball contests were games of skill untrue:

a.  That the player performance statistics upon which the contests were based, and upon which contestants relied to exercise winning skill, were corrupted and unreliable as a result of the Red Sox's electronic sign stealing;

b.  That the contests were not games of skill;

c.  That the Red Sox's statements attributing its player performance success to legitimate baseball factors.

556.    Boston Red Sox Baseball Club, L.P. failed to disclose to Plaintiffs and the Classes the following information necessary to prevent the Red Sox's partial or ambiguous statements about the MLB fantasy baseball contests misleading:

a.  That the player performance statistics upon which the contests were based, and upon which contestants relied to exercise winning skill, were corrupted and unreliable as a result of the Red Sox's electronic sign stealing;

b.  That the contests were not games of skill;

c.  That the Red Sox's statements attributing its player performance success to legitimate baseball factors were incomplete and untrue.

557.    The information set forth in paragraphs 554-56 above was material to Plaintiffs' decision to pay to participate in MLB fantasy baseball contests.

558.    Each of the Plaintiffs was induced to, and did, pay to participate in MLB fantasy baseball contests by the Red Sox's intentional failure to disclose the information set forth in paragraphs 554-56 above.

559.    Each of the Plaintiffs was induced to, and did, pay to participate in MLB fantasy baseball contests by the Red Sox's material omissions.

560.     None of the Plaintiffs would have paid to participate in MLB fantasy baseball contests had the Red Sox disclosed the facts and information set in paragraphs 554-56 above.

561.     Like Plaintiffs, the Classes were induced to, and did, pay to participate in MLB fantasy baseball contests by the Red Sox's intentional failure to disclose the information set forth in paragraphs 554-56 above.

562.     Like Plaintiffs, no members of the Classes would have paid to participate in MLB fantasy baseball contests had the Red Sox disclosed the facts and information set in paragraphs 554-56 above.

563.     Boston Red Sox Baseball Club, L.P. knew that Plaintiffs and the Classes would not pay to participate in MLB fantasy baseball contests if the Red Sox disclosed the facts and information set in paragraphs 554-56 above.

564.     As a direct and proximate result of Defendant Boston Red Sox Baseball Club, L.P. fraudulent non-disclosures and omissions of the material facts and information set forth in paragraphs 554-56 above, Plaintiffs and the Classes paid and lost the amount of their MLB fantasy baseball contest entry fees, and have, thus, suffered damages in an amount to be proven at trial.

### ELEVENTH CLAIM FOR RELIEF

### NEGLIGENT MISREPRESENTATION
**(Brought by Plaintiffs and the Nationwide Class and the Subclasses Against the Boston Red Sox Baseball Club, L.P.)**

565.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

566.     Defendant Boston Red Sox Baseball Club, L.P. supplied the following false information, in course of its business and in connection with MLB fantasy contests in which they had a pecuniary interest, to plaintiffs' and the Classes:

a.   That the contests were conducted as games of skill;

b.   That the Red Sox's player performance success was the result of legitimate baseball factors;

567.   Defendant Boston Red Sox Baseball Club, L.P. failed to exercise reasonable care or competence in communicating or causing to be communicated the false information set forth in paragraph 566.

568.   Defendant Boston Red Sox Baseball Club, L.P. made the misrepresentations set forth in paragraph 566 with the specific and purpose of inducing Plaintiffs and the Classes to pay to participate in MLB fantasy contests and/or had reason to expect that Plaintiffs and the Classes would, in fact, rely upon the misrepresentations in deciding to pay to participate in the contests.

569.   Each of the Plaintiffs was specifically aware of and each of the Plaintffs specifically and justifiably relied upon the false information supplied by Defendant Boston Red Sox Baseball Club, L.P. set forth in paragraph 566 in deciding to pay to participate in the contests.

570.   None of the Plaintiffs would not have paid to participate in the MLB fantasy contests if he had known of the falsity of Defendant Boston Red Sox Baseball Club, L.P.'s misrepresentations set forth in paragraph 566 above.

571.   Like Plaintiffs, the members of the Classes were specifically aware of the false information supplied by Defendant Boston Red Sox Baseball Club, L.P. set forth in paragraph 566 and specifically and justifiably relied upon that false information in deciding to pay to participate in the contests.

572.   Like Plaintiffs, no members of the Classes would have paid to participate in the MLB fantasy contests if they had known of the falsity of Defendant Boston Red Sox Baseball Club, L.P.'s misrepresentations set forth in paragraph 566 above.

