# Exhibit B-5
# [REDACTED]

of knowledge of the Purchaser Excluded Information. Purchaser hereby acknowledges that any future sale of shares of the Company's capital stock could be at a premium or a discount to the Purchase Price, and such sale could occur at any time or not at all. Purchaser hereby acknowledges that it has not relied on any representation or statement of Sellers or the Company in making its investment decision in purchasing the Shares.

SECTION 3.04.  Investment Representations. The Shares purchased by Purchaser are being acquired for investment only and not with a view to any public distribution thereof, and Purchaser shall not offer to sell or otherwise dispose of such Shares so acquired by it in violation of any of the registration requirements of the Securities Act of 1933, as amended (the "*Securities Act*"). Purchaser understands that the Shares are "restricted securities" under applicable U.S. federal and state securities laws and that, pursuant to these laws, Purchaser must hold the Shares indefinitely unless they are registered with the Securities and Exchange Commission and qualified by state authorities, or an exemption from such registration and qualification requirements is available. Purchaser further acknowledges that if an exemption from registration or qualification is available, it may be conditioned on various requirements including, but not limited to, the time and manner of sale, the holding period for the Shares, and requirements relating to the Company which are outside of Purchaser's control, and which the Company is under no obligation and may not be able to satisfy. Purchaser will not sell, transfer, pledge or otherwise dispose of any Shares received by Purchaser unless and until (a) such Shares are subsequently registered under the Securities Act and any applicable state securities laws, or (b) (i) an exemption from such registration is available thereunder, and (ii) Purchaser has notified the Company of the proposed transfer and, if reasonably requested by the Company, has furnished the Company with an opinion of counsel in a form reasonably satisfactory to the Company that such transfer will not require registration of such shares under the Securities Act. Purchaser understands that the Company is not obligated, and does not intend, to register any Shares either under the Securities Act or any state securities laws. Purchaser is an "accredited investor," as that term is defined in Regulation D of the Securities Act. Purchaser authorizes the Company to issue stop transfer instructions to its stock transfer agent, or, so long as the Company may act as its own transfer agent, to make a stop transfer notation in its appropriate records, in order to ensure Purchaser's compliance with this provision.

ARTICLE IV

Covenants and Other Matters

SECTION 4.01. Certain Tax Matters. Each Seller shall be responsible for such Seller's own tax liability, if any, that may arise as a result of this Agreement. Each Purchaser shall be responsible for such Purchaser's own tax liability, if any, that may arise as a result of this Agreement.

SECTION 4.02.  Fees and Expenses. All fees and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such fees or expenses.

SECTION 4.03.  Agreements to Transfer and to be Bound. Each Purchaser agrees to be bound by the terms and conditions of (i) the Certificate and Bylaws, as the same may be amended and/or restated from time to time; (ii) the Seventh Amended and Restated Investor Rights Agreement made as of August 17, 2018 by and among the Company, the Investors (as defined therein) and the Key Holders (as defined therein) (the "*Investor Rights Agreement*") as an Investor thereunder; (iii) the Seventh Amended and Restated Voting Agreement made as of August 17, 2018, by and among the Company, the Investors (as defined therein) and the Key Holders (as defined therein) (the "*Voting Agreement*") as an Investor and Stockholder thereunder; and (iv) the Seventh Amended and Restated Right of First Refusal and Co-Sale

203026446 v4

HIGHLY CONFIDENTIAL                                                         MLB-Olson-00000512

Agreement made as of August 17, 2018, by and among the Company, the Investors (as defined therein) and the Key Holders (as defined therein) (the "***ROFR Agreement***", and together with the Investor Rights Agreement, Voting Agreement, collectively, the "***Company Agreements***") as an Investor thereunder. Each Purchaser further agrees to deliver to the Company an executed Adoption Agreement and Joinder Agreement.

