```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| KRISTOPHER R. OLSON, CHRISTOPHER LOPEZ, WARREN BARBER, CHRISTOPHER CLIFFORD, AND ERIK LIPTAK, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>MAJOR LEAGUE BASEBALL; MLB ADVANCED MEDIA, L.P.; HOUSTON ASTROS, LLC; and BOSTON RED SOX BASEBALL CLUB, L.P.,<br><br>          Defendants. | 20-cv-632 (JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.

    While major league baseball games are currently on hold, the game of litigation never ceases, as this case illustrates.

    On April 3, 2020 the Court dismissed the above-captioned action for failure to state a claim. The dismissal was with prejudice because the Court concluded that some of the complaint's infirmities could not be cured through amendment. Plaintiffs now move for reconsideration, contending that a proposed amended complaint, which they attach, will in fact cure such deficiencies. But after further briefing and careful review the Court concludes that the proposed amended complaint fails to cure the fundamental deficiencies identified by the Court in its

order of dismissal, and that, accordingly, plaintiffs' motion must be denied.

I. Background

The Court here assumes full familiarity with the prior history of this case, as set forth in detail in the Court's Opinion and Order of April 3, 2020 ("MTD Opinion"). ECF No. 55. Briefly summarized, this is a putative class action lawsuit brought by fantasy sports players against Major League Baseball and MLB Advanced Media, L.P. (collectively "MLB"), the Boston Red Sox Baseball Club, L.P. (the "Red Sox"), and the Houston Astros, LLC (the "Astros"). The named plaintiffs are five individuals who participated in daily fantasy baseball contests hosted by DraftKings Inc. ("DraftKings") between 2017 and 2019. The original complaint asserted various claims of fraud, negligence, unjust enrichment, and violations of consumer protection laws based on alleged misrepresentations made by the defendants in connection with what became something of a sign-stealing scandal.

Following the filing of a First Amended Complaint ("FAC"), ECF No. 20, defendants moved to dismiss all claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and the Court granted the dismissal. See MTD Opinion. Although the Court's precise reasoning varied from claim to claim, the Court's dismissal of the FAC was rooted in two fundamental

2

deficiencies in the complaint. First, plaintiffs failed to plausibly allege that the defendants made any misrepresentations about fantasy baseball itself, those being the only representations on which the fantasy baseball players could reasonably rely or base a claim. Second, plaintiffs failed to allege a sufficient nexus among themselves, the fantasy baseball transactions they entered, and the defendants to support their various theories of liability. In addition, as relevant here, the Court dismissed the unjust enrichment claim because of a lack of plausible allegations that defendants were enriched at plaintiffs' expense. Because the Court found that these deficiencies were not curable by anything alleged or suggested by plaintiffs, it dismissed the complaint with prejudice. The Clerk entered judgment against plaintiffs on April 7, 2020. ECF No. 56.

Plaintiffs now move for reconsideration of the Court's MTD Opinion only as to its conclusion that the complaint should be dismissed with prejudice. See Pls. Mem. of Law in Support of Mot. to Alter, Amend or Vacate Judgment and for Leave to Amend ("Pls. Mem Law"), ECF No. 60. Specifically, plaintiffs ask the Court to set aside the April 7 judgment and grant plaintiffs leave to file a Proposed Amended Complaint ("PAC"). ECF No. 64-1 to 64-2. Plaintiffs argue that the PAC cures the defects in the FAC identified by the Court. Pls. Mem Law at 1-2. The PAC does

so, according to plaintiffs, by supplementing the FAC with new allegations drawn from various materials obtained from the defendants during discovery.

## II. Legal Standard

As a general matter, the standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995). This strict standard is intended to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Carolco Pictures Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988). However, where a party moves for reconsideration for the purpose of filing an amended complaint, the strictness of this standard is tempered by Rule 15's requirement that "courts 'should freely give leave' to amend a complaint 'when justice so requires.'" Williams v. Citigroup Inc., 659 F.3d 208, 212 (2d Cir. 2011) (citing Fed. R. Civ. P. 15(a)(2)). Thus, when considering a motion for reconsideration aimed at the Court's denial of leave to amend, the Court should generally "take into account the nature of the proposed amendment in deciding whether to vacate the previously

4

entered judgment." Id. at 213 (citation omitted). If the proposed amendments would be futile, however, the Court may deny the motion for reconsideration and leave to amend. Id. at 214.

