UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KRISTOPHER R. OLSON,
CHRISTOPHER LOPEZ, WARREN
BARBER, CHRISTOPHER CLIFFORD,
AND ERIK LIPTAK, individually
and on behalf of all others
similarly situated,

              Plaintiffs,

    v.

MAJOR LEAGUE BASEBALL; MLB
ADVANCED MEDIA, L.P.; HOUSTON
ASTROS, LLC; and BOSTON RED
SOX BASEBALL CLUB, L.P.,

              Defendants.

20-cv-632 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.

    On April 3, 2020 the Court dismissed the above-captioned action with prejudice against defendants Major League Baseball and MLB Advanced Media, L.P. (collectively "MLB"), the Boston Red Sox Baseball Club, L.P., and the Houston Astros, LLC. ECF No. 55. Plaintiffs moved for reconsideration of this decision and for leave to file an amended complaint. ECF No. 64. On June 5, 2020, the Court issued a memorandum order denying plaintiffs' motion. ECF No. 72. In this latter order, the Court relied on and discussed a letter sent by MLB Commissioner Robert Manfred to the General Manager of the New York Yankees, which was filed under seal at the request of the defendants. In the ordinary

course, the Court would have unsealed the letter at that time.[1]
However, defendant MLB and third-party the New York Yankees (the
"Yankees") requested continued sealing of the letter, while
plaintiffs opposed this request.

I.   Background

     The Court here assumes full familiarity with the prior
history of this case as set forth in detail in the Court's prior
orders of April 3, 2020 ("MTD Opinion") and June 5, 2020
("Reconsideration Order"). As is relevant here, this is a
putative class action lawsuit brought by players of DraftKings
Inc. ("DraftKings") fantasy baseball contests against certain
major league baseball entities and teams. In February,
defendants moved to dismiss for failure to state a claim
plaintiffs' First Amended Complaint ("FAC"), which asserted
various claims of fraud, negligence, unjust enrichment, and
violations of consumer protection laws. The Court granted the

---

[1] This Court's standard confidentiality order, which the parties
here signed and agreed to on March 12, 2020, ECF No. 46,
contains the following language:
     The Court . . . retains unfettered discretion whether or
     not to afford confidential treatment to any Confidential or
     Highly Confidential Document or information contained in
     any Confidential or Highly Confidential Document submitted
     to the Court in connection with any motion, application, or
     proceeding that may result in an order and/or decision by
     the Court.
Defendant MLB is therefore in no position to complain about
unsealing. However, the third-party Yankees was not a party to
that order.

dismissal with prejudice, partially on the ground that the FAC failed to plausibly allege any actionable misrepresentation by the defendants that could support their various theories of liability. See MTD Opinion.

Thereafter, plaintiffs moved for reconsideration of the Court's conclusion that the complaint should be dismissed with prejudice. In support of this motion, plaintiffs submitted a proposed amended complaint ("PAC") that they argued cured the FAC's deficiencies. One of the primary ways in which the PAC did so, according to plaintiffs, was by alleging two new actionable misrepresentations by the defendants. One such misrepresentation was allegedly made by MLB Commissioner Manfred in a September 15, 2017 press release relating to the results of an MLB investigation into possible misconduct by the New York Yankees (the "2017 Press Release"). Specifically, plaintiffs alleged that the 2017 Press Release falsely suggested that the investigation found that the Yankees had only engaged in a minor technical infraction, whereas, according to plaintiffs, the investigation had in fact found that the Yankees engaged in a more serious, sign-stealing scheme.

In support of this allegation, plaintiffs filed a letter sent from MLB Commissioner Robert Manfred to the General Manager of the New York Yankees (the "Yankees Letter") discussing the same investigation, which plaintiffs argued proved Manfred's

duplicity. The Yankees Letter -- which plaintiffs obtained from defendants during discovery -- was filed under seal at the request of MLB and the third-party Yankees. In its memorandum order denying plaintiffs' motion for reconsideration, the Court found it necessary to refer to the Yankees Letter. See Reconsideration Order at 8-9. Despite the Court's reference to the letter, MLB and the Yankees now seek its continued sealing. Plaintiffs oppose this motion.