573.     Defendant Boston Red Sox Baseball Club, L.P. knew that Plaintiffs and the Classes would not pay to participate in MLB fantasy baseball contests if the true facts, falsely misrepresented as set forth in paragraph 566, were known to them.

574.     As a direct and proximate result of Defendant Boston Red Sox Baseball Club, L.P.'s misrepresentations as set forth in paragraph 566 above, Plaintiffs and the Classes paid and lost the amount of their MLB fantasy baseball contest entry fees, and have, thus, suffered damages in an amount to be proven at trial.

## TWELFTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT
**(Brought by Plaintiffs and the Nationwide Class and the Subclasses Against Defendant Boston Red Sox Baseball Club, L.P.)**

575.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

576.     ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

577.     ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████



578.

579.

580.

581.     Defendant Boston Red Sox Baseball Club, L.P. knew and wrongfully concealed that it was engaged in wrongful electronic sign stealing that resulted in compromised and dishonest player performance statistics that precluded MLB fantasy baseball contestants from

winning the contests based on skill and rendered the contests, and the Red Sox's marketing and promotion of the contests as games of skill, unfair and deceptive.



586.     Defendant Boston Red Sox Baseball Club, L.P. has been unjustly enriched at the expense of Plaintiffs and the Classes and, under principles of equity and good conscience, the Red Sox should not be permitted to retain the substantial monetary benefits it wrongfully obtained at the expense of Plaintiffs and the Classes.

587.     Defendant Boston Red Sox Baseball Club, L.P. is liable to Plaintiffs and the Classes for the amount of the monetary benefits received by the Red Sox at the expense of Plaintiffs and the Classes.

588.     Defendant Boston Red Sox Baseball Club, L.P. should be compelled to disgorge into a common fund or constructive trust for the benefit of Plaintiffs and the Classes all inequitable and unjust proceeds it has received and/or realized as a result of its wrongful conduct.

**PRAYER FOR RELIEF**

A.     Certify this action and the Classes as requested herein, appoint Plaintiffs as Class Representatives, and appoint Plaintiffs' attorneys as Class Counsel.

B.     Enter judgment against Defendants and in favor of Plaintiffs and the Classes on the claims for relief asserted herein.

C.     Award to Plaintiff and each member of the Classes actual, compensatory, general and/or statutory damages, and exemplary and/or punitive damages, as allowed by law, in amounts to be determined at trial.

D.     Award Plaintiff and the Classes restitution and order disgorgement of all of Defendants' ill-gotten gains, together with all proceeds, interest, income, profits, and accessions thereto as a result of Defendants' wrongful conduct.

E.     Award Plaintiff and the Classes Award Plaintiff and the Classes injunctive and/or other appropriate equitable relief pursuant to the state consumer protection acts cited herein.

F.     Award Plaintiff and the Classes attorneys' fees and costs, as allowed by law.

G.     Award Plaintiff and the Classes prejudgment and post-judgment interest, as allowed by law.

H.     Award such other relief as the Court deems just and equitable.

## JURY DEMAND

Pursuant to FED. R. CIV. P. 38, Plaintiffs and the Classes demand trial by a jury on all issues so triable.

DATED:  May 5, 2020                    **SILVER GOLUB & TEITELL LLP**

By:      /s/ David S. Golub
         David S. Golub
         Steven L. Bloch
         Ian W. Sloss
         SILVER GOLUB & TEITELL LLP
         184 Atlantic Street
         Stamford, CT 06901
         Tel. (203) 325-4491
         Fac. (203) 325-3769
         dgolub@sgtlaw.com
         sbloch@sgtlaw.com
         isloss@sgtlaw.com

         John D. Radice
         Kenneth Pickle
         Natasha Fernandez-Silber
         April Lambert
         RADICE LAW FIRM, P.C.
         475 Wall Street
         Princeton, NJ 08540
         Tel: (646) 245-8502
         Fac: (609) 385-0745
         jradice@radicelawfirm.com
         kpickle@radicelawfirm.com
         nsilber@radicelawfirm.com
         alambert@radicelawfirm.com

         Eric L. Cramer
         Patrick F. Madden
         BERGER AND MONTAGUE
         1818 Market Street
         Suite 3600
         Philadelphia, PA 19103
         Tel: (215) 875-3000
         Fac: (215) 875-4604
         ecramer@bm.net
         pmadden@bm.net

*Counsel for Plaintiffs and the
Proposed Classes*