SECTION 4.04. <u>Sellers and Purchasers Confidentiality</u>. Except as required by law, the Sellers and the Purchasers agree that each party will not discuss, without the prior written consent of the other parties, the existence or terms of this Agreement, or any other agreement or transaction contemplated hereby, with any person other than representatives and advisors of the Company or representatives and advisors of the Sellers, the Purchasers or their respective affiliates and the respective partners, members or stockholders thereof. Neither the Sellers, the Purchasers, nor any of their respective representatives or advisors shall, directly or indirectly, issue any statement or communication to any third party (other than to their legal and accounting advisors) regarding the existence or terms of this Agreement or any other agreement or transaction contemplated hereby without the written consent of the other parties, unless required by law, rule or regulation to do so; in which case such disclosing party (i) shall promptly notify the other parties in writing of such requirement and will cooperate with the non-disclosing parties to the extent practicable to limit the information disclosed to only such information that the disclosing party, as advised by counsel, determines is required by law to be disclosed and (ii) will, to the extent practicable and at the request and expense of the non-disclosing parties, seek to obtain a protective order over, or confidential treatment of, such information. Notwithstanding the foregoing, the Purchasers and the Sellers may disclose this Agreement and the transactions contemplated hereby to their respective affiliates and the respective partners, members or stockholders thereof, in each case, provided that the Purchasers or the Sellers informs such person that such information is confidential and directs such person to maintain the confidentiality of such information.

SECTION 4.05. <u>Company Confidentiality</u>.  For a period of two (2) years following the Effective Date, unless agreed to in writing by the Sellers, the Company agrees not to disclose the existence or terms of this Agreement with any person other than representatives and advisors of the Company who are bound by a duty of confidentiality to the Company without the written consent of the Sellers, and neither the Company nor any of its representatives or advisors shall, directly or indirectly, issue any statement or communication to any third party (other than to its representatives or advisors) regarding the existence or terms of this Agreement. Notwithstanding the foregoing, the Company may disclose or discuss this Agreement, (i) to or with its affiliates and the respective partners, members or stockholders thereof and (ii) in connection with due diligence activities conducted by lenders or potential acquirers of the Company or its securities; in each case, provided that the Company informs such persons that such information is confidential and such persons are party to a confidentiality agreement with the Company or are otherwise bound by a duty of confidentiality to the Company with respect to such information. In addition, the Company may disclose or discuss this Agreement pursuant to the requirement of any governmental or regulatory agency, court or by operation of law, in which case the Company (a) shall promptly notify the other parties in writing of such requirement, (b) will cooperate with the Sellers to the extent practicable to limit the information disclosed to only such information that the Company, as advised by counsel, determines is required by law to be disclosed and (c) will, to the extent practicable and at the request and expense of the Sellers, seek to obtain a protective order over, or confidential treatment of, such information. Notwithstanding the foregoing, the Company is free to acknowledge, in response to inquiries regarding the capitalization of the Company or otherwise, that the Sellers have sold all of their respective shares in the Company and are no longer stockholders of the Company.

203026446 v4

HIGHLY CONFIDENTIAL                                                                                               MLB-Olson-00000513

## ARTICLE V

### Miscellaneous

SECTION 5.01. Survival of Representations, Warranties and Covenants. The representations, warranties and covenants in this Agreement and in any instrument delivered pursuant to this Agreement shall survive the Closing. The Company is an intended third party beneficiary of the representations and warranties of Sellers and Purchasers contained herein.

SECTION 5.02. Advisors; No Reliance. Each party has had an opportunity to review with such party's own tax and legal advisor(s) the terms, conditions and implications of this Agreement and the transactions contemplated hereby. No party is relying on any representation or warranty of the Company regarding this Agreement or the transactions contemplated hereby, including, without limitation, the legality of the transfer or any tax or other consequences related to this Agreement and the transactions contemplated hereby.

SECTION 5.03. Company Consent. Contingent upon satisfaction of the conditions set forth herein, including Section 1.02, the Company hereby (i) consents to the transfer of the Shares from Sellers to Purchasers, (ii) acknowledges that no further action by Sellers is required under Section 2.12(c) of the Investors' Rights Agreement for the transfer of the Shares other than the requirements of Section 1.02(b) hereof and (iii) consents to the Purchasers hereby becoming a party to the Company Agreements as Investors in accordance with the applicable terms of each Company Agreement. Nothing in this Section 5.03 shall in any way limit the Company's right to claim any benefits inuring to it under any other section of this Agreement. The Company hereby represents to Sellers and Purchasers that the board of directors of the Company has approved the transfer of the SRV Shares in accordance with and as required by the Company's Bylaws.

SECTION 5.04. Restrictions on Transfer, Market Stand-Off Agreement.



(b) The Company hereby represents, warrants and agrees:

(i) Pursuant to the consent of the Board of Directors of the Company, the Company hereby waives any right of first refusal contained in the Certificate, the Bylaws, or the Company Agreements with

-8-

HIGHLY CONFIDENTIAL

MLB-Olson-00000514

respect to the transactions contemplated by this Agreement, and the transactions herein set forth are otherwise in compliance with any applicable term of such Certificate, Bylaws and Company Agreements.