III. Analysis

Plaintiffs urge that the PAC demonstrates that the Court should reconsider its conclusion that amendment of the FAC would be futile because the PAC cures the deficiencies identified by the Court. First, they argue that the PAC identifies two new misrepresentations by defendants that plaintiffs relied on. Second, plaintiffs argue that the PAC alleges a sufficient nexus among defendants, plaintiffs, and the fantasy baseball transactions plaintiffs entered into to support their various theories of liability. Third, plaintiffs argue that the PAC alleges facts sufficient to support their unjust enrichment claim. For the reasons below, the Court finds that none of these arguments is persuasive, that amendment would thus be futile, and that denying the motion for reconsideration is warranted.[1]

a. New Alleged Misrepresentations

Plaintiffs first argue that the PAC remedies the FAC's deficiencies by alleging two new misrepresentations about

---

[1] To the extent plaintiffs argue that the PAC has corrected the Rule 9(b) pleading deficiencies the Court identified in the MTD Opinion, the Court does not reach these arguments because the Court's disposition of the motion to dismiss at no point turned on plaintiffs' failure to comply with Rule 9(b).

fantasy baseball made by the defendants and upon which the plaintiffs relied. The first such misrepresentation is alleged to be found in DraftKings's "Terms of Use," which every contestant is provided in writing before participating in any major league baseball daily fantasy baseball ("MLB DFS") contest. PAC ¶ 33. The Terms of Use provide, under the heading "Contests of Skill," that "Contests offered on the Website are contests of skill. . . . [W]inners are determined by the individuals who use their skill and knowledge of relevant sports information and fantasy sports rules to accumulate the most points according to the corresponding scoring rules." Id.; ECF No. 64-4 at MLB-Olson-00000474-75. On its face, this language refers to the skill and knowledge of the fantasy sports bettors, and so is entirely irrelevant to any issue of misrepresentation by defendants. Plaintiffs nonetheless construe this language as constituting a misrepresentation that MLB DFS contests (i.e., the fantasy baseball contests) are themselves "contests of skill." PAC ¶ 402.

But even if this interpretation were plausible –- which it clearly is not -- plaintiffs fail to explain how terms conveyed by DraftKings to its own customers on its own website constitute representations by any defendant. Plaintiffs try to overcome this objection by suggesting that the language is a statement by MLB (and by extension all other defendants) because the language

6

was included in the Terms of Use only "at MLB's insistence." Pls. Mem. of Law at 8. This is both legally and factually unsupportable. Legally, plaintiffs provide no case law to support the proposition that a third party's insistence that language be included in a contract between two unrelated parties transforms that language into a representation by that third party. And factually, plaintiffs fail to allege facts plausibly supporting the claim that the language was included at MLB's insistence.

For this latter proposition, plaintiffs cite primarily to a 2015 licensing and marketing agreement between MLB and DraftKings[2] in which the parties set out, inter alia, the conditions under which DraftKings could use MLB's proprietary material in its fantasy baseball contests. ECF No. 64-3 to 64-8 ("MLB-DraftKings Agreement"). Contests meeting these conditions are referred to in the agreement as "Approved Fantasy Games." ECF No. 64-3 at MLB-Olson-00000442. One requirement to be an Approved Fantasy Game is that the contest be "governed by[] and operate in accordance with . . . Licensee [DraftKings] Website's Terms of Use and Privacy Policy." ECF No. 64-4 at MLB-Olson-00000471. The language here in issue -- which, as noted,

---

[2] The contract was actually between MLB Advanced Media, L.P. and DraftKings, but plaintiffs allege that it bound all defendants.