II.   Legal Framework

The public enjoys a common law presumptive right of access to judicial documents, a right that is "potent and fundamental" and that "predates even the U.S. Constitution."[2] Mirlis v. Greer, 952 F.3d 51, 58 (2d Cir. 2020) (citing United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I")). This presumption of access recognizes that "[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982). Access to judicial documents is necessary for judges "to have a measure of accountability and

---

[2] The First Amendment also guarantees the public a right to access certain judicial documents. Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 141 (2d Cir. 2016). The Court, however, does not reach the question of whether such a First Amendment right guarantees access to the Yankees Letter because the parties failed to meaningfully raise this issue in their briefing on this matter.

for the public to have confidence in the administration of justice." United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) ("Amodeo II"). By ensuring such accountability and trust in the rule of law, the public's presumptive right to access court documents is "integral to our system of government" itself. United States v. Erie Cty., N.Y., 763 F.3d 235, 238–39 (2d Cir. 2014). It is for these reasons that this Court, before allowing any sealing in any case, requires the parties to agree that the Court retains unfettered discretion to thereafter unseal any document submitted to the Court in connection with any motion that may result in a decision by the Court. See footnote 1, supra.

While a presumption of public access thus attaches to all judicial documents, whether this presumption prevails over a party's objection to the disclosure of a particular document (in this case, in particular, the third-party New York Yankees, which was not a signatory to the Court's standard protective order, see footnote 1, supra) requires a three part analysis. As a preliminary matter, a Court must determine whether the document is in fact a judicial document. Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006). Next, the Court must determine the strength of the presumption that attaches to the document in question. Id. Finally, the Court must determine

whether competing considerations outweigh the presumption that attaches to the document. Id. at 120.

III. <u>Analysis</u>

    a. <u>Judicial Document</u>

    There is no doubt, and the parties do not appear to dispute, that the Yankees Letter is a judicial document. In order to be designated a judicial document, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process." <u>Amodeo I</u>, 44 F.3d at 145. Here, as evidenced by the fact that the Court referred to it in its Reconsideration Order, the Yankees Letter was relevant to the Court's resolution of the motion for reconsideration. This renders it a judicial document. <u>See</u> <u>Brown v. Maxwell</u>, 929 F.3d 41, 49 (2d Cir. 2019) (holding that a document is "relevant to the performance of the judicial function if it would reasonably have the <u>tendency</u> to influence a district court's ruling on a motion" (internal quotation marks and citation omitted)).

    b. <u>Weight of Presumption</u>

    The Yankees Letter is not only a judicial document, but one to which a very strong presumption of public access attaches. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." <u>Amadeo II</u>,

6

71 F.3d at 1049. Thus, the presumption is "at its zenith" where documents "directly affect an adjudication, or are used to determine litigants' substantive legal rights," and is at its weakest where a document is neither used by the Court nor "presented to the court to invoke its powers or affect its decisions." Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 142 (2d Cir. 2016) (internal quotation marks and citation omitted). Thus, for example, documents submitted to a court in connection with a granted summary judgment motion are entitled to a strong presumption of public access, while documents exchanged between parties during discovery and never presented to the Court are subject to a low presumption of access. Id. In addition, a more weighty presumption of access attaches to where a document is of greater "value . . . to those monitoring the federal courts." Amodeo II, 71 F.3d at 1049.

The Yankees Letter represents the kind of document to which the strongest presumption of access applies. It was submitted to the Court in connection with a motion for reconsideration of the Court's grant of a motion to dismiss, the Court's final adjudication the parties' substantive legal rights. Brown, 929 F.3d at 50 (noting that the presumption is strongest for "dispositive motions such as motions for dismissal"). Moreover, the Yankees Letter formed one of the primary bases for the plaintiffs' motion for reconsideration, and was thus squarely

7

"presented to the court to invoke its powers or affect its decisions." Bernstein, 814 F.3d at 142.

MLB and the Yankees nonetheless assert that only a low presumption of access applies because, they claim, the Reconsideration Order itself stated that the Yankees Letter was immaterial to the Court's decision. MLB and the Yankees, however, misapprehend the Court's order. In that order, the Court explained that "whether or not" Manfred's statement in the 2017 Press Release "was a misrepresentation . . . [was] not material" to the success of plaintiffs' fraud or negligent misrepresentation claims. Reconsideration Order at 9. The Court was plainly discussing the materiality of representations in the 2017 Press Release as a matter of law, not the materiality of the Yankees Letter to the Court's decisionmaking process. More importantly, the Court's very discussion of both the 2017 Press Release and the Yankees Letter demonstrates that both letters were integral to the Court's reasoning in this case. As a result, a member of the public -- or perhaps the substantial putative class on whose behalf plaintiffs acted -- seeking to understand the Court's reasons would require access to these letters. This renders the Yankees Letter of significant "value . . . to those monitoring the federal courts," further reinforcing the Court's determination that the presumption of access is at its strongest. Amodeo II, 71 F.3d at 1049.