(ii) Promptly following presentment of the stock powers referenced in Section 1.02(a) and, subject to Sellers' compliance with Section 1.02(b), the Company shall register the Shares in the name of Purchasers.

SECTION 5.05. Notices. Any and all notices required or permitted to be given to a party pursuant to the provisions of this Agreement will be in writing. All notices not delivered personally, by electronic mail or by facsimile will be sent with postage and/or other charges prepaid and properly addressed to the party to be notified at the address or facsimile number set forth under each party's signatures below, or at such other address or facsimile number as such other party may designate by one of the indicated means of notice herein to the other parties hereto.

SECTION 5.06. Counterparts. This Agreement may be executed in one or more counterparts (including by fax or PDF), all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties.

SECTION 5.07. GOVERNING LAW. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF DELAWARE, REGARDLESS OF THE LAWS THAT MIGHT OTHERWISE GOVERN UNDER APPLICABLE PRINCIPLES OF CONFLICTS OF LAWS THEREOF.

SECTION 5.08. Assignment. Neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned, in whole or in part, by operation of law or otherwise by any of the parties without the prior written consent of the other parties. Subject to the preceding sentence, this Agreement will be binding upon, inure to the benefit of and be enforceable by, the parties and their respective successors and assigns.

SECTION 5.09. Consent to Jurisdiction; Waiver of Jury Trial. Each of the parties hereto irrevocably and unconditionally submits to and accepts the jurisdiction of the United States District Court for the Southern District of New York located in the Borough of Manhattan or (if such court is not available) the courts of the State of New York located in the County of New York, for any action, suit, or proceeding arising out of or based upon this Agreement or any matter relating to this Agreement, and waives any objection that it may have to the laying of venue in any such court or that such court is an inconvenient forum or does not have personal jurisdiction over it. EACH OF THE PARTIES HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY LAWSUIT, PROCEEDING OR ACTION TO ENFORCE OR DEFEND ANY RIGHT UNDER THIS AGREEMENT OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR TO BE DELIVERED IN CONNECTION WITH THIS AGREEMENT, AND AGREES THAT ANY LAWSUIT, PROCEEDING OR ACTION WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

SECTION 5.10. Severability. If one or more provisions of this Agreement are held to be unenforceable under applicable law, such provision shall be excluded from the Agreement and the balance of this Agreement shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

SECTION 5.11. No Third-Party Rights. Except as otherwise provided in Sections 4.03, 4.04, 5.01, 5.03 and 5.04, this Agreement is not intended, and will not be construed, to create any rights in

203026446 v4

HIGHLY CONFIDENTIAL

MLB-Olson-00000515

any parties other than the Sellers and the Purchasers, and no person may assert any rights as third-party beneficiary hereunder.

SECTION 5.12. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement among the parties, and supersedes all other prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof.

SECTION 5.13. <u>Further Assurances</u>. The parties agree to execute such further documents and instruments and to take such further actions as may be reasonably necessary to carry out the purposes and intent of this Agreement.

SECTION 5.14. <u>Amendment and Waivers</u>. This Agreement may be amended only by a written agreement of the Sellers, the Purchasers and the Company. No amendment of or waiver of, or modification of any obligation under this Agreement will be enforceable unless set forth in a writing signed by the party against which enforcement is sought. Any amendment effected in accordance with this Section 5.14 will be binding upon all parties hereto and each of their respective successors and assigns. No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance. No waiver granted under this Agreement as to any one provision herein shall constitute a subsequent waiver of such provision or of any other provision herein, nor shall it constitute the waiver of any performance other than the actual performance specifically waived.

*[Signature Page Follows]*

-10-

HIGHLY CONFIDENTIAL   MLB-Olson-00000516

IN WITNESS WHEREOF, each party has caused this Agreement to be executed as of the date first written above.

**SELLERS:**

**MLB ADVANCED MEDIA, L.P., by MLB ADVANCED MEDIA, INC., its GENERAL PARTNER**

By: _____

Name: Lara Pitaro Wisch

Title: SVP, General Counsel

**SAUGATUCK RIVER VENTURES, LLC**

By: _____

Name: Edward Weber, Jr.