7

plaintiffs erroneously refer to as asserting that MLB DFS contests are "contests of skill" -- appears in these pre-approved Terms of Use (the "Terms"). Id. at MLB-Olson-00000474-75. But the MLB-DraftKings Agreement, on its face, contradicts the notion that this language was included in the Terms at MLB's insistence. Rather, the contract's reference to the Terms as "Licensee Website's Terms of Use and Privacy Policy," and the Terms' own general language, makes clear that the conditions apply to all fantasy contests on the platform, not just MLB DFS contests. ECF Nos. 64-4, 64-5 at MLB-Olson-00000472-480. This strongly suggests that the Terms were dictated by DraftKings, not MLB. This is confirmed by the fact that although the contract requires MLB's "approval in advance . . . for any change" to most of the required conditions, the contract specifically notes that MLB's "approval in advance shall not be required for any change to" the Terms. ECF Nos. 64-4 at MLB-Olson-00000471.

The other purported misrepresentation plaintiffs add to the PAC suffers from a different infirmity. In the PAC, plaintiffs newly allege that MLB Commissioner Manfred made a false statement in a September 15, 2017 press release relating to the results of an MLB investigation into possible misconduct by the New York Yankees. PAC ¶¶ 406-08. Specifically, plaintiffs allege that the press release falsely suggested that the investigation

8

found that the Yankees had only engaged in a minor technical infraction, when they had in fact been engaged in a more serious sign-stealing scheme, as allegedly indicated in a separate letter written by Manfred.[3]

Whether or not this was a misrepresentation, however, is not material. Even assuming arguendo that the press release made false statements about the extent of the Yankees' involvement in sign-stealing, this misrepresentation relates to the integrity of major league baseball, not fantasy baseball. As noted in the Court's MTD Opinion, "Plaintiffs' theory of reliance . . . comes down to the claim that they would not have entered DraftKings' MLB DFS contests but for defendants' supposed representations that fantasy baseball contests were games of skill, the integrity of which defendants would ensure by ensuring the integrity of major league baseball." MTD Opinion at 16. A predicate of plaintiffs' reliance theory is thus that defendants made a misrepresentation about fantasy baseball itself, and the absence of such a misrepresentation was thus important to the Court's conclusion that the FAC did not, and could not, allege the reliance necessary to support their fraud or negligent

---

[3] At the request of defendant Major League Baseball and the third-party New York Yankees, the letter has been sealed, but plaintiffs have now moved to unseal it. The Court will promptly resolve that motion in a separate opinion, but it has no bearing on the instant decision.

misrepresentation claims. Manfred's potential misrepresentation about the Yankees thus does nothing to resolve the ultimate deficiency the Court found in plaintiffs' initial complaint -- a failure to allege a misrepresentation about fantasy baseball that might render plausible their theory of reliance.

 b. The "Nexus" Among Defendants, Plaintiffs, and the Relevant Transactions

Plaintiffs next argue that the PAC clarifies that there is a sufficient nexus among defendants, plaintiffs, and the fantasy baseball transactions plaintiffs entered into to support their fraud by omission and consumer protection law claims. Plaintiffs do so primarily by relying on the aforementioned MLB-DraftKings Agreement, which they assert "shows defendants' substantial involvement and participation in virtually every aspect of the MLB-branded fantasy contest business." Pls. Mem. Law at 4. Plaintiffs allege that this agreement shows that MLB (1) created the MLB DFS contests; (2) directly controlled the form, terms and conditions of participating; (3) assumed contractual obligations to market and promote the contests; (4) directly participated in the sale of the contests; (5) directly participated via MLB platforms; and (6) reaped enormous financial profit from the contests. Id. at 4; PAC (¶¶ 30-31). These assertions appear to be in response to the Court's conclusion that plaintiffs failed to allege facts sufficient to

support the duty to disclose necessary to their fraudulent nondisclosure claims or to support the nexus between defendants and plaintiffs' transactions necessary to their consumer protection claims. While the PAC adds some detail to the FAC's allegations, however, it does not correct these deficiencies.