c. Competing Considerations

While a strong presumption of access thus attaches to the Yankees Letter, this does not end the Court's inquiry. After determining the weight of the presumption, a "court must 'balance competing considerations against it,'" such as "'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" Lugosch, 435 F.3d at 120 (quoting Amodeo II, 71 F.3d at 1050). In this case, both MLB and the Yankees argue that their privacy interests in avoiding disclosure of the letter outweigh the presumption of access. The privacy interests of MLB and the Yankees, however, are modest at best, and not nearly strong enough to overcome the robust presumption of access that attaches to the Yankees Letter. See Bernstein, 814 F.3d at 142 (finding that where the presumption of access is at its strongest, the competing interests must rise to the level of "extraordinary" to be overriding).

Where a party asserts a privacy interest in avoiding disclosure, the Court weighs that interest by considering "both 'the degree to which the subject matter is traditionally considered private rather than public,' as well as '[t]he nature and degree of the injury'" to which the party resisting disclosure would be subjected were the privacy interest not protected. Mirlis, 952 F.3d at 61. Both MLB and the Yankees

9

assert that the Yankees Letter, as the product of an internal
investigation that has not previously been shared beyond these
two parties, is a traditionally private document to which a
significant privacy interest attaches. The 2017 Press Release,
which publicized the results of the same investigation discussed
in the Yankees Letter, however, contradicts this notion. While
the parties may not wish to publicize the particular wording
included in the Yankees Letter, its substance, as MLB itself
argued in its motion for reconsideration briefing, is already
public. Thus, the Yankees Letter is not a particularly private
affair.

Furthermore, neither MLB nor the Yankees has pointed to a
particularly significant injury that will result from
disclosure. MLB primarily argues that it will be injured by the
disclosure of the Yankees Letter because such disclosure will
undermine its ability to conduct internal investigations in the
future by undermining teams' faith in their confidentiality. As
indicated above, however, this argument is undermined by the
MLB's own 2017 Press Release, as well as other MLB press
releases, which demonstrate that MLB regularly releases the
results of internal investigations as a matter of course. MTD
Opinion at 5-6.

The injury asserted by the Yankees is no more compelling.
The Yankees argue that they have a strong privacy interest

because public disclosure of the Yankees Letter would cause the Yankees significant reputational injury. While this may be the case, the gravity of this concern is again lessened by the fact that the contents of the Yankees Letter have already been discussed in some form by the 2017 Press Release. Furthermore, while the Court is persuaded that certain individuals mentioned in the letter possess a strong privacy interest in maintaining anonymity, this interest can be protected by simple redaction of their names from any publicly-filed version of the letter.

Thus, neither the nature of the Yankees Letter, nor the purported injury that might result from its disclosure, suggests that the heavy presumption in favor of access is overcome here. Much of the letter's contents have already been revealed in the 2017 Press Release. Furthermore, embarrassment on the part of MLB or the Yankees about the precise contents of the letter is not particularly weighty, and the privacy interests of any individuals mentioned in the letter may be remedied by minimal redaction. As a final note, although MLB and the Yankees attempt to impugn the motives of plaintiffs' opposition to continued sealing of the letter, they offer no evidence of plaintiffs' bad faith beyond speculation. Thus, although the Court may consider plaintiffs' motives in determining whether to unseal a document, see Mirlis, 952 F.3d at 62-24, the Court finds no basis for doing so here.

Accordingly, the Court finds that the strong presumption in favor of unsealing the Yankees Letter has not been rebutted.

IV.   Conclusion

For the foregoing reasons, the Court finds that the Yankees Letter should be unsealed. The Court, however, will provide MLB and the Yankees the opportunity to submit by noon on Monday, June 15, 2020, a minimally redacted version of the letter to protect the identity of individuals mentioned therein. Moreover, at the request of the Yankees, the Court will stay unsealing of the Yankees Letter until June 19, 2020 to allow the Yankees time to take an emergency appeal to the Second Circuit pursuant to 28 U.S.C. § 1291. If plaintiffs oppose such a stay, they should file a brief outlining such opposition by 5:00 pm on June 15, 2020.

SO ORDERED.

Dated:   New York, NY

June 12, 2020

United States District Judge

12