Title: Vice President

(Signature Page to Stock Purchase Agreement)

203026446 v4

HIGHLY CONFIDENTIAL

IN WITNESS WHEREOF, each party has caused this Agreement to be executed as of the date first written above.

**PURCHASERS:**

# Redacted

(Signature Page to Stock Purchase Agreement)

203026446 v4
4853-1009-2439.2

MLB-Olson-00000518

IN WITNESS WHEREOF, each party has caused this Agreement to be executed as of the date first written above.


**PURCHASERS:**

**Redacted**

(Signature Page to Stock Purchase Agreement)

203026446 v4
4853-1009-2439.2

IN WITNESS WHEREOF, each party has caused this Agreement to be executed as of the date first written above.


**PURCHASERS:**


# Redacted


(Signature Page to Stock Purchase Agreement)

203026446 v4
4853-1009-2439.2

HIGHLY CONFIDENTIAL                                                           MLB-Olson-00000520

IN WITNESS WHEREOF, each party has caused this Agreement to be executed as of the date first written above.

**PURCHASERS:**

# Redacted

(Signature Page to Stock Purchase Agreement)

203026446 v4
4853-1009-2439.2

IN WITNESS WHEREOF, each party has caused this Agreement to be executed as of the date first written above.

**PURCHASERS:**

# Redacted

(Signature Page to Stock Purchase Agreement)

203026446 v4
4853-1009-2439.2

HIGHLY CONFIDENTIAL

IN WITNESS WHEREOF, each party has caused this Agreement to be executed as of the date first written above.

**PURCHASERS:**

**Redacted**

(Signature Page to Stock Purchase Agreement)

203026446 v4
4853-1009-2439.2

IN WITNESS WHEREOF, each party has caused this Agreement to be executed as of the date first written above.

**COMPANY:**

**DRAFTKINGS INC.**

By: _Jason Robins_____
       Name: Jason Robins
       Title: President and Chief Executive Officer
       Address: 500 Boylston Street
       Boston, Massachusetts 02116

(Signature Page to Stock Purchase Agreement)

HIGHLY CONFIDENTIAL

**EXHIBIT A**

**SCHEDULE OF PURCHASERS**

# Redacted

203026446 v4

HIGHLY CONFIDENTIAL

## EXHIBIT B

### TRANSFER SCHEDULE

| Purchaser | Seller | Shares – Common Stock | Shares – Series E-1 Preferred | Wire to Seller | Wire to Company |
|-----------|--------|----------------------|-------------------------------|----------------|-----------------|
| Redacted | MLB Advanced Media, L.P. | ▮ | | ▮ | ▮ |
| | Saugatuck River Ventures, LLC | ▮ | ▮ | ▮ | ▮ |
| **Purchaser Total** | | ▮ | ▮ | ▮ | ▮ |

| Purchaser | Seller | Shares – Common Stock | Shares – Series E-1 Preferred | Wire to Seller | Wire to Company |
|-----------|--------|----------------------|-------------------------------|----------------|-----------------|
| Redacted | MLB Advanced Media, L.P. | ▮ | | ▮ | ▮ |
| | Saugatuck River Ventures, LLC | ▮ | ▮ | ▮ | ▮ |
| **Purchaser Total** | | ▮ | ▮ | ▮ | ▮ |

| Purchaser | Seller | Shares – Common Stock | Shares – Series E-1 Preferred | Wire to Seller | Wire to Company |
|-----------|--------|----------------------|-------------------------------|----------------|-----------------|
| Redacted | MLB Advanced Media, L.P. | ▮ | ▮ | ▮ | ▮ |
| | Saugatuck River Ventures, LLC | ▮ | ▮ | ▮ | ▮ |
| **Purchaser Total** | | ▮ | ▮ | ▮ | ▮ |

| Purchaser | Seller | Shares – Common Stock | Shares – Series E-1 Preferred | Wire to Seller | Wire to Company |
|-----------|--------|----------------------|-------------------------------|----------------|-----------------|
| Redacted | MLB Advanced Media, L.P. | ▮ | ▮ | ▮ | ▮ |
| | Saugatuck River Ventures, LLC | ▮ | ▮ | ▮ | ▮ |
| **Purchaser Total** | | ▮ | ▮ | ▮ | ▮ |