As an initial matter, the MLB-DraftKings Agreement does not support the proposition that MLB "creat[ed]" MLB DFS contests. Plaintiffs argue that this is demonstrated by the fact that the MLB-DraftKings Agreement restricts which DraftKings fantasy baseball competitions may use MLB's proprietary materials. ECF No. 64-3 at MLB-Olson-00000442. The requirements to be such an Approved Fantasy Game are fairly detailed and include specific instructions about the duration of the games, the maximum entry fees, and the timing of the games. ECF No. 64-4 at MLB-Olson-00000471. Moreover, the contract requires advance approval from MLB before most of the conditions may be changed. Id. While these provisions demonstrate that DraftKings somewhat tailored MLB DFS contests to the requirements of MLB, however, they do not somehow transform MLB into the "creator" of the contests, rather than a licensor of them. Indeed, the MLB-DraftKings Agreement specifically requires that DraftKings "shall be solely responsible for the development" and "operation" of the MLB DFS contests, indicating MLB was not their creator. ECF No. 64-3 at MLB-Olson-00000448.

11

Instead of demonstrating that MLB created the MLB DFS contests, the MLB-DraftKings Agreement, even when construed most favorably to plaintiffs, simply confirms what the Court already concluded in its MTD Opinion: that "DraftKings and MLB entered into a 'comprehensive league partnership' that provided for co-branding of MLB DFS baseball contests, . . . gave DraftKings promotional rights [and] use of MLB league and team logos," and involved defendants advertising MLB DFS competitions. MTD Opinion at 4, 20. The MLB-DraftKings Agreement (which plaintiffs had already received from defendants prior to the conclusion of the original motion-to-dismiss practice) simply adds detail to these conclusions, including that MLB had pre-approval rights for MLB DFS advertising, ECF No. 64-5 at MLB-Olson-00000487, committed to undertaking specific marketing of MLB DFS contests, e.g., ECF No. 64-3 at MLB-Olson-00000447, and offered certain integrated experiences for MLB DFS users, ECF No. 64-4 at MLB-Olson-00000451-52.

These added details, however, do not render plaintiffs' fraud by omission or consumer protection claims any more viable. To begin with, the PAC does not alter the Court's conclusion that plaintiffs have failed to allege a relationship between defendants and plaintiffs that could give rise to the duty to disclose necessary to support plaintiffs' fraud by omission claim. As noted in the MTD Opinion, plaintiffs provided no basis

12

for finding a duty to disclose absent a transaction between plaintiffs and defendants or any misrepresentation by defendants about the fantasy baseball transactions plaintiffs entered. MTD Opinion at 19-20. Plaintiffs' allegations in the FAC that defendants advertised MLB DFS contests did not cure this deficiency because advertising generally does not support such a duty where a defendant neither advertised its own product nor made an express factual representation about a different product. Id. at 19-20. While the PAC includes many more details about MLB's involvement in advertising and promoting MLB DFS contests than the FAC, the PAC does not plausibly allege the existence of a transaction between MLB and plaintiffs, that MLB DFS contests were MLB's product, or that MLB made any specific representations about MLB DFS contests that could give rise to a duty to disclose. The PAC thus provides no reason to reconsider the Court's conclusion that plaintiffs failed to state a claim for fraud by omission.

Likewise, the PAC does not alter the Court's conclusion that "plaintiffs fail to identify a sufficient nexus between the transaction that allegedly harmed them and the defendants to support a consumer protection claim." MTD Opinion at 25. As noted in the MTD Opinion, to state their consumer protection claims, plaintiffs must show some nexus between defendants and the allegedly harmful transaction in the form of:

13

> a nontrivial business relationships between the plaintiff
> and defendant, or the defendant's production of the good or
> service that was the basis of the transaction, or the
> defendant's misrepresentations about the good that was the
> basis of the transaction, or the defendant's substantial
> participation in the transaction that caused the plaintiff
> harm.

MTD Opinion at 26-27. As explained above, the PAC does not support a finding that MLB produced MLB DFS contests or that MLB made any misrepresentations about MLB DFS contests. Nor do plaintiffs suggest that it illustrates the existence of any business relationship between plaintiff and defendants.