Doc#: US1:12749322v5
203026446 v4

MLB-Olson-00000526

| Purchaser | Seller | Shares – Common Stock | Shares – Series E-1 Preferred | Wire to Seller | Wire to Company |
|---|---|---|---|---|---|
| Redacted | MLB Advanced Media, L.P. | ▮ | ▮ | ▮ | ▮ |
| | Saugatuck River Ventures, LLC | ▮ | ▮ | ▮ | ▮ |
| Purchaser Total | | ▮ | ▮ | ▮ | ▮ |

| Purchaser | Seller | Shares – Common Stock | Shares – Series E-1 Preferred | Wire to Seller | Wire to Company |
|---|---|---|---|---|---|
| Redacted | MLB Advanced Media, L.P. | ▮ | ▮ | ▮ | - |
| | Saugatuck River Ventures, LLC | ▮ | - | ▮ | ▮ |
| Purchaser Total | | ▮ | ▮ | ▮ | ▮ |

| Purchaser | Seller | Shares – Common Stock | Shares – Series E-1 Preferred | Wire to Seller | Wire to Company |
|---|---|---|---|---|---|
| Redacted | MLB Advanced Media, L.P. | ▮ | ▮ | ▮ | ▮ |
| | Saugatuck River Ventures, LLC | ▮ | ▮ | ▮ | ▮ |
| Purchaser Total | | ▮ | ▮ | ▮ | ▮ |

**Totals** ▮ ▮ ▮ ▮

203026446 v4

HIGHLY CONFIDENTIAL

## EXHIBIT C

## ADOPTION AGREEMENT

This Adoption Agreement ("**Adoption Agreement**") is executed on May 31, 2019, by the undersigned (the "**Holder**") pursuant to the terms of that certain Seventh Amended and Restated Voting Agreement dated as of August 17, 2018 (the "**Agreement**"), by and among the Company and certain of its Stockholders, as such Agreement may be amended or amended and restated hereafter. Capitalized terms used but not defined in this Adoption Agreement shall have the respective meanings ascribed to such terms in the Agreement. By the execution of this Adoption Agreement, the Holder agrees as follows.

1.1     <u>Acknowledgement</u>. Holder acknowledges that Holder is acquiring certain shares of the capital stock of the Company (the "**Stock**") and/or options, warrants or other rights to purchase such Stock (the "**Options**"), for one of the following reasons (Check the correct box):

       ☑     as a transferee of Capital Stock from a party in such party's capacity as an "Investor" bound by the Agreement, and after such transfer, Holder shall be considered an "Investor" and a "Stockholder" for all purposes of the Agreement.

       ☐     as a transferee of Capital Stock from a party in such party's capacity as a "Key Holder" bound by the Agreement, and after such transfer, Holder shall be considered a "Key Holder" and a "Stockholder" for all purposes of the Agreement.

       ☐     in accordance with <u>Section 6.15</u> of the Agreement, as a new party who is not a new Investor, in which case Holder will be "Key Holder" and a "Stockholder" for all purposes of the Agreement.

1.2     <u>Agreement</u>. Holder hereby (a) agrees that the Stock and/or Options, and any other shares of capital stock or securities required by the Agreement to be bound thereby, shall be bound by and subject to the terms of the Agreement and (b) adopts the Agreement with the same force and effect as if Holder were originally a party thereto.

1.3     <u>Notice</u>. Any notice required or permitted by the Agreement shall be given to Holder at the address or facsimile number listed below Holder's signature hereto.

*[Signature Page Follows]*

203026446 v4

IN WITNESS WHEREOF, the undersigned has caused this Adoption Agreement to be executed as of the date first written above.

**INVESTORS:**

# Redacted

(Signature Page to Adoption Agreement)

Doc#: US1:12749322v5
203026446 v4
4853-1009-2439.2

IN WITNESS WHEREOF, the undersigned has caused this Adoption Agreement to be executed as of the date first written above.

**INVESTORS:**

**Redacted**

(Signature Page to Adoption Agreement)

Doc#: US1:12749322v5
203026446 v4
4853-1009-2439.2

HIGHLY CONFIDENTIAL                                                                MLB-Olson-00000530

IN WITNESS WHEREOF, the undersigned has caused this Adoption Agreement to be executed as of the date first written above.


**INVESTORS:**

# Redacted

Doc#: US1:12749322v5
203026446 v4
4853-1009-2439.2

HIGHLY CONFIDENTIAL

IN WITNESS WHEREOF, the undersigned has caused this Adoption Agreement to be executed as of the date first written above.

**INVESTORS:**

**Redacted**

(Signature Page to Adoption Agreement)

Doc#: US1:12749322v5
203026446 v4
4853-1009-2439.2

HIGHLY CONFIDENTIAL

IN WITNESS WHEREOF, the undersigned has caused this Adoption Agreement to be executed as of the date first written above.

**INVESTORS:**

# Redacted

(Signature Page to Adoption Agreement)

Doc#: US1:12749322v5
203026446 v4
4853-1009-2439.2

HIGHLY CONFIDENTIAL

DocuSign Envelope ID: F7A02DFD-ABAF-4F1B-B7B2-89C483551DE8

IN WITNESS WHEREOF, the undersigned has caused this Adoption Agreement to be executed as of the date first written above.

**INVESTORS:**

# Redacted

(Signature Page to Adoption Agreement)

Doc#: US1:12749322v5
203026446 v4
4853-1009-2439.2

HIGHLY CONFIDENTIAL

MLB-Olson-00000534

IN WITNESS WHEREOF, the undersigned has caused this Adoption Agreement to be executed as of the date first written above.

ACCEPTED AND AGREED:

**DRAFTKINGS INC.**

By: *Jason Robins*
_____

       Name: Jason Robins
       Title: President and Chief Executive Officer
       Address: 500 Boylston Street
       Boston, Massachusetts 02116

(Signature Page to Adoption Agreement)

203026446 v4

HIGHLY CONFIDENTIAL
MLB-Olson-00000535

## EXHIBIT D

## JOINDER AGREEMENT

The undersigned hereby agrees to become a party to (a) the Seventh Amended and Restated Investors' Rights Agreement (as amended, the "***IRA***"), (b) the Seventh Amended and Restated Right of First Refusal and Co-Sale Agreement (as amended, the "***ROFR***"), and (c) the Seventh Amended and Restated Voting Agreement (as amended, the "***Voting Agreement***" and, together with the IRA and the ROFR, the "***Company Agreements***"), each dated as of August 17, 2018, by and among DraftKings Inc., a Delaware corporation (the "***Company***") and the parties named therein respectively. Effective as of the undersigned's acquisition of shares of the Company's capital stock, the undersigned is hereby made a party to, and agrees to be bound by the terms of, the Company Agreements as an "Investor" thereunder. The undersigned agrees that this Joinder Agreement may be attached to each of the Company Agreements as counterpart signature pages thereto.

The undersigned acknowledges receipt of a copy of each of the Company Agreements. The address to which notices may be sent to the undersigned is listed below the undersigned's signature hereto.

*[Signature Page Follows]*

203026446 v4

MLB-Olson-00000536

IN WITNESS WHEREOF, the undersigned has caused this Joinder Agreement to be executed as of the date first written above.


**INVESTORS:**



Redacted

(Signature Page to Joinder Agreement)

Doc#: US1:12749322v5
203026446 v4
4853-1009-2439.2

HIGHLY CONFIDENTIAL

IN WITNESS WHEREOF, the undersigned has caused this Joinder Agreement to be executed as of the date first written above.


**INVESTORS:**

# Redacted

Doc#: US1:12749322v5
203026446 v4
4853-1009-2439.2

HIGHLY CONFIDENTIAL

IN WITNESS WHEREOF, the undersigned has caused this Joinder Agreement to be executed as of the date first written above.

**INVESTORS:**

# Redacted

(Signature Page to Joinder Agreement)

Doc#: US1:12749322v5
203026446 v4
4853-1009-2439.2

HIGHLY CONFIDENTIAL

IN WITNESS WHEREOF, the undersigned has caused this Joinder Agreement to be executed as of the date first written above.

**INVESTORS:**

# Redacted

(Signature Page to Joinder Agreement)

Doc#: US1:12749322v5
203026446 v4
4853-1009-2439.2

HIGHLY CONFIDENTIAL                                                                    MLB-Olson-00000540

IN WITNESS WHEREOF, the undersigned has caused this Joinder Agreement to be executed as of the date first written above.

**INVESTORS:**

**Redacted**

(Signature Page to Joinder Agreement)

Doc#: US1:12749322v5
203026446 v4
4853-1009-2439.2

HIGHLY CONFIDENTIAL

IN WITNESS WHEREOF, the undersigned has caused this Joinder Agreement to be executed as of the date first written above.


**INVESTORS:**

# Redacted


(Signature Page to Joinder Agreement)

Doc#: US1:12749322v5
203026446 v4
4853-1009-2439.2

HIGHLY CONFIDENTIAL                                                MLB-Olson-00000542

## EXHIBIT E

### ASSIGNMENT SEPARATE FROM CERTIFICATE

**FOR VALUE RECEIVED**, [NAME OF SELLER] ("*Assignor*"), hereby sells, assigns and transfers unto the following entity the shares of [Common Stock/ Series E-1 Preferred Stock] of DraftKings Inc., a Delaware corporation (the "*Company*"), set forth below, standing in Assignor's name on the books of the Company and hereby irrevocably constitutes and appoints Cooley LLP attorney-in-fact to transfer said stock on the books of the Company, with the full power of substitution in the premises.

| Name | Number of Shares Transferred |
|------|------------------------------|
|      |                              |

Dated: _____ , 2019

**[NAME OF SELLER]**

By: _____
Name:
Title:

Doc#: US1:12749322v5
203026446 v4

HIGHLY CONFIDENTIAL

## ASSIGNMENT SEPARATE FROM CERTIFICATE

**FOR VALUE RECEIVED**, MLB Advanced Media, L.P. ("*Assignor*"), hereby sells, assigns and transfers unto the following entity the shares of Common Stock and the shares of Series E-1 Preferred Stock of DraftKings Inc., a Delaware corporation (the "*Company*"), set forth below, standing in Assignor's name on the books of the Company and hereby irrevocably constitutes and appoints Cooley LLP attorney-in-fact to transfer said stock on the books of the Company, with the full power of substitution in the premises.

| Name | Number of Common Stock Shares Transferred | Number of Series E-1 Preferred Stock Shares Transferred |
|------|-------------------------------------------|---------------------------------------------------------|
| **Redacted** | | |

Dated: May 31, 2019

**MLB ADVANCED MEDIA, L.P., by MLB ADVANCED MEDIA, INC, its General Partner:**

By _____
    4C75EC34D656430...

Name _____
    Lara Pitaro Wisch

Title _____
    SVP, General Counsel

MLB-Olson-00000544

**ASSIGNMENT SEPARATE FROM CERTIFICATE**

**FOR VALUE RECEIVED**, MLB Advanced Media, L.P. ("*Assignor*"), hereby sells, assigns and transfers unto the following entity the shares of Common Stock and the shares of Series E-1 Preferred Stock of DraftKings Inc., a Delaware corporation (the "*Company*"), set forth below, standing in Assignor's name on the books of the Company and hereby irrevocably constitutes and appoints Cooley LLP attorney-in-fact to transfer said stock on the books of the Company, with the full power of substitution in the premises.

| Name | Number of Common Stock Shares Transferred | Number of Series E-1 Preferred Stock Shares Transferred |
|------|-------------------------------------------|---------------------------------------------------------|
| Redacted | | |

Dated: May 31, 2019

**MLB ADVANCED MEDIA, L.P., by MLB ADVANCED MEDIA, INC, its General Partner:**

By _____
                    4C78EC34D656430...

Name _____
        Lara Pitaro Wisch

Title _____
        SVP, General Counsel

## ASSIGNMENT SEPARATE FROM CERTIFICATE

**FOR VALUE RECEIVED**, MLB Advanced Media, L.P. ("*Assignor*"), hereby sells, assigns and transfers unto the following entity the shares of Common Stock and the shares of Series E-1 Preferred Stock of DraftKings Inc., a Delaware corporation (the "*Company*"), set forth below, standing in Assignor's name on the books of the Company and hereby irrevocably constitutes and appoints Cooley LLP attorney-in-fact to transfer said stock on the books of the Company, with the full power of substitution in the premises.

| Name | Number of Common Stock Shares Transferred | Number of Series E-1 Preferred Stock Shares Transferred |
|------|-------------------------------------------|--------------------------------------------------------|
| **Redacted** | ■ | ■ |

Dated: May 31, 2019

**MLB ADVANCED MEDIA, L.P., by MLB ADVANCED MEDIA, INC, its General Partner:**

By _____

Name _____Lara Pitaro Wisch_____

Title _____SVP, General Counsel_____

MLB-Olson-00000546

## ASSIGNMENT SEPARATE FROM CERTIFICATE

**FOR VALUE RECEIVED**, MLB Advanced Media, L.P. ("*Assignor*"), hereby sells, assigns and transfers unto the following entity the shares of Common Stock and the shares of Series E-1 Preferred Stock of DraftKings Inc., a Delaware corporation (the "*Company*"), set forth below, standing in Assignor's name on the books of the Company and hereby irrevocably constitutes and appoints Cooley LLP attorney-in-fact to transfer said stock on the books of the Company, with the full power of substitution in the premises.

| Name | Number of Common Stock Shares Transferred | Number of Series E-1 Preferred Stock Shares Transferred |
|---|---|---|
| **Redacted** | | |

Dated: May 31, 2019

## MLB ADVANCED MEDIA, L.P., by MLB ADVANCED MEDIA, INC, its General Partner:

By _____

Name _____
Lara Pitaro Wisch

Title _____
SVP, General Counsel

## ASSIGNMENT SEPARATE FROM CERTIFICATE

**FOR VALUE RECEIVED**, MLB Advanced Media, L.P. ("*Assignor*"), hereby sells, assigns and transfers unto the following entity the shares of Common Stock and the shares of Series E-1 Preferred Stock of DraftKings Inc., a Delaware corporation (the "*Company*"), set forth below, standing in Assignor's name on the books of the Company and hereby irrevocably constitutes and appoints Cooley LLP attorney-in-fact to transfer said stock on the books of the Company, with the full power of substitution in the premises.

| Name | Number of Common Stock Shares Transferred | Number of Series E-1 Preferred Stock Shares Transferred |
|------|-------------------------------------------|---------------------------------------------------------|
| Redacted | | |

Dated: May 31, 2019

**MLB ADVANCED MEDIA, L.P., by MLB ADVANCED MEDIA, INC, its General Partner:**

By _____

Name _____ Lara Pitaro Wisch _____

Title _____ SVP, General Counsel _____

**ASSIGNMENT SEPARATE FROM CERTIFICATE**

**FOR VALUE RECEIVED**, MLB Advanced Media, L.P. ("*Assignor*"), hereby sells, assigns and transfers unto the following entity the shares of Common Stock and the shares of Series E-1 Preferred Stock of DraftKings Inc., a Delaware corporation (the "*Company*"), set forth below, standing in Assignor's name on the books of the Company and hereby irrevocably constitutes and appoints Cooley LLP attorney-in-fact to transfer said stock on the books of the Company, with the full power of substitution in the premises.

| Name | Number of Common Stock Shares Transferred | Number of Series E-1 Preferred Stock Shares Transferred |
|---|---|---|
| Redacted | | |

Dated: May 31, 2019

**MLB ADVANCED MEDIA, L.P., by MLB ADVANCED MEDIA, INC, its General Partner:**

By _____
    4C75EC34D658430

Name _____
    Lara Pitaro Wisch

Title _____
    SVP, General Counsel

**ASSIGNMENT SEPARATE FROM CERTIFICATE**

**FOR VALUE RECEIVED**, MLB Advanced Media, L.P. ("*Assignor*"), hereby sells, assigns and transfers unto the following entity the shares of Common Stock and the shares of Series E-1 Preferred Stock of DraftKings Inc., a Delaware corporation (the "*Company*"), set forth below, standing in Assignor's name on the books of the Company and hereby irrevocably constitutes and appoints Cooley LLP attorney-in-fact to transfer said stock on the books of the Company, with the full power of substitution in the premises.

| Name | Number of Common Stock Shares Transferred | Number of Series E-1 Preferred Stock Shares Transferred |
|---|---|---|
| Redacted | | |

Dated: May 31, 2019

**MLB ADVANCED MEDIA, L.P., by MLB ADVANCED MEDIA, INC, its General Partner:**

By _____

Name _____Lara Pitaro Wisch_____

Title _____SVP, General Counsel_____

## ASSIGNMENT SEPARATE FROM CERTIFICATE

FOR VALUE RECEIVED, Saugatuck River Ventures, LLC ("*Assignor*"), hereby sells, assigns and transfers unto the following entity the shares of Common Stock of DraftKings Inc., a Delaware corporation (the "*Company*"), set forth below, standing in Assignor's name on the books of the Company and hereby irrevocably constitutes and appoints Cooley LLP attorney-in-fact to transfer said stock on the books of the Company, with the full power of substitution in the premises.

| Name | Number of Common Stock Shares Transferred |
|---|---|
| Redacted | |

Dated: May 31, 2019

## SAUGATUCK RIVER VENTURES, LLC

By _Edward Weber, Jr._
DA4DA70283FE48E...

Name _Edward Weber, Jr._

Title _Vice President_

HIGHLY CONFIDENTIAL