Plaintiffs' only remaining argument for reconsideration on the basis of alleged "nexus," is the assertion in the PAC that defendants' extensive promotion and advertising of MLB DFS contests transforms the defendants into substantial participants in the sale of entry fees to those contests. In its prior opinion, the Court noted that advertising alone is generally not enough to support the state consumer protection claims here alleged. See MTD Opinion at 28-29. While the Court did add that "hosting an advertisement combined with some other involvement might generate enough of a nexus in some states," plaintiffs offer no law suggesting that the defendants' pre-approval of the form of MLB DFS contests constitutes such "other involvement" here.[4] Furthermore, while plaintiffs assert that defendants

---

[4] Although plaintiffs offer some new (and some old) case law that they assert supports the general proposition that the PAC's

14

"direct[ly] participat[ed] in the sale of the contests," which might provide a basis for a consumer protection claim,[5] the only "direct" participation plaintiffs point to here is defendants' advertising of MLB DFS contests itself. In short, while the PAC adds detail to the involvement of MLB in marketing and approving the form of MLB DFS contests, it does not change the nature of the involvement such that reconsideration of the Court's conclusions is warranted.

As a final note, the plaintiffs argue that the PAC cures the FAC's failure to allege reliance with the specificity

---

"allegations provide a more than sufficient 'nexus' to support liability under the relevant state consumer protection laws," none of this law is on point. Most of the cases address the liability of manufacturers of a product. Hamm v. Mercedes-Benz USA, LLC, 2019 WL 4751911 (N.D. Cal. Sept. 30, 2019); Loughridge v. Goodyear Tire and Rubber Co., 192 F. Supp. 2d 1175 (D. Colo. 2002); Church & Dwight Co., Inc. v. Huey, 961 S.W.2d 560 (Tex. Ct. App. 1997). The rest are inapposite for other reasons. In re Telexfree Secs. Litig., 389 F. Supp.3d 101, 107 (D. Mass. 2019) (dismissing Massachusetts consumer protection claim against bank whose employee participated in pyramid scheme); City of Boston v. Purdue Pharma, LP, et al., 2020 WL 977056, at *7 (Mass. Super. Jan. 31, 2020) (finding that a Massachusetts consumer protection claim was stated based upon a defendant's distribution of the product plaintiffs purchased).

[5] See Galstaldi v. Sunvest Communities USA, LLC, 637 F. Supp.2d 1045, 1056-57 (S.D. Fla. 2009) (upholding a FDUPTA claim despite a lack of privity because the defendants had directly participated in the sale of properties in question by conducting tours and selling the units in addition to promoting and advertising such properties); Coffey v. WCW & Air, Incorporated, 2018 WL 4154256, at *1, *4-7. (N.D. Fla. Aug. 30, 2018) (allowing a FDUPTA claim to proceed against the manufacturer of the water treatment system at issue and parties who directly sold the systems to consumers).

required by Rule 9(b) by clarifying that its consumer protection theories relied on both unfair and deceptive conduct by the defendant. The Court need not address this argument, however, because, as already noted, it did not rely on the insufficiency of plaintiffs' complaint under Rule 9(b) to dismiss their consumer protection claims.

    c. Unjust Enrichment

Finally, the PAC does not save plaintiffs' unjust enrichment claims. In the MTD order, the Court found that "Plaintiffs' unjust enrichment claims fail because the plaintiffs have failed to plausibly allege that the defendants were enriched at plaintiffs' expense." MTD Opinion at 29. While the PAC alleges that the defendants received "fees . . . directly attributable to MLB fantasy contests," PAC ¶ 448, the MLB-DraftKings Agreement and other supporting documents demonstrate only that the defendants received licensing fees, advertising revenue, and an equity stake in DraftKings. See, e.g., ECF No. 64-4 at MLB-Olson-00000449-450. None of these allegations suggests that the defendants directly received any portion of plaintiffs' MLB DFS contest entry fees such that defendants were enriched at plaintiffs' expense. More generally, the PAC provides no basis for a claim of unjust enrichment based on such an attenuated relationship between the purchases that

16

plaintiffs made and the alleged "unjust" behavior by the defendants.

IV.  Conclusion

Ultimately, the PAC fails to remedy the deficiencies that led the Court to dismiss plaintiffs' FAC. It thus provides no basis for reconsidering the Court's conclusion that the FAC's deficiencies could not be cured by amendment and that dismissal with prejudice was warranted.

In other words, although the Court appreciates the appropriately zealous passion with which plaintiffs press their suit, in the end they do not even make it to first base. Accordingly, the motion for reconsideration and for leave to amend is hereby denied.

SO ORDERED.

Dated:   New York, NY

        June 5, 2020
                                    United States District